1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    CHARA CURTIS, et al.,                    CASE NO. C12-0991JLR

11                        Plaintiffs,          ORDER ON PLAINTIFFS'
                                               SECOND MOTION FOR
12              v.                             PARTIAL SUMMARY
                                               JUDGMENT AND SECOND
13    ILLUMINATION ARTS, INC., et al.,         MOTION FOR SANCTIONS

14                        Defendants.

15                          **I.    INTRODUCTION**

16        Before the court are two motions:  (1) Plaintiffs Chara Curtis, Cynthia Aldrich,

17 and Alfred Currier's second motion for partial summary judgment (2d SJ Mot. (Dkt. #

18 32)); and (2) Plaintiffs' second motion for sanctions (2d Sanc. Mot. (Dkt. # 30)).  The

19 court has considered both motions, all submissions filed in support of and opposition to

20

21

22

the motions, the balance of record, and the applicable law.  Being fully advised,[1] the court GRANTS in part and DENIES in part Plaintiffs' second motion for partial summary judgment and GRANTS in part and DENIES in part Plaintiffs' second motion for sanctions.

## II.  BACKGROUND

### A.  Plaintiffs' Second Motion for Partial Summary Judgment

This case involves claims for breach of contract and copyright infringement.  (*See generally* Compl. (Dkt. # 1).)  On May 29, 2013, the court granted in part and denied in part Plaintiffs' first motion for partial summary judgment.  (*See* 5/29/13 Order (Dkt. # 29).)  The court ruled that Defendants Illumination Arts, Inc. ("IAI") and Illumination Arts Publishing, LLC ("IAP") are liable to Plaintiffs for breach of contract.  (*Id.* at 10, 13.)  The court ruled that IAP is liable for IAI's breach of contract because it is a mere continuation of IAI and that both entities will be subject to the same liability with respect to Plaintiff's claims because the corporate veil between IAI and IAP has been pierced.  (*Id.* at 13, 18.)  The court declined to pierce the corporate veil with respect to Defendants John Thompson's and Kimmie Lynn Thompson's personal liability because there was no evidence before the court that either of the Thompsons personally dissipated any of IAI's or IAP's assets or that their activities actually harmed Plaintiffs.  (*Id.* at 18-19.)  Finally, the court ruled that all Defendants were liable for copyright infringement and that the

---

[1] No party has requested oral argument with respect to either motion.  The court deems both motions to be appropriate for disposition without oral argument.

1   infringement was willful.  (*Id.* at 19-23.)  Based on the foregoing, the court also granted

2   Plaintiffs a permanent injunction and ordered Defendants to return to Plaintiffs all

3   infringing copies of Plaintiffs' books.  (*Id.* at 23-24.)  Plaintiffs now seek an additional

4   order on summary judgment with respect to damages for breach of contract and statutory

5   damages for willful copyright infringement.  (*See generally* 2d SJ Mot.)

6          With respect to breach of contract damages, Plaintiffs assert that between 1998

7   and 2011, Defendants sold 77,869 copies of the books at issue:  (1) 4,786 copies of *How*

8   *Far to Heaven?*, (2) 19,328 copies of *Fun Is a Feeling*, and (3) 53,755 copies of *All I See*

9   *Is a Part of Me.*  (*See* 6/5/13 Kruckeberg Decl. re: SJ (Dkt. # 34) Exs. A-C.)  The retail or

10   list price for each book is $15.95.  (*See id.*; 3/28/13 Kruckeberg Decl. (Dkt. # 24) Ex. J.)

11   The publishing agreements for *Fun Is a Feeling* provide that each author is to receive a

12   royalty of 5% for the first 10,000 copies sold and 6.25% for the next 20,000 copies sold.

13   (*Id.* Exs. F at 3, G at 4.)  Similarly, the publishing agreements for *How Far to Heaven?*

14   provide for each author to receive a royalty of 5% for the first 10,000 copies sold and

15   6.25% for the next 20,000 copies sold.  (*Id.* Exs. D at 3-4, E at 4.)  Accordingly, Plaintiffs

16   calculate their royalty rate for all sales of all books as follows:  $53,526.61 for Mr. Curtis,

17   $49,709.77 for Ms. Aldrich, and $3,816.84 for Mr. Currier.  (*See* 2d Sanc. Mot. at 9-10.)

18   Comparing these figures to available tax records, Plaintiffs also calculate that Mr. Curtis

19   was underpaid $5,790.84 or roughly 10.82%.  (*See* 6/5/13 Curtis Decl. (Dkt. # 33) ¶ 3,

20   Ex. A.)

21          Plaintiffs do not, however, provide direct evidence of the amount of royalty

22   underpayments with respect to Ms. Aldrich and Mr. Currier.  Rather, Plaintiffs infer that,

1    if Defendants had permitted an audit as required by the publishing contracts between

2    Plaintiffs and IAI, Ms. Aldrich and Mr. Currier could have expected to find and recoup

3    similar underpayments in the amounts of $5,377.91 and $412.93, respectively.  (*See* Mot.

4    at 10.)

5         Plaintiffs note that because the court denied their motion to pierce the corporate

6    veil between the corporate entities, IAI and IAP, on the one hand, and the Thompsons, on

7    the other hand, their claim for contract damages is limited to IAI and IAP.  (*See* Mot. at 8,

8    n.1.)  However, if the court were to grant their pending motion for sanctions, then

9    Plaintiffs would ask the court to find Mr. Thompson and Ms. Thompson jointly and

10   severally liable with IAI and IAP.  (*See id.*)

11        In addition to damages for their breach of contract claim, Plaintiffs seek $150,000

12   each as maximum statutory damages under 17 U.S.C. § 504(c)(1)-(2) for willful

13   copyright infringement.  (2d SJ Mot. at 4-5.)  Defendants provided no argument or

14   evidence in contradiction to Plaintiffs' evidence with respect to Plaintiffs' claimed

15   contract and willful copyright infringement damages.

16        **B.  Plaintiffs' Second Motion for Sanctions**

17        Plaintiffs have also moved separately for additional sanctions against Defendants.

18   (*See generally* 2d Sanc. Mot.)  On November 29, 2012, Plaintiffs served Defendants with

19   a set of discovery requests that included interrogatories, requests for the production of

20   documents, and requests for admission.  (1/21/13 Kruckeberg Decl. (Dkt. # 17) ¶ 2,

21   Ex. A.)  By January 31, 2013, Plaintiffs had received no responses or objections to any of

22   the discovery requests (*id.* ¶ 12), and they moved to compel responses and for sanctions

ORDER- 4

1   (*see generally* Mot. to Compel (Dkt. # 16)).  Defendants filed no response to Plaintiffs'

2   motion to compel.  (*See* 2/20/13 Order (Dkt. # 19) at 3.)  On February 20, 2013, the court

3   granted Plaintiffs' motion to compel, found that Defendants had waived any objections to

4   Plaintiffs' discovery requests, and ordered Defendants to "provide complete responses . .

5   . no later than March 1, 2013." (*Id.* at 6, 8.)  In addition, the court ordered Defendants to

6   pay sanctions to Plaintiffs in the form of Plaintiffs' reasonable expenses and attorneys'

7   fees incurred in bringing the . . . [discovery] motion." (*Id.* at 8.)

8          On February 20, 2013, the same day as the court's ruling on discovery and

9   sanctions above, Defendants served their initial answers to Plaintiffs' discovery requests.

10  (*See* 6/5/13 Kruckeberg Decl. re Sanc. (Dkt. # 31) Ex. A.)  Despite the court's order

11  stating that Defendants had waived any objections to Plaintiffs' discovery requests,

12  Defendants objected to requests for production and interrogatories related to Ms.

13  Thompson's financial records.  (*See id.*)  Between February 27 and February 29, 2013,

14  Defendants began producing financial records relating to Mr. Thompson, IAI, and IAP,

15  but they produced no information regarding Ms. Thompson's financial records.  (*Id.* ¶ 6.)

16  To date, Defendants have produced no documents or information related to Plaintiffs'

17  discovery requests concerning Ms. Thompson.  Plaintiffs assert that they have been

18  prejudiced by Defendants' failure to produce any of the requested financial information

19  concerning Ms. Thompson because Plaintiffs have been unable to establish their claim

20  that the corporate veil should be pierced with respect to Ms. Thompson.  (*See* 2d Sanc.

21  Mot. at 4-5.)  Indeed, the court previously declined to pierce the corporate veil with

22

1   respect to Ms. Thompson because "there [wa]s no evidence . . . that either of the

2   Thompsons personally dissipated any of IAI's or IAP's assets."  (5/29/13 Order at 18.)

3          On June 20, 2013, after Plaintiffs had filed their present motion for sanctions, and

4   after the discovery and dispositive motions cutoff,[2] Defendants finally produced copies of

5   bank statements for IAP's Chase checking and savings accounts (6/28/13 Kruckeberg

6   Decl. (Dkt. # 41) ¶ 2, Ex. A), copies of bank statements for Mr. Thompson's and

7   Arrieana Thompson's[3] Bank of America checking and savings accounts (*id.* ¶ 3, Ex. B),

8   and copies of bank statements for IAI's Bank of America checking and savings accounts

9   (*id.* ¶ 4, Ex. C).  Defendants, however, produced no records related to Ms. Thompson's

10  bank accounts.

11         Plaintiffs assert that this new evidence, produced after the dispositive motions

12  deadline, contradicts or is in conflict with Mr. Thompson's testimony in response to

13  Plaintiffs' initial motion for summary judgment that his bank accounts were never

14  comingled with IAI or IAP bank accounts and that Defendants' corporate forms were

15  never abused or used for an improper purpose.  (*See* 2d Sanc. Reply (Dkt. # 40) at 4

16  (citing Thompson Decl. (Dkt. # 26) ¶¶ 10, 16-17; 6/28/13 Kruckeberg Decl. Ex. A).)

17  Plaintiffs assert that the new evidence demonstrates that Mr. Thompson freely transferred

18  funds between his personal account and IAI's bank account in the months before he

19  _____

20         [2] The discovery cutoff was May 6, 2013.  (*See* Sched. Ord. (Dkt. # 15) at 1.)  The
    dispositive motions deadline was June 5, 2013.  (*Id.*)

21         [3] Arrieana Thompson is Mr. Thompson's former wife (*see* King Decl. (Dkt. # 38) Ex. 3 at
22  36) and is not a party to this action.

1  closed IAI's Bank of America account.  (*Id.* (citing 6/26/13 Kruckeberg Decl. Exs. B-C).)

2  Plaintiffs assert they have been prejudiced by Defendants' failure to comply with the

3  court's prior discovery order because, had this information been available sooner (*i.e.*,

4  before the dispositive motions deadline), Plaintiffs could have used it to support their

5  motion for summary judgment with respect to piercing the corporate veil and establishing

6  Mr. Thompson's personally liability.  (*Id.* at 4, n.1.)

7       Defendants assert that they should not be sanctioned because they "have provided

8  at least 60 reports on the royalties due for the work and financial records, including tax

9  returns for the Defendants," and that "[a]dditional documents were similarly emailed to

10  Plaintiffs' counsel."  (Resp. to Sanc. Mot. (Dkt. # 37) at 2 (citing King Decl. (Dkt. # 38)

11  Exs. 3, 5).)  They do not deny, however, that the bank records cited above were provided

12  only after the discovery cutoff and dispositive motions deadline had expired.  Defendants

13  also do not deny that they have not produced requested financial information related to

14  Ms. Thompson.

15       Defendants also assert that they offered an opportunity to Plaintiffs to review

16  additional records at Defendants' offices (which is also the Thompsons' home), but

17  Plaintiffs failed to avail themselves of this opportunity.  (*Id.* at 2 (citing King Decl. Ex.

18  2).)  Plaintiffs respond that, despite repeated inquiries, Defendants' counsel never

19  clarified how documents produced at their home were to be duplicated.  (Reply to Sanc.

20  Mot. (Dkt. # 40) at 5.)

21  //

22  //

1 | # III.   ANALYSIS

2 | ## A.  Summary Judgment Motion

3     Summary judgment is appropriate if the evidence, when viewed in the light most

4 favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

5 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

6 P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*,

7 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing

8 there is no genuine issue of material fact and that he or she is entitled to prevail as a

9 matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden,

10 then the non-moving party "must make a showing sufficient to establish a genuine

11 dispute of material fact regarding the existence of the essential elements of his case that

12 he must prove at trial" in order to withstand summary judgment.  *Galen*, 477 F.3d at 658.

13 The court is "required to view the facts and draw reasonable inferences in the light most

14 favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

15     Defendants filed a consolidated response to Plaintiffs' motions for summary

16 judgment and for sanctions.  (*See* Consol. Resp. (Dkt. # 37).)  Nowhere in the responsive

17 memorandum or in counsel's declaration (*see* King Decl. (Dkt. # 38)), however, do

18 Defendants provide any evidence or argument in opposition to Plaintiffs' motion for

19 summary judgment.  Instead, the substance of Defendants' response is directed virtually

20 entirely towards Plaintiffs' concurrently-filed motion for sanctions and discovery-related

21 issues.  (*See generally* Consol. Resp; King Decl.)  Nevertheless, the court must still

22 assess the substance of Plaintiffs' second motion for partial summary judgment and the

1   evidence they have submitted in support thereof to determine if they have met their initial

2   burden of demonstrating the lack of a genuine dispute of material fact for trial.  *See*

3   *Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (holding that nonmoving

4   party's failure to oppose summary judgment "does not excuse the moving party's

5   affirmative duty under Rule 56 to demonstrate its entitlement to judgment as a matter of

6   law").

7      **1.  Contract Damages**

8          The court finds that Plaintiffs have submitted unopposed evidence in support of

9   their motion for summary judgment and met their initial burden of demonstrating their

10  entitlement to judgment as a matter of law with respect to Mr. Curtis's claim that he was

11  underpaid $5,790.84 with respect to royalty payments he was entitled to receive from IAI

12  or IAP under his publishing contract.  (*See* 6/5/13 Curtis Decl. (Dkt. # 33) ¶ 3, Ex. A.)

13  Accordingly, the court will grant Mr. Curtis's motion for summary judgment with respect

14  to his claimed contract damages in this amount.

15         However, the court also finds that Plaintiffs have failed to meet their initial burden

16  on summary judgment with respect to contract damages for either Ms. Aldrich or Mr.

17  Currier.  Here, Plaintiffs do not provide direct evidence of Ms. Aldrich's or Mr. Currier's

18  contract damages but merely extrapolate based on the contract damages they found with

19  respect to Mr. Curtis.  (*See* 2d SJ Mot. at 10.)  Further, Plaintiffs do not explain or

20  provide evidence to support their assertion that "[i]f [] [D]efendants had allowed an audit,

21  Ms. Aldrich and Mr. Currier could have expected to find and recoup similar

22  underpayments [to those experienced by Mr. Curtis] in the amounts of $5,377.91 and

1    $412.93, respectively." (*Id.*)  Accordingly, the court denies Plaintiffs' motion for

2    summary judgment with respect to contract damages for Ms. Aldrich and Mr. Currier.

3    The court's ruling in this respect, however, is without prejudice to Plaintiffs re-filing a

4    motion for partial summary judgment with respect to Ms. Aldrich's and Mr. Currier's

5    contract damages as described below.

6    **2.  Maximum Statutory Damages for Willful Copyright Violations**

7         A copyright owner may elect to recover statutory damages, rather than actual

8    damages and additional profits of the infringer, "in a sum of not less than $750 or more

9    than $30,000" for each copyright infringed.  *See* 17 U.S.C. § 504(c)(1).  If the copyright

10   owner proves that the infringement was willful, the Copyright Act authorizes enhanced

11   statutory damages of up to $150,000.00 per infringed work.  *See id.* § 504(c)(2).  Here,

12   the court has already determined on summary judgment that Defendants' infringement of

13   Plaintiffs' copyrights was willful.  (*See* 5/29/13 Order at 19-23.)  Accordingly, Plaintiffs

14   now seek a judgment of $150,000.00 for each of their three copyright claims, totaling

15   $450,000.00 against all Defendants jointly and severally.[4]  (*See* 2d SJ Mot. at 4-8; *see*

16   *also* Prop. SJ Ord. (Dkt. # 32-1) at 2.)

17        A plaintiff may elect statutory damages regardless of the adequacy of the evidence

18   offered as to his or her actual damages and the amount of the defendant's profits.

19

20        [4] Plaintiffs seek a joint and several judgment against Defendants in favor of Mr. Curtis

21   and Ms. Aldrich in the amount of $300,000.00 for willful copyright infringement, and a joint and
     several judgment against Defendants in favor of Mr. Curtis and Mr. Currier in an amount of

22   $150,000.00.  (*See* Prop. SJ Ord. (Dkt. # 32-1) at 2.)

1   *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259

2   F.3d 1186, 1194 (9th Cir. 2001).  "If statutory damages are elected, '[t]he court has wide

3   discretion in determining the amount of statutory damages to be awarded, constrained

4   only by the specified maxima and minima.'"  *Peer Int'l Corp. v. Pausa Records, Inc.*,

5   909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *Harris v. Emus Records Corp.*, 734 F.2d

6   1329, 1335 (9th Cir. 1984)).  Nevertheless, the court is guided by "what is just in the

7   particular case, considering the nature of the copyright, the circumstances of the

8   infringement and the like."  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336

9   (9th Cir. 1990) (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 314 U.S. 228,

10   232 (1952)).  Because awards of statutory damages serve both compensatory and punitive

11   purposes, a plaintiff may recover statutory damages "whether or not there is adequate

12   evidence of the actual damages suffered by plaintiff or of the profits reaped by

13   defendant."  *Harris*, 734 F.2d at 1335.  Such an approach serves "'to sanction and

14   vindicate the statutory policy' of discouraging infringement."  *Peer Int'l Corp.*, 909 F.2d

15   at 1337 (quoting *Woolworth Co.*, 344 U.S. at 233).

16          Plaintiffs assert that an award of the statutory maximum is appropriate here

17   because Defendants' willful infringement was particularly egregious.  (*See* 2d SJ Mot. at

18   5-6.)  Plaintiffs sent Defendants demand letters after having terminated their licensing

19   agreement with respect to the books at issue.  (*See* 5/29/13 Order at 6-7.)  In one demand

20   letter, Mr. Curtis even set out Section 502 of the Copyright Act in full, stating:  "If you're

21   not familiar with copyright infringement penalties, you need to take a look.  I've printed

22   the basics below."  (Curtis Decl. (Dkt. # 23) Ex. J.)  In any event, Defendants are in the

1  business of selling copyrighted books and so should be familiar with copyright

2  requirements.  *See Peer Int'l Corp.*, 909 F.2d at 1337 (affirming district court's

3  imposition of maximum statutory damages for willful infringement in part due to the

4  number of willful infringements by defendant and the fact defendant was "engaged in the

5  business of selling copyrighted works").

6  　　　　Plaintiffs also assert that an award of the statutory maximum is warranted due to

7  Defendants' failure to participate in discovery and obstruction of the discovery process.

8  (2d SJ Mot. at 6-7.)  Plaintiffs assert that Defendants' obstructionist behavior has made it

9  difficult, if not impossible, to ascertain the actual amount of Plaintiffs' damages for

10  infringement.  (*Id.* at 7.)  Finally, Plaintiffs also assert that Defendants' wide, open-access

11  distribution of their works on the Internet (*see* 5/29/13 Order at 7) favors imposition of

12  maximum statutory damages.  (*Id.* at 7-8.)  Defendants offer no evidence or argument to

13  contravene Plaintiffs' position on statutory damages.

14  　　　　Despite the fact that Defendants have offered virtually no response to Plaintiffs'

15  motion for summary judgment, the determination of whether Plaintiffs are entitled to an

16  award of maximum statutory damages for willful copyright infringement is inherently

17  discretionary, and therefore the court cannot enter summary judgment on this issue.  The

18  court's conclusion in this regard arises out of the logical extension of a 1998 Supreme

19  Court decision.  In *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355

20  (1998), the Supreme Court held that a claim for statutory damages under § 504(c) of the

21  Copyright Act, 17 U.S.C. § 504(c), is a suit at law to which the Seventh Amendment

22  applies.  *See also GoPets Ltd. v. Hise*, 657 F.3d 1024, 1034 (9th Cir. 2011) ("[T]he

ORDER- 12

1  Seventh Amendment provides a right to a jury trial both as to liability and as to the

2  amount of actual copyright damages, even though the copyright statute does not so

3  provide.").  This does not mean, however, that a jury must resolve every issue in a

4  copyright dispute, as Defendants similarly argued in response to Plaintiffs' first motion

5  for summary judgment (*see* Resp. to 1st SJ Mot. (Dkt. # 25) at 6-7).  *BMG Music v.*

6  *Gonzalez*, 430 F.3d 888, 892 (7th Cir. 2005).  "When there are no disputes of material

7  fact [with respect to an issue in a copyright action], the court may enter summary

8  judgment without transgressing the Constitution."  *Id.* (citing *Fidelity & Deposit Co. v.*

9  *United States*, 187 U.S. 315 (1902); *Galloway v. United States*, 319 U.S. 372 (1943);

10 *Gasoline Products Co. v. Champlin Refining Co*., 283 U.S. 494 (1931)).  As the Seventh

11 Circuit explained in *BMG Music*:

12     We read *Feltner* as establishing no more (and no less) than that cases under
       § 504(c) are normal civil actions subject to the normal allocation of
13     functions between judge and jury.  When there is a material dispute of fact
       to be resolved or discretion to be exercised in selecting a financial award,
14     then either side is entitled to a jury; if there is no material dispute and a rule
       of law eliminates discretion in selecting the remedy, then summary
15     judgment is permissible.

16 430 F.3d at 892-93 (citing *Segrets, Inc. v. Gillman Knitwear Co*., 207 F.3d 56, 65 n.7 (1st

17 Cir. 2000)).  Thus, this court could and did enter summary judgment with respect to the

18 issues of copyright infringement and willfulness because there were no disputes of

19 material fact with respect to those issues.  (*See* 5/29/13 Order at 19-23 & n.8.)

20      The issue of imposing maximum statutory damages, however, is different in that it

21 inherently involves an exercise of discretion by the fact finder.  In *BMG Music*, because

22 Plaintiffs had requested only the minimum statutory damages, the Seventh Circuit

ORDER- 13

1   concluded that the issue of damages could be properly decided on summary judgment.

2   *See BMG Music*, 430 F.3d at 892-93; *see also GoPets*, 657 F.3d at 1034 (discussing

3   *Feltner*, the Ninth Circuit held "that there is no right to a jury trial when a judge awards

4   the minimum statutory damages" and cited *BMG Music* with approval).  Here, however,

5   Plaintiffs have not sought minimum statutory damages, but rather of $150,000.00 per

6   work, which is the statutory maximum for a willful copyright violation.  (*See* 2d SJ Mot.

7   at 8 ("Given the nature of the defendants' infringement, the statutory maximum is a just

8   award and the plaintiffs should be awarded $150,000 for each of their three copyright

9   claims.").)  Even considering Plaintiffs' undisputed evidence in favor of an award of the

10  statutory maximum, the selection of such an award requires the exercise of discretion by

11  the fact finder.  In *BMG Music*, the Seventh Circuit stated that if the plaintiff "had

12  requested more than [the statutory minimum in damages] per work, then [the defendant]

13  would have been entitled to a trial."  430 F.3d at 892.  This is because "[w]hen there

14  is . . . discretion to be exercised in selecting a financial award, then either side is entitled

15  to a jury."  *Id.*  This court agrees with the Seventh Circuit's analysis in *BMG Music*, and

16  accordingly must deny Plaintiffs' motion for summary judgment with respect to an award

17  of maximum statutory damages for Defendants' willful copyright violations.  This is an

18  issue that the court must reserve for the jury.  *See also Matlow v. Solomon*, No. 04-6109-

19  HO, 2005 WL 309976, at *2 (Feb. 7, 2005) (concluding that the Supreme Court's holding

20  in *Feltner* "preclude[s] the court from determining statutory damages on summary

21  judgment"); *Ultra-Images, LLC v. Franclemont*, No. 05-60538-CIV, 2007 WL 4557148,

22  at *5 (S.D. Fla. Dec. 20, 2007) ("[I]f infringement is found to be willful, a fact finder

1  must determine if enhanced statutory damages should be imposed. . . . Thus, the Court

2  cannot make any determination regarding statutory damages at the summary judgment

3  stage.")[5]

4  **B. Sanctions Motion**

5  Due to Defendants' failure to fully abide by the court's prior order on discovery,

6  Plaintiffs seek sanctions including either the entry of factual findings that "the

7  Thompsons and their corporate entities are alter-egos and that Mr. and Mrs. Thompson

8  dissipated corporate assets for personal expenses" or default judgment on all of Plaintiffs'

9  claims. (2d Sanc. Mot. at 7.) Under Federal Rule of Civil Procedure 37(b)(2)(A), the

10

---

11  [5] In *Microsoft Corp. v. Image & Bus. Solutions, Inc.*, No. CV 05-6807, 2007 WL
2874430, at *7-8 (C.D. Cal. May 4, 2007), the federal district court rejected defendants'

12  argument that the court could award only the statutory minimum damages for non-willful
infringement on summary judgment. The plaintiff had requested the statutory maximum in

13  damages. *Id.* at *7. The *Microsoft* court evaluated the plaintiff's "undisputed" evidence of the
defendants' "egregious pattern of unlawful conduct and suspect business practices," *see id.*, and

14  concluded that "[w]hile . . . this conduct warrants a damages award toward the higher end of the
statutory damages for non-willful infringement," it did not justify an award of the statutory

15  maximum. *Id.* Indeed, the court cut plaintiff's request for damages in half. *Id.* at *8. The
*Microsoft* court's resolution of the statutory damages issue underscores the discretionary nature

16  of the issue and its consequent inappropriateness for resolution on summary judgment. This
court also notes that in rejecting the Seventh Circuit's decision in *BMG Music*, the *Microsoft*

17  court stated that *BMG Music* was not binding authority and was contradicted by Ninth Circuit
authority. The *Microsoft* court, however, relied upon Ninth Circuit authority that predated the

18  Supreme Court's decision in *Feltner*. *See Microsoft*, 2007 WL 2874430, at *7 (citing *Peer Int'l*,
909 F.2d at 1335; *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984)). The

19  only other decision cited by the *Microsoft* court in rejecting *BMG Music* simply affirmed the
district court's denial of defendant's motion in limine to preclude a jury trial on statutory

20  damages following remand by the Supreme Court in *Feltner* and is not in conflict with *BMG
Music*. *See Microsoft*, 2007 WL 2874430, at *7 (citing *Columbia Pictures Television, Inc. v.
Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1192-93 (9th Cir. 2001)).

21  Particularly in light of the Ninth Circuit's recent reliance upon *BMG Music* while analyzing
*Feltner*, *see GoPets*, 657 F.3d at 1034, this court cannot conclude that the rationale of the

22  *Microsoft* court to decide a claim under the Copyright Act for maximum statutory damages on
summary judgment remains viable.

1   court has discretion to impose "just" sanctions against a party for failure to obey an order

2   to permit or provide discovery.  Fed. R. Civ. P. 37(b)(2)(A).  Specifically, Rule

3   37(b)(2)(A) provides that "[i]f a party or a party's officer, director, or managing

4   agent . . . fails to obey an order to provide or permit discovery . . . the court . . . may issue

5   further just orders."  Fed. R.Civ. P. 37(b)(2)(A).  "These may include . . . (ii) prohibiting

6   the disobedient party from supporting or opposing designated claims or defenses, or from

7   introducing designated matters in evidence; [and] . . . (vi)  rendering a default against the

8   disobedient party."  *Id.*  These sanctions are not available unless a court's discovery order

9   has not been obeyed.  *Id.*  "Also, "[i]nstead of or in addition to the orders above, the court

10  must order the disobedient party, the attorney advising that party, or both to pay the

11  reasonable expenses, including attorney's fees, caused by the failure, unless the failure

12  was substantially justified or other circumstances make an award of expenses unjust."

13  Fed. R. Civ. P. 37(b)(2)(C).

14          Under Rule 37(b)(2), sanctions such as default judgment or orders taking the

15  plaintiff's allegations as established are "appropriate only in 'extreme circumstances' and

16  where the violation is 'due to willfulness, bad faith, or fault of the party.'"  *Fair Housing*

17  *of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2000) (citations omitted); *Computer Task*

18  *Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (per curiam).  Further, in

19  deciding whether to grant such a motion for sanctions under subsections (A) through (C)

20  of Rule 37(b)(2) for noncompliance with a discovery order, the court should consider five

21  factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's

22  need to manage its docket; (3) the risk of prejudice to [the party seeking sanctions]; (4)

1   the public policy favoring disposition of cases on their merits; and (5) the availability of

2   less drastic sanctions." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1022 (9th

3   Cir. 2002); *Computer Task Group, Inc*., 364 F.3d at 1115.

4           Based on the factual record recited above, the court has little difficulty in

5   concluding that Defendants' failure to fully comply with the court's prior discovery order

6   was willful.  Nevertheless, Defendants assert that they should not be sanctioned because

7   "Plaintiffs have had ample opportunity to go on-site and review all of Defendants'

8   records," but they failed to do so.  (*See* Resp. at 5.)  Defendants' documents, however,

9   even if offered for review, were late in their production to Plaintiffs.  The court ordered

10  Defendants "to provide complete responses to Plaintiffs' discovery requests . . . no later

11  than March 1, 2013."  (2/20/13 Order at 8.)  Defendants acknowledge that they did not

12  offer them for production until the week of March 18, 2013.  More importantly, as

13  Plaintiffs note, Defendants present counsel's March 1, 2013, email offering Defendants'

14  documents for production out of context.  (*See* Sanc. Reply at 5.)  Counsel for both

15  Plaintiffs and Defendants conferred just hours after Defendants' counsel sent his March

16  1, 2013 email.  (6/5/13 Kruckeberg Decl. re Sanc. ¶ 9.)  Plaintiffs' counsel asked about

17  the availability of duplication services and proposed sending the documents off-site for

18  duplication.  (*Id.*)  Plaintiffs' counsel responded that he would inquire with his clients.

19  (*Id.*)  Despite numerous follow-up inquiries from Plaintiffs' counsel, Defendants never

20  provided any clarification concerning duplication services and continued to put off

21  arrangements for inspection and copying of their records.  (*Id.* ¶¶ 10-20, Exs. G-N.)

22

1    In any event, there is no indication in the record before this court that Defendants'

2    offer to provide documents for inspection on-site included any of the financial

3    information concerning Ms. Thompson that was requested by Plaintiffs.  To the contrary,

4    the evidence before the court is that Ms. Thompson still has not provided any answers to

5    discovery regarding her finances.  (6/5/13 Kruckeberg Decl. re Sanc. ¶ 20.)

6    Further, the court has no difficulty in concluding based on the foregoing factual

7    record that Plaintiffs have been prejudiced by Defendants' conduct.  Defendants'

8    complete failure to provide any discovery regarding Ms. Thompson's financial

9    information prevented Plaintiffs from establishing on summary judgment that the

10   corporate veil between her and IAI and IAP should be pierced.  (*See* 2d Sanc. Mot. at 4-

11   5.)  In addition, Plaintiffs assert that the evidence that Defendants produced after the

12   dispositive motions deadline contradicts Mr. Thompson's statements in his prior

13   declaration that the assets in his bank accounts were never commingled with the assets in

14   IAI's or IAP's bank accounts (*see* Sanc. Reply (Dkt. # 40) at 4 (citing Thompson Decl.

15   (Dkt. # 26) ¶ 16)) and that IAI and IAP had never been used for an improper purpose or

16   their corporate forms abused (*id.* (citing Thompson Decl. ¶¶ 10, 17)).

17   Based on the foregoing, the court concludes that further sanctions are warranted.

18   In its prior discovery order, the court warned Defendants that "[s]hould Defendants fail to

19   produce the ordered discovery . . . within the timeframe stated . . . , the court w[ould]

20   consider the imposition of additional sanctions."  (2/20/13 Order at 7.)  Plaintiffs ask the

21   court to impose sanctions including either an entry of default judgment on all claims or

22   the entering of factual findings that "the Thompsons and their corporate entities are alter-

1  egos and that Mr. and Mrs. Thompson dissipated corporate assets for personal expenses."

2  (2d Sanc. Mot. at 7.)  In considering the factors outlined by the Ninth Circuit prior to the

3  imposition of such sanctions, however, the court concludes that something less than these

4  extraordinary sanctions are warranted.  There is no question that the public's interest in

5  expeditious resolution of litigation and the court's need to manage its docket weigh in

6  favor of additional sanctions.  As described above, there is also no question that Plaintiffs

7  have established that they have been prejudiced during the course of this litigation as a

8  result of Defendants' obstreperous behavior in discovery.  However, the public policy

9  favoring disposition of cases on the merits still favors the imposition of less drastic

10 sanctions, and despite Defendants' continuing failure to pay monetary sanctions

11 previously ordered by the court (*see* 6/5/13 Kruckeberg Decl. re Sanc. ¶ 21), the court

12 believes that it can fashion a lesser sanction that will not only punish Defendants for their

13 conduct but also alleviate the prejudice Plaintiffs have experienced to date.  In

14 determining that lesser sanctions than those sought by Plaintiffs are warranted at this

15 point, the court is mindful that Defendants produced at least a portion of the ordered

16 discovery.

17        Accordingly, the court orders Defendants to produce, without objection, all of the

18 financial records pertaining to Ms. Thompson that have been requested by Plaintiffs

19 within fourteen days of the date of this order and file a certification with the court that

20 they have done so.  The certification should be signed not only by counsel for

21 Defendants, but also by Mr. Thompson and Ms. Thompson, in both their personal and

22 representative capacities for IAI and IAP.  If Defendants fail to produce this discovery,

1   having now been ordered to do so twice, the court will consider entering a factual finding

2   piercing the corporate veil between Ms. Thompson and the other Defendants.  In

3   addition, within the same timeframe, Defendants must produce any remaining

4   outstanding discovery covered by the court's prior order (*see* 2/20/13 Order) and file a

5   similar certification with the court that they have done so.  If Defendants fail to file the

6   foregoing certifications or fail to produce the ordered discovery within the timeframe

7   described above, the court will consider imposing additional adverse evidentiary findings

8   or the entry of default judgment against Defendants.

9          Following receipt of the foregoing discovery, the court further authorizes Plaintiffs

10  to bring a third motion for partial summary judgment regarding the issue of piercing the

11  corporate veil with respect to Mr. Thompson and/or Ms. Thompson, and with regard to

12  contract damages for Ms. Aldrich and Mr. Currier—if the discovery produced by

13  Defendants so warrants.  If Defendants fail to timely comply with this order, the court

14  authorizes Plaintiffs to bring a third motion for sanctions in which the court will consider

15  the imposition of adverse evidentiary findings or the entry of default judgment against

16  Defendants.  Plaintiffs' third motion for partial summary judgment or for further

17  sanctions, if any, shall be filed no later than 45 days following the date of this order.

18         Finally, Plaintiffs have requested the imposition of additional monetary sanctions.

19  Under Federal Rule of Civil Procedure 37(b)(2)(C) the court "must order the disobedient

20  party, the attorney advising that party, or both to pay the reasonable expenses, including

21  attorney's fees, caused by the failure, unless the failure was substantially justified or

22  other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

1    Defendants have failed to demonstrate that their failure to comply with the court's prior

2    discovery order was substantially justified or that other circumstances make such an

3    award unjust.  The court can discern no just reason to deny Plaintiffs' request for

4    additional monetary sanctions, and Defendants have offered none.  Accordingly, the court

5    grants Plaintiffs' request for additional monetary sanctions.  The court orders both

6    Defendants and their counsel to pay Plaintiffs' reasonable expenses, including attorney's

7    fees, caused by Defendants' failure to comply with the court's prior discovery order.  *See*

8    Fed. R. Civ. P. 37(b)(2)(C).  Within seven days of the date of this order, Plaintiffs shall

9    submit a statement, along with appropriate documentation, concerning such reasonable

10    expenses and attorney's fees.  Defendants will have an additional seven days following

11    Plaintiffs' submission to respond concerning the reasonableness of Plaintiffs' expenses

12    and fees.  After considering these additional submissions, the court will issue a further

13    order regarding the specific amount of sanctions awarded to Plaintiffs.

14          The timeline that the court has outlined above with respect to possible additional

15    motions for partial summary judgment renders obsolete the present trial date of

16    September 3, 2013.  It would only compound any prejudice to Plaintiffs to force them to

17    go to trial on September 3, 2013 on an incomplete factual record caused by Defendants'

18    obstreperous behavior in the discovery process.  Accordingly, the court strikes the trial

19    date.  The court, however, recognizes that this detrimental effect on its calendar and trial

20    schedule is caused by Defendants' conduct.  The court places Defendants on notice that it

21    will consider additional sanctions if there is any further delay in timely compliance with

22    this court's orders.  The court will reschedule the trial date, if necessary, following

ORDER- 21

1  consideration of Plaintiffs' third motion on partial summary judgment or for sanctions, if

2  any.

3                              **IV.    CONCLUSION**

4         Based on the foregoing, the court GRANTS in part and DENIES in part Plaintiffs'

5  second motion for partial summary judgment (Dkt. # 32) and GRANTS in part and

6  DENIES in part Plaintiffs' second motion for sanctions (Dkt. # 30).  Further, the court

7  strikes the trial date, but will reschedule it, if necessary, as described above.

8         Dated this 18th day of July, 2013.

9

10

11  _____

12  JAMES L. ROBART
    United States District Judge

13

14

15

16

17

18

19

20

21

22

ORDER- 22