1

2

3

4

5

6

7

8

9

THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

16

17

CHARA CURTIS, CYNTHIA ALDRICH &
ALFRED CURRIER,

                        Plaintiffs,

            v.

ILLUMINATION ARTS, INC., a Washington
corporation, ILLUMINATION ARTS
PUBLISHING, L.L.C., a Washington limited
liability company, JOHN M. THOMPSON,
and KIMMIE LYNN THOMPSON,

                        Defendants.

No. 12-00991-JLR

**THIRD MOTION FOR SANCTIONS AND
PARTIAL SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR:
Friday, August 30, 2013**

18

## I.    INTRODUCTION AND RELIEF REQUESTED

19

20

21

22

23

24

25

        More than 250 days after being served, the defendants have yet to respond to many of the

plaintiffs' discovery requests. The Court has already sanctioned the defendants for their

obstruction of the discovery process—twice. And the defendants have ignored the Court's Order—

twice. The Court warned the defendants that continuing defiance of the Court's Orders could result

in additional sanctions, including entry of default judgment. The prejudice to the plaintiffs' case

caused by the defendants' behavior cannot be alleviated by additional monetary sanctions. The

Court should follow-through with its warning and enter default judgment against the defendants.

26

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

## II.     EVIDENCE RELIED UPON

This Motion relies on the Declaration of Kurt E. Kruckeberg in Support of Plaintiffs' Motion to Compel Discovery and for Sanctions dated January 31, 2013 (Dkt. # 17) (*"Jan. 31 Kruckeberg Decl."*), the Declaration of Kurt E. Kruckeberg in Support of Plaintiffs' Motion for Summary Judgment on Issues of Liability and Willfulness and for Permanent Injunction dated March 28, 2013 (Dkt. # 24) (*"Mar. 28 Kruckeberg Decl."*), the Declaration of Kurt E. Kruckeberg in Support of Plaintiffs' Motion for Sanctions dated June 28, 2013 (Dkt. # 41) (*"June 28 Kruckeberg Decl."*), the Supplemental Declaration of Kurt E. Kruckeberg in Support of Plaintiffs' Motion for Sanctions dated June 5, 2013 (Dkt. # 31) (*"June 5 Kruckeberg Decl."*), the Declaration of Kurt E. Kruckeberg in Support of Plaintiffs' Third Motion for Sanctions and Partial Summary Judgment filed concurrently with this Motion (*"Kruckeberg Decl."*), the Declaration of Cynthia Aldrich in Support of Plaintiffs' Third Motion for Sanctions and Partial Summary Judgment filed concurrently with this Motion (*"Aldrich Decl."*), and the Declaration of Alfred Currier in Support of Plaintiffs' Third Motion for Sanctions and Partial Summary Judgment filed concurrently with this Motion (*"Currier Decl."*), with exhibits, and other documents on file in this matter cited with reference to their ECF docket numbers.

## III.     STATEMENT OF FACTS

**A.     The Defendants Refused to Respond to Discovery Requests and the Plaintiffs' Attempts to Resolve the Dispute Without the Involvement of the Court.**

On November 29, 2012, the plaintiffs served the defendants with their first set of discovery requests. (Jan. 31 Kruckeberg Decl. ¶ 2, Ex. A.) The defendants ignored the requests. (*Id.* ¶ 3.) After the deadline for response had passed, plaintiffs' counsel, Kurt Kruckeberg, requested a status update from defendants' counsel, Matthew King. (*Id.*) Mr. King requested an additional 30 days to respond to the requests, stating that the "volume of financial data" the plaintiffs had requested necessitated additional time for response. (*Id.* ¶ 4.) The plaintiffs extended to the defendants an additional 10 days to respond to financial records requests and asked that the defendants timely

THIRD MOTION FOR SANCTIONS AND PARTIAL
SUMMARY JUDGMENT
No. 12-00991-JLR - 2

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

respond to the remaining discovery requests. (*Id.*, Ex. B.) Yet, in the 30 days that followed, the defendants provided no response to the plaintiffs' requests. (*Id.* ¶ 6, 12.) Mr. Kruckeberg repeatedly attempted to resolve the discovery dispute without involving the Court through correspondence and teleconferences with Mr. King dated January 2, 2013; January 3, 2013; January 4, 2013; January 9, 2013; January 18, 2013; and January 22, 2013. (*Id.* ¶¶ 3–5, 7.) The plaintiffs' attempts to convince the defendants to comply with the Federal Rules were unavailing, and the plaintiffs filed their First Motion to Compel Discovery and for Sanctions, ECF Document No. 16, on January 31, 2013.

**B.**  **The Court Sanctioned the Defendants and Ordered the Defendants to Respond to the Plaintiffs' Discovery Requests.**

On February 20, 2013, this Court ordered the defendants to provide "complete responses without objection" to the plaintiffs' written discovery. (Order Granting Mot. to Compel Disc. and for Sanctions, Dkt # 19 (***"First Sanctions Order"***), at 6.) The Court held that the defendants waived any objections they might have had to the discovery requests and ordered the defendants to provide complete responses "no later than March 1, 2013." (*Id.* at 6, 8.) The Court also ordered the defendants and the defendants' counsel to pay sanctions to the plaintiffs in the form of the plaintiffs' reasonable expenses and attorneys' fees incurred in bringing its first motion for sanctions. (*Id.* at 8.)

**C.**  **The Defendants Refused to Comply with the Court's Order, and the Plaintiffs Again Attempted to Resolve the Dispute Without Involvement of the Court.**

That same day, February 20, 2013, the defendants served the plaintiffs with their initial responses to the plaintiffs' discovery requests. (June 5 Kruckeberg Decl., Ex. A.) Despite the fact that the Court had ordered the defendants to respond to all of the discovery requests *without* objection, the defendants objected to all requests for production and interrogatories related to Mrs. Thompson's finances. (*Id.*) After receiving the defendants' inadequate answers and objections to all requests related to Mrs. Thompson, Mr. Kruckeberg sent a letter to Mr. King reminding him that the Court had ordered "complete responses without objection." (*Id.*, Ex. A, at

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

2.) Mr. Kruckeberg proposed a discovery conference to address the matter in order to avoid the Court's further involvement. (*Id.*, Ex. A, at 3.) Mr. King did not respond, so Mr. Kruckeberg left a voice message the following day and sent Mr. King an e-mail to renew the request for a conference. (*Id.*, Ex. B.) Mr. King responded that evening, stating that he had forwarded Mr. Kruckeberg's letter to the defendants. (*Id.*, Ex. C.) Mr. King and Mr. Kruckeberg then agreed to a teleconference on Friday, February 29, 2013. (*Id.*, Ex. D.) Over the next few days, the defendants began producing some tax records relating to Mr. Thompson and the corporate entities, but the defendants persisted in refusing to produce any information regarding Mrs. Thompson. (*Id.* ¶ 6.)

On the day of the planned teleconference, Mr. Kruckeberg attempted to contact Mr. King by phone and e-mail to remind him of their planned teleconference. (*Id.*, Ex. E.) Mr. King ignored the parties' discovery conference and instead wrote an e-mail later that day, stating that his client had "dropped off all the documents he had with [plaintiffs' counsel's] office." (*Id.*, Ex. F.) The defendants also stated that they would make a number of documents available for inspection "the week of March 18, 2012 [sic]" and stated that they would "produce the other documents shortly."[1] (*Id.*, Ex. F.) Given the defendants' history of discovery gamesmanship, Mr. Kruckeberg requested that the parties nevertheless confer about compliance with the Court's First Sanctions Order and the potential for settlement. (June 5 Kruckeberg Decl. ¶ 9.)

Counsel conferred by phone later that day. (*Id.*) During the teleconference, Mr. Kruckeberg asked about the additional documents Mr. King had mentioned in his e-mail and about the availability of duplication services in the defendants' office where the defendants offered the documents for inspection and duplication (the defendants' office is also the defendants' home). (*Id.*) Because Mr. King did not know how the defendants planned to allow for duplication,

---

[1] The Court has already pointed out that, notwithstanding the defendants' later attempts to obstruct the plaintiffs' review and duplication of these documents, the defendants' offer was insufficient because the Court had ordered the defendants to provide complete responses to discovery requests by <u>March 1, 2013</u>. (Order on Pls.' Second Mot. for Partial Summ. J. and Second Mot. for Sanctions (Dkt. # 43) (***"Second Sanctions Order"***), at 17 (citing First Sanctions Order, at 8).)

---

THIRD MOTION FOR SANCTIONS AND PARTIAL
SUMMARY JUDGMENT
No. 12-00991-JLR - 4

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

Mr. Kruckeberg proposed having the documents sent out for duplication. (*Id.*) Mr. King said that he would inquire with his clients about sending the documents out for duplication. (*Id.*) After hearing nothing from Mr. King about duplication of documents, Mr. Kruckeberg renewed his request for complete responses to the plaintiffs' discovery requests. (*Id.*, Ex. G.) Once again, Mr. King did not reply. (*Id.* ¶ 11.) Thus, on May 10, 2013, Mr. Kruckeberg followed up by e-mail. (*Id.*, Ex. H.) Mr. King replied, stating only: "Sorry – I have been out of the office this week. I will follow up with my client and advise." (*Id.*, Ex. I.) Yet again, the plaintiffs heard nothing. (*Id.* ¶ 14.) Ten days later, on May 21, 2013, Mr. Kruckeberg followed up with an e-mail reminding Mr. King that the Court had ordered "complete responses without objection" by March 1, 2013—almost three months beforehand. (*Id.*, Ex. J.) Mr. King responded to Mr. Kruckeberg's e-mail another four days later, expressing no concern over his client's violation of this Court's Order, stating: "Nothing as of yet. I'll check with my client and get back to you." (*Id.*, Ex. K.) After six more days of silence, Mr. Kruckeberg gave the defendants a deadline of June 3, 2013, to comply with the Court's Order. (*Id.*, Ex. L.) Mr. Kruckeberg received an automated out-of-office response stating that Mr. King would not return until June 3rd. (*Id.*, Ex. M.) On June 3, Mr. King wrote that his client had 2,500 books available to be picked up, yet he didn't reply to Mr. Kruckeberg's earlier request or mention his clients' ongoing violation of the Court's discovery Order. (*Id.*, Ex. N.) Having diligently tried, without result, to resolve the defendants' noncompliance with the Court's Order, the plaintiffs filed their Second Motion for Sanctions, ECF Document No. 30, on June 5, 2013.

**D.     The Court Sanctioned the Defendants a Second Time and Again Ordered the Defendants to Respond to the Plaintiffs' Discovery Requests.**

The Court granted the plaintiffs' Second Motion for Sanctions, having "little difficulty in concluding" that the defendants' failure to fully comply with the Court's prior Order was willful. (Second Sanctions Order at 17.) The Court also had "no difficulty in concluding" that the plaintiffs had been prejudiced by the defendants' conduct. (*Id.* at 18.) The Court, therefore, concluded that

THIRD MOTION FOR SANCTIONS AND PARTIAL
SUMMARY JUDGMENT
No. 12-00991-JLR - 5

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1    additional sanctions were warranted. (*Id.*)

2         The plaintiffs asked the Court to enter default judgment as a sanction or to enter factual

3    findings that the Thompsons and the corporate entities were alter-egos. (*Id.* at 18–19.) The Court

4    determined, however, that it could fashion a lesser sanction that would both punish the defendants

5    for their conduct while alleviating the prejudice the plaintiffs had experienced. (*Id.* at 19.)

6    Accordingly, the Court crafted its Order as follows:

7         1. The defendants were to produce, without objection, all of the financial records
            pertaining to Mrs. Thompson by August 1, 2013.

8         2. The defendants and Mr. King were to file a certification with the Court by
9            August 1, 2013, that they had produced the records relating to Mrs. Thompson.

10        3. The defendants were to produce the remaining outstanding discovery covered by
             the court's First Sanctions Order by August 1, 2013.

11        4. The defendants and Mr. King were to file a certification with the Court by
12           August 1, 2013, that they had produced the records relating to the Court's First
             Sanctions Order.

13   (*Id.* at 19–20.)

14        Importantly, the Court warned the defendants that if they "fail[ed] to produce this

15   discovery having now been ordered to do so twice," the Court would consider entering adverse

16   evidentiary findings or entering default judgment against the defendants. (*Id.* at 20.) The Court also

17   recognized that forcing the plaintiffs to go to trial on an incomplete factual record on September 3,

18   2013, would only compound the prejudice caused by the defendants' "obstreperous behavior in the

19   discovery process." (*Id.* at 21.) The Court, therefore, struck the trial date, noting the "detrimental

20   effect on [the Court's] calendar and trial schedule" had been caused by the defendants' conduct.

21   (*Id.*) The Court, once again, warned the defendants: "The court places Defendants on notice that it

22   will consider additional sanctions if there is any further delay in timely compliance with this

23   court's orders." (*Id.*)

24   **E.    The Defendants Continue their Defiance of the Court's Orders, Materially
            Prejudicing the Plaintiffs' Ability to Prosecute Their Claims.**

25        The defendants ignored the Court's Second Sanctions Order. Mr. King's only

26

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

communication with the plaintiffs since the Court entered its Second Sanctions Order has been to request "a stipulation regarding the scope of issues for trial." (*See* Kruckeberg Decl., Ex. A.) Mr. Kruckeberg responded by stating that such a stipulation seemed premature, and he reminded Mr. King that additional discovery responses were due "in the next couple days." (*Id.*, Ex. B.) Consistent with their pattern of conduct here, the defendants did not respond. (*Id.* ¶ 4.) They have failed to produce the documents and failed to file discovery certifications, all in defiance of the Court's Order. (*Id.* ¶ 5.) More than eight months after being served with discovery requests, the defendants, despite the Court's Orders, have yet to respond to any interrogatories or requests for production regarding Mrs. Thompson's finances. (*Id.*) And the defendants have not yet made documents available for inspection and duplication, despite their earlier promise to do so. (*Id.*) Among those documents yet to be inspected and duplicated are the following:

- Invoices, proofs of payment, and all other documents relating to orders for reproduction, duplication, or printing of the plaintiffs' books. (Mar. 28 Kruckeberg Decl., Ex. H (Req. for Produc. Nos. 5–6).)

- Except for a Quickbooks sales report for the plaintiffs' books, all other sales and payment records, account ledgers, and invoices relating to sales, gifts, or other transfers of the books. (*Id.*, Ex. H (Req. for Produc. Nos. 7–9).)

- Records relating to copies of the plaintiffs' books that were damaged or destroyed (for which the plaintiffs received no royalties). (*Id.*, Ex. H (Req. for Produc. No. 10).)

- Records, receipts, account ledgers, and communications relating to copies of the books that were returned (for which the plaintiffs received deductions in royalty payments). (*Id.*, Ex. H (Req. for Produc. No. 11).)

- Records and documents relating to agreements or arrangements with Big Universe, Inc., Be There Bedtime Stories, LLC, or any other company that hosted a website on which the defendants made electronic copies of the books available without the plaintiffs' permission. (*Id.*, Ex. H (Interrog. 3, Req. for Produc. Nos. 12–13).)

- Except for the distribution agreement, all records and documents relating to agreements or arrangements with Collage Greetings, LLC, or its affiliates, arising from or related to Collage Greetings' distribution of copies of the plaintiffs' books. (*Id.*, Ex. H (Req. for Produc. No. 15).)

- Except for annual filings and balance sheets, all other records, documents, memoranda, and communications relating to the financial affairs of

THIRD MOTION FOR SANCTIONS AND PARTIAL
SUMMARY JUDGMENT
No. 12-00991-JLR - 7

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue, Suite 500
Seattle, Washington 98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

defendants Illumination Arts, Inc., Illumination Arts Publishing, L.L.C., and John Thompson (*Id.*, Ex. H (Req. for Produc. No. 37, 40).)

- Documents relating to the defendants' affirmative defenses. (*Id.*, Ex. H (Req. for Produc. Nos. 50–51, 61–67).)

More than 250 days after they were served, many of the plaintiffs' discovery requests remain unanswered. The Court has already sanctioned the defendants for their behavior. Twice. Because the defendants continue to ignore and defy the Court's Orders, the plaintiffs are no less prejudiced today than when the Court entered its Second Sanctions Order, notwithstanding the Court's repeated warnings that further defiance of the Court's Orders could result in additional sanctions, including entry of default judgment. The Court should not allow the defendants to continue this contemptuous behavior.

## IV.    AUTHORITY AND ARGUMENT

### A.    The Court Should Enter Default Judgment as a Sanction in Light of the Defendants' Extraordinary Violation of the Court's Orders.

The defendants' egregious behavior merits the sanction of default judgment. Courts may impose an array of sanctions against a party for violation of a discovery order, including entry of default judgment. Fed. R. Civ. P. 37(b)(2)(A). A "terminating sanction" like entry of default judgment is justified only by willfulness, bad faith, and fault. *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096-97 (9th Cir. 2007). All that is required to show willfulness, bad faith, and fault is disobedient conduct within the control of the disobedient party. *Virtual Vision, Inc. v. Praegitzer Indus., Inc.*, 124 F.3d 1140, 1143–44 (9th Cir. 1997).

If willful conduct is present, the Ninth Circuit applies a five-part test (with three subparts to the fifth part) to determine "whether a case-dispositive sanction under Rule 37(b)(2) is just." *Connecticut Gen. Life Ins. Co.,* 482 F.3d at 1096. A court must weigh: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Id.* The three "sub-parts" of the fifth factor

THIRD MOTION FOR SANCTIONS AND PARTIAL
SUMMARY JUDGMENT
No. 12-00991-JLR - 8

ask whether: the court (a) has considered lesser sanctions; (b) tried those lesser sanctions; and (c) "warned the recalcitrant party about the possibility of case-dispositive sanctions." *Id.*

In weighing the multiple factors that militate in favor of or against case-dispositive sanctions, "the most critical factor is not merely delay or docket management concerns, but truth." *Id.* at 1097. The court must consider whether discovery violations make it impossible for the court "to be confident that the parties will ever have access to the true facts." *Id.* Where discovery abuse makes it impossible for a district court to conduct a trial "with any reasonable assurance that the truth would be available," it is appropriate to reject lesser sanctions and enter dispositive ones. *Id.*

Where, as here, a court order is violated, the first two factors generally support terminating sanctions and the fourth factor cuts against entering them. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). Thus the third and fifth factors become decisive. *Id.* In this case, the risk of prejudice to the plaintiffs is strong, and the defendants' continuing defiance of the Court's two prior Orders makes the threat of lesser sanctions entirely ineffective.

In examining the third factor—prejudice—more closely, the Court has already noted that it has "no difficulty in concluding" that the plaintiffs have been prejudiced by the defendants' conduct. (Second Sanctions Order at 18.) The Court also stated that forcing the plaintiffs to go to trial on an incomplete record would only compound the prejudice caused by the defendants' "obstreperous behavior in the discovery process." (*Id.* at 21.) The defendants have provided no new information since the Court's Second Sanctions Order. The plaintiffs continue to suffer prejudice. And that prejudice will only be amplified if the plaintiffs are forced to go to trial on the issues remaining in this case with an incomplete factual record.

Turning to the fifth factor—the availability of lesser sanctions—the Ninth Circuit's three-subpart test is illuminating. First, the Court considered lesser sanctions in both its First Sanctions Order and its Second Sanctions Order. Second, the Court has tried those sanctions. The Court attempted monetary sanctions in its First Sanctions Order. The defendants ignored the Order and the monetary sanctions remain unpaid. (*See* Kruckeberg Decl. ¶ 6.) The Court awarded additional

monetary sanctions in its Second Sanctions Order, and it also fashioned a creative certification process whereby the defendants were ordered to produce the remaining discovery responses and to file certifications with the Court swearing they had done so. Again, the defendants ignored the Court's Order. Finally, the Court has warned the defendants—repeatedly—that their continued behavior could result in case-dispositive sanctions. (*See* Second Sanctions Order at 20–21.)

Moreover, the "most critical factor" in unearthing the truth weighs heavily in favor of case-dispositive sanctions. The defendants' continued discovery violations make it impossible for the Court "to be confident that the [plaintiffs] will ever have access to the true facts." *Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1097. The defendants have continued to undermine a just decision in this case by refusing to comply with court-ordered production of documents. By refusing to turn over relevant information, the defendants not only prevent the plaintiffs from proving that Mrs. Thompson should be personally liable for the entities' contract liability, but also prevent the plaintiffs from presenting a jury with the full picture of the defendants' willful and egregious copyright infringement, which is relevant to a damages calculation. The defendants have refused to turn over documents showing how the plaintiffs' work became available online, for free, on various websites; how much commercial advantage the willful infringement of the plaintiffs' work generated for the defendants; whether any of the plaintiffs' myriad demands to cease infringing behavior had any deterrent effect on the defendants; and the extent to which the defendants knew that their behavior constituted infringement and continued infringing anyway. The defendants' discovery abuse and continuing defiance of the Court's Orders has made it impossible to conduct a trial with the reasonable assurance that the truth will ever be available to the parties or the decision-makers. In the face of the defendants' flagrant defiance, case-dispositive sanctions are the only remaining means of alleviating the plaintiffs' prejudice.

**B.     Summary Judgment Is Appropriate on the Plaintiffs' Contract-Related Claims.**

In addition to a third motion for sanctions, the Court authorized the plaintiffs to bring a third motion for partial summary judgment relating to the issue of piercing the corporate veil with

respect to Mr. and Mrs. Thompson, and with regard to contract damages for Ms. Aldrich and Mr. Currier. (Second Sanctions Order at 20.)

### 1.   Contract Damages for Ms. Aldrich and Mr. Currier Can Be Determined on Summary Judgment.

The Court previously held that the plaintiffs presented sufficient evidence to justify summary judgment as it relates to contract damages for Ms. Curtis. (*See* Second Sanctions Order at 9–10.) The Court, however, found insufficient evidence to support summary judgment with respect to contract damages for Ms. Aldrich and Mr. Currier. (*See id.*) The plaintiffs now supplement their earlier argument by providing declarations, with exhibits, sufficient to support the determination of contract damages on summary judgment.

As the plaintiffs explained in their previous Motion for Summary Judgment, ECF Document No. 32, dated June 5, 2013 (**"Second Summary Judgment Motion"**), Ms. Aldrich and Mr. Currier should have been compensated for their books, *at the very least*, as follows:[2]

|  | Aldrich | Currier |
|---|---|---|
| *All I See* | $34,295.69 | $0.00 |
| *Fun Is a Feeling* | $15,414.08 | $0.00 |
| *How Far to Heaven?* | $0.00 | $3,816.84 |
| **Total** | **$49,709.77** | **$3,816.84** |

(Second Summary Judgment Motion at 9–10.)

Available tax records, however, show that Aldrich was paid an average of approximately $3,203.84 each year between 1998 and 2009, for an approximate total of $44,853.73, which represents an underpayment of $4,856.04. (*See* Aldrich Decl. ¶ 2, Ex. A.) Available tax records for Mr. Currier show that he was paid an average of approximately $274.83 each year during that same period, for an approximate total of $3,297.96, which represents an underpayment of $518.88. (*See* Currier Decl. ¶ 3, Ex. A.) The defendants have produced no contrary evidence in discovery despite this Court's repeated orders to comply with discovery rules. Because there is no dispute of

---

[2] This calculation makes substantial inferences in favor of the defendants by *excluding* additional royalty amounts *due* for translation and e-book sales while *including* royalty amounts *paid* for the same by reference to Ms. Aldrich and Mr. Currier's tax information.

THIRD MOTION FOR SANCTIONS AND PARTIAL SUMMARY JUDGMENT
No. 12-00991-JLR - 11

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1   fact regarding the underpayment of royalties, the Court should enter summary judgment on the

2   issue of contract damages in the amount of $4,856.04 for Ms. Aldrich and $518.88 for Mr. Currier.

3       **2.    The Veil-Piercing Claim Relating to Mr. Thompson Can Be Determined on
                 Summary Judgment.**

4       The Court has previously stated that "[i]n order to disregard the corporate form based on a

5   fraudulent transfer of assets, the court evaluates two factors: (1) the corporate form must be 'used

6   to violate or evade a duty,' and (2) disregard of the corporate form must be 'necessary and required

7   to prevent unjustified loss to the injured party.'" (Order Granting in Part and Denying in Part Pls.'

8   Mot. for Partial Summ. J. (Dkt. # 29) (***"First Summary Judgment Order"***), at 13–14 (citing

9   *Meisel v. M & N Modern Hydraulic Press Co.,* 645 P.2d 689, 692 (Wash. 1982).) To satisfy the

10  first element of a veil-piercing claim, the court must find an abuse of the corporate form, which

11  typically involves fraud, misrepresentation, or some form of manipulation of the corporation to the

12  stockholder's benefit and creditor's detriment. (*Id.* at 14.) To satisfy the second element of a veil-

13  piercing claim, the court must identify wrongful corporate activities that actually harm the party

14  seeking relief, making disregard of the corporate form necessary. (*Id.*)

15      While the Court previously found evidence sufficient to pierce the veil between the

16  corporate entities, the Court declined to do so with respect to Mr. Thompson on the basis that the

17  record lacked evidence showing that Mr. Thompson had harmed the plaintiffs by personally

18  dissipating any of the assets of Illumination Arts. (*Id.* at 18–19.) Mr. Thompson and the corporate

19  defendants have now made that information available through the recent disclosure of their bank

20  statements. Those statements reveal several material facts establishing that Mr. Thompson abused

21  the corporate form during the period in which Illumination Arts failed to pay the plaintiffs:

22      • **The corporate entities began making payments on credit card accounts
          that Mr. Thompson had previously been paying from his personal
          account.** (*Compare, e.g.,* Kruckeberg Decl., Ex. C (showing payments from
          Mr. Thompson's personal account on the Bank of America credit card account
          no. ending 0310), *with* Kruckeberg Decl., Ex. D (showing payments from the
          company account on the Bank of America credit card account no. ending
          0310).)

---

THIRD MOTION FOR SANCTIONS AND PARTIAL
SUMMARY JUDGMENT
No. 12-00991-JLR - 12

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

- **The corporate entities began footing the bill for Mr. Thompson's grocery and other expenses in late 2011.** (*Compare, e.g.,* Kruckeberg Decl., Ex. E (showing Mr. Thompson spending $576.14 on groceries and similar items in January of 2011 and only $2.16 on such items in January of 2012), *with* Kruckeberg Decl., Ex. F (showing the company purchasing $0.00 in groceries and similar items in January of 2011, but $344.07 on such items in January of 2012), *and compare* Kruckeberg Decl., Ex. G (showing Mr. Thompson's grocery bill falling from $641.15 in March of 2011 to $1.75 in March 2012), *with* Kruckeberg Decl., Ex. H (showing the company's grocery bill of $45.68 in March of 2011 rocketing to $789.06 in March of 2012).)

- **The corporate entities funded one of Mr. Thompson's personal real-estate partnerships**. (*See* Kruckeberg Decl., Ex. I (showing the company's $4,000.00 wire transfer to Yorkshire Associates on March 29, 2012); *see also* Kruckeberg Decl., Ex. J (2010 1099 showing Mr. Thompson as General Partner of Yorkshire Associates receiving $6,888.00 in compensation from the partnership in 2010).)

- **Mr. Thompson freely transferred money between his personal account and the company account.** (*See, e.g.,* Kruckeberg Decl., Ex. K (showing transfers between Mr. Thompson's personal account (with account no. ending 6689) and the company account (with account no. ending 4712).)

- **In early 2012, the corporate entities began paying for salon services, pet supplies, and dental work—*i.e.*, clearly personal expenses Mr. Thompson should have paid for with personal funds.** (*See* Kruckeberg Decl., Ex. L (showing the company paying for services and/or supplies at Salon Azur, Rogue Valley Pet, and LWIT Dental).)

This evidence shows that, rather than paying royalties due to the plaintiffs, Mr. Thompson caused the corporate defendants to fund his lifestyle. This is precisely the type of case for which the doctrine of corporate veil piercing was created. Mr. Thompson should be personally liable for the corporate defendants' contract liability.

## C.   The Court Should Award the Maximum Amount of Statutory Damages on the Plaintiffs' Copyright Claims.

If the Court enters default judgment as a sanction for the defendants' astonishing disregard of the Court's discovery orders and the rules, it should enter judgment in an amount equal to the statutory maximum for each of the plaintiffs' three copyright infringement claims. The Court previously acknowledged that despite the fact that the defendants offered no response to the plaintiffs' arguments regarding statutory damages, the Court was prohibited from entering summary judgment on the issue because of *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S.

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

340, 355 (1998). (Second Sanctions Order at 12.) The Court stated that "[e]ven considering Plaintiffs' undisputed evidence in favor of an award of the statutory maximum, the selection of such an award requires the exercise of discretion by the fact finder." (*Id.* at 14.)

The *Feltner* case, which relied on the Seventh Amendment right to jury trial, does not apply, however, in the context of default judgment. Case law dating from the eighteenth century "makes clear that the constitutional right to jury trial does not survive the entry of default." *Benz v. Skiba, Skiba & Glomski*, 164 F.R.D. 115, 116 (D. Me. 1995) (citing Brown v. Van Bramm, 3 Dall. [U.S.] 344, 355 (1797); *see also Adriana Int'l Corp. v. Lewis & Co.*, 913 F.2d 1406, 1414 (9th Cir. 1990) (holding that there is no right to jury trial under Fed. R. Civ. P. 55(b)(2) or the Seventh Amendment after entry of default judgment); *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) ("Defendants do not have a constitutional right to a jury trial following entry of default."); *Graham v. Malone Freight Lines*, 314 F.3d 7, 16 (1st Cir. 1999) ("Neither the Seventh Amendment nor the Federal Rules of Civil Procedure require a jury trial to assess damages after entry of default."); *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974) ("[T]he Seventh Amendment right to trial by jury does not survive a default judgment."). In addition, an award of statutory damages under the Copyright Act is entirely appropriate in the context of default judgment. *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008) (quoting *Microsoft Corp. v. McGee*, 490 F.Supp.2d 874, 882 (S.D. Ohio 2007) ("[S]tatutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed.").

In *Warner Brothers Entertainment Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1073–74 (C.D. Cal. 2004), the court determined that the statutory maximum award of $150,000 per work was appropriate on the entry of default judgment. The *Caridi* court determined that because it was entering default judgment, the allegations in the plaintiff's complaint had to be taken as true. *Id.* The court found that the "particularly egregious" behavior of the infringer also justified an award of the statutory maximum of $150,000 per work. *Id.* What is more, the court stated that the

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

egregious infringement was compounded by the defendants' failing to "proffer any defense or participate in discovery." *Id.*

In a similar case from our circuit, after the entry of default, the court entered the maximum damage award of $150,000 per work for the infringement of each of nine works. *IO Grp., Inc. v. Antelope Media, LLC*, C-08-4050 MMC, 2010 WL 2198707, at *1 (N.D. Cal. May 28, 2010). In *Antelope Media*, the court determined that the statutory maximum was appropriate for several reasons, including the fact that (1) the infringers gained commercial advantage by using the plaintiff's copyrighted works; (2) the infringers continued their infringing activity after being notified of the copyright action; and (3) the infringers "attempt[ed] to prohibit [the] plaintiff from learning the full extent of the infringing conduct." *Id.*

An award of the statutory maximum is appropriate here. The Court has already observed that the plaintiffs have presented "undisputed evidence in favor of an award of the statutory maximum." (Second Sanctions Order at 14.) As in *Caridi* and *Antelope Media*, the behavior of the infringers in this case has been particularly egregious. The defendants have gained commercial advantage by continuing to sell the plaintiffs' copyrighted books after the defendants' license to do so was revoked. The defendants also gained commercial advantage by printing advertising for their publishing company and other works they were selling in the rear pages of the infringing books. The defendants presumably derived advertising revenue or Internet traffic from the unlicensed electronic publication of the books on Google Books, among other websites. But because the defendants have refused to participate fully in the discovery process, the plaintiffs are unable to learn the full extent of the defendants' infringement and the commercial advantage they derived from it. Finally, the defendants continued their infringing activity after receiving multiple demand letters from the plaintiffs and even after this suit commenced. An award of the statutory maximum—$150,000.00 for each of the plaintiffs' three books—is appropriate given these circumstances.

THIRD MOTION FOR SANCTIONS AND PARTIAL
SUMMARY JUDGMENT
No. 12-00991-JLR - 15

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

**D.    The Court Should Award the Plaintiffs Their Fees and Costs.**

**1.    The Court Should Award the Plaintiffs Their Discovery-Related Fees and Costs Since the Previous Award.**

The Court should award the plaintiffs the legal expenses incurred in filing this third motion for sanctions. Courts have discretion to award fees and costs in addition to the sanctions discussed above. Fed. R. Civ. P. 37(b)(2)(C). Moreover, federal courts have "inherent power to impose sanctions against both attorneys and parties for bad faith conduct in litigation or for willful disobedience of a court order." *Heath v. F/V ZOLOTOI*, 221 F.R.D. 545, 552 (W.D. Wash. 2004) (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991)). The court's ability to impose such sanctions stems from the power "vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (citing *Chambers*, 501 U.S. at 43).

The defendants' noncompliance with the Federal Rules and continuing disobedience of the Court's orders has needlessly extended this litigation. The Court should impose sanctions against both the defendants and its counsel, and award the plaintiffs their costs and reasonable attorneys' fees associated with policing discovery and filing this third motion for sanctions.

**2.    The Court Should Award the Plaintiffs Their Fees and Costs Under the Copyright Act.**

The Court should award attorneys' fees and costs to the plaintiffs as prevailing parties under the Copyright Act. *See* 17 U.S.C. § 505. Courts consider five non-exclusive factors when determining whether an award of attorneys' fees is appropriate under the Copyright Act. *Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 787 (9th Cir. 2006). The five factors are: (1) the degree of success obtained by the prevailing party; (2) the frivolousness of the losing party's claim; (3) the motivation of the losing party; (4) the reasonableness of the losing party's legal and factual arguments; and (5) the need to advance considerations of compensation and deterrence. *Id.*; *see also Brayton Purcell LLP v. Recordon & Recordon*, 487 F. Supp. 2d 1124, 1129 (N.D. Cal. 2007).

All five factors weigh toward an award of fees and costs. The plaintiffs have been

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1  successful in their claim because the Court has already determined that each of the defendants is

2  liable for willful copyright infringement. From the outset, the defendants' defenses have been

3  frivolous and unreasonable. The Court noted that the evidence of willful infringement was

4  "overwhelming" and that the plaintiffs' notice to the defendants of their infringement was

5  "unequivocal." (First Summary Judgment Order at 22.) Moreover, the need for deterrence is great

6  where, as here, the defendants have continually obstructed the litigation process, requiring the

7  plaintiffs to file three separate motions for sanctions. An award of fees and costs under the

8  Copyright Act is appropriate.

9                                      **V.      CONCLUSION**

10          The Court has already sanctioned the defendants—twice—for their repeated defiance of the

11  Court's Orders. By continually obstructing the discovery process and participating in the litigation

12  only when it is convenient for them, the defendants have effectively defaulted. The plaintiffs

13  continue to be prejudiced by the defendants' behavior and ask the Court to enter default judgment

14  against the defendants to alleviate that prejudice. The Court should also award Ms. Aldrich and

15  Mr. Currier their contract damages and pierce the corporate veil between the corporate defendants

16  and Mr. Thompson. In addition, the Court should award the maximum statutory damages in the

17  total amount of $450,000 on entry of default judgment against the defendants. Finally, the Court

18  should award plaintiffs the legal expenses they have incurred to police discovery and bring their

19  copyright claims.

20          DATED this 8th day of August, 2013.

21

22

23

24

25

26

THIRD MOTION FOR SANCTIONS AND PARTIAL
SUMMARY JUDGMENT
No. 12-00991-JLR - 17

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

1

HILLIS CLARK MARTIN & PETERSON P.S.

2

By    s/ Kurt E. Kruckeberg

3
Amit D. Ranade, WSBA #34878
E-Mail: adr@hcmp.com

4
Kurt E. Kruckeberg, WSBA# 44246
E-Mail: kek@hcmp.com

5
1221 Second Avenue, Suite 500
Seattle, Washington  98101-2925

6
Telephone: (206) 623-1745
Facsimile: (206) 623-7789

7
Attorneys for Plaintiffs

8
Chara Curtis, Cynthia Aldrich & Alfred Currier

ND: 99684.002 4815-2228-6613v3

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on the 8th day of August, 2013, I electronically filed the foregoing

3   with the Clerk of the Court using the CM/ECF system which will send notification of such

4   filing to the following:

5        Matthew R King
         matthewrkinglaw@hotmail.com
6
7        John M. Thompson
         jthompson@illumin.com
8
9        Kimmie Lynn Thompson
         jthompson@illumin.com

10
        DATED this 8th day of August, 2013, at Seattle, Washington.
11

12                                          By    _s/ Kurt E. Kruckeberg_____
                                                  Kurt E. Kruckeberg, WSBA# 44246
13                                                1221 Second Avenue, Suite 500
14                                                Seattle, Washington  98101-2925
                                                  Telephone: (206) 623-1745
15                                                Facsimile: (206) 623-7789
                                                  E-Mail: kek@hcmp.com
16

17

18

19

20

21

22

23

24

25

26

THIRD MOTION FOR SANCTIONS AND PARTIAL
SUMMARY JUDGMENT
No. 12-00991-JLR - 19

**HILLIS CLARK MARTIN & PETERSON P.S.**
1221 Second Avenue,  Suite 500
Seattle, Washington  98101-2925
Telephone: (206) 623-1745
Facsimile: (206) 623-7789