UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARA CURTIS, et al., | CASE NO. C12-0991JLR |
| Plaintiffs, | ORDER |
| v. | |
| ILLUMINATION ARTS, INC., et al., | |
| Defendants. | |

## I.      INTRODUCTION

Before the court is Plaintiffs Chara Curtis, Cynthia Aldrich, and Alfred Currier's third motion for sanctions and partial summary judgment.  (3d Mot. (Dkt. # 45).) Plaintiffs are authors of inspirational children's books, and this lawsuit involves claims for breach of contract and copyright infringement regarding three of their books.  (*See generally* Compl. (Dkt. # 1).)  Although the court has issued rulings involving the substance of Plaintiffs' claims, the parties' and the court's time and attention has been predominately consumed by Defendants Illumination Arts, Inc. ("IAI"), Illumination Arts

1    Publishing, LLC ("IAP"), John M. Thompson, and Kimmie Lynn Thompson's repeated

2    discovery abuses.  The same holds true with respect to Plaintiffs' present motion.

3           Due to Defendants' discovery violations and disregard for the court's orders, the

4    court has previously and repeatedly sanctioned Defendants.  In addition, Defendants

5    conduct has already forced the court to abandon its trial schedule to avoid compounding

6    the prejudice to Plaintiffs by forcing Plaintiffs to try their claims on an incomplete record.

7    In its last order, the court expressly warned Defendants that if they failed to timely

8    comply with the court's order concerning discovery, the court would consider imposing

9    additional sanctions including adverse evidentiary findings or the entry of default

10   judgment.  (7/18/13 Order (Dkt. # 43) at 20.)  Nevertheless, Defendants' conduct in

11   ignoring, only partially complying with, or complying in a dilatory manner with the

12   court's orders and their discovery obligations has continued.

13          Because Defendants have failed to heed the court's warning, the court now

14   considers whether present circumstances warrant the imposition of case-dispositive

15   sanctions, specifically the entry of default or default judgment against Defendants.  The

16   court has reviewed Plaintiffs' motion, all submissions filed in support of and opposition

17   thereto, the balance of the record, and the applicable law.  Being fully advised, the court

18   GRANTS in part and DENIES in part Plaintiffs' third motion for sanctions and partial

19   summary judgment and for entry of default judgment.[1]

20   _____

21          [1] No party has requested oral argument or an evidentiary hearing with respect to
     Plaintiffs' motion, and the court deems neither oral argument nor an evidentiary hearing to be
22   necessary for the proper consideration of this motion.  *See Lambright v. Ryan*, 698 F.3d 808,

ORDER- 2

## II.    BACKGROUND

On June 8, 2012, Plaintiffs filed a complaint against Defendants for breach of contract and copyright infringement.  (*See generally* Compl.)  Plaintiffs allege that they terminated their publishing agreements with Defendants after Defendants stopped paying royalties to Plaintiffs for sales of three inspirational children's books and after Defendants electronically reproduced and distributed the books without Plaintiffs' permission.  (*See generally id.*)

On July 25, 2012, Defendants appeared through their counsel.  (Not. of App. (Dkt. # 12).)  On August 7, 2012, Defendants answered the complaint.  (Ans. (Dkt. # 13).)  On September 13, 2012, the court notified IAI and IAP that they must file a corporate disclosure statement pursuant to Federal Rule of Civil Procedure 7.1.  (*See* Dkt. Entry dated Sept. 13, 2012.)

On November 29, 2012, Plaintiffs served Defendants with their first set of discovery requests, which included 19 interrogatories, 68 requests for production of documents, and 43 requests for admission.  (*See* 1/31/13 Kruckeberg Decl. (Dkt. # 17) ¶ 2, Ex. A.)  After 30 days, Plaintiffs received no response from Defendants.  (*Id.* ¶ 3.) On January 2, 2013, counsel for Plaintiffs emailed counsel for Defendants regarding the status of Defendants' responses.  (*Id.*)  On January 4, 2013, counsel for Defendants

825-26 (9th Cir. 2012) (holding that a district court has the discretion, but is not required, to hold an evidentiary hearing prior to imposing sanctions on a party, and that where both parties were afforded an opportunity to fully brief the sanctions issue, due process was satisfied, and the court did not abuse its discretion in declining such a hearing).

1  requested an additional 30 days to respond to the discovery requests due to the volume of

2  financial data Plaintiffs requested.  (*Id.* ¶ 4.)  On January 9, 2013, Plaintiffs' counsel sent

3  a letter to Defendants' counsel granting Defendants an additional ten days with respect to

4  the production of financial documents, but demanding immediate responses to the

5  remainder of Plaintiffs' discovery requests.  (*Id.* ¶ 5, Ex. B.)  Plaintiffs received no

6  response from Defendants with respect to the January 9, 2013, letter.  (*Id.* ¶ 6.)

7        On January 18, 2013, Plaintiffs' counsel emailed Defendants' counsel requesting a

8  teleconference with respect to the outstanding discovery requests.  (*Id.* ¶ 7.)  Counsel

9  conducted a teleconference on January 22, 2013.  (*Id.* ¶ 8.)  Counsel for Defendants

10 indicated that Defendants could gather responsive documents by January 31, 2013.  (*Id.*)

11 As of January 31, 2013, Plaintiffs had received no response or objection to any of the

12 discovery requests at issue.  (*Id.* ¶ 12.)  On January 31, 2013, Plaintiffs filed their first

13 motion to compel discovery and for sanctions against Defendants.  (*See* 1/31/12 Mot.

14 (Dkt. # 16).)  Defendants filed no response to Plaintiffs' first motion to compel discovery.

15 (*See generally* Dkt.)

16        On February 20, 2013, the court found that Defendants had waived any objections

17 to Plaintiffs' discovery requests and ordered Defendants to provide "complete responses

18 without objection" no later than March 1, 2013.  (2/20/13 Order (Dkt. # 19) at 6.)  The

19 court also order Defendants to pay sanctions to Plaintiffs in the form of Plaintiffs'

20 reasonable expenses and attorneys' fees incurred in bringing its first motion for sanctions.

21 (*Id.* at 8.)  Finally, because IAI and IAP had still not filed their Rule 7.1 corporate

22 disclosure statements, the court again ordered them to do so no later than March 1, 2013.

1   (*Id.* at 6.)  The court warned Defendants that should they fail to produce the ordered

2   discovery or provide the required corporate disclosure statements within the stated

3   timeframe, the court would consider the imposition of additional sanctions.  (*Id.* at 7.)

4   On March 19, 2013, the court entered an additional order specifying the amount of

5   reasonable expenses and attorney fees Defendants were required to pay as sanctions to

6   Plaintiffs pursuant to the court's February 20, 2013, order.  (3/19/13 Order (Dkt. # 21) at

7   3.)  The court ordered Defendants to pay $5,594.00 to Plaintiffs within 14 days of the

8   date of the order.  (*Id.* at 5.)  To date, Defendants have not complied with the court's

9   order to pay these monetary sanctions.  (8/8/13 Kruckeberg Decl. ¶ 6.)

10          The court also noted in its March 19, 2013, order that Defendants had failed to

11   comply with the court's February 20, 2013, order to file their corporate disclosure

12   statements by March 1, 2013.  (*Id.* at 3-4.)  Accordingly, the court sanctioned counsel for

13   IAI and IAP $500.00 (representing $250.00 for each corporate disclosure statement he

14   failed to file), and ordered him to pay the sanctions and to file the required corporate

15   disclosure statements within 14 days.  (*Id.* at 5.)  Once again, neither IAI, nor IAP, nor

16   their counsel complied with the court's order or filed the necessary corporate disclosure

17   statements.  (5/29/13 Order (Dkt. # 28) at 2-3.)  In addition, counsel for IAI and IAP

18   failed to pay the $500.00 sanctions into the court registry.  (*Id.* at 3.)  Accordingly, on

19   May 29, 2013, the court issued an order to show cause why the court should not enter

20   default against IAI and IAP.  (*See generally id.*)  Counsel for IAI and IAP finally filed the

21   corporate disclosure statements on June 11, 2013 (*see* Dkt. # 35), but to date has still not

22   paid the $500.00 monetary sanctions ordered by the court.  Although counsel for IAI and

ORDER- 5

IAP apologized for the "oversight" of failing to file IAI's and IAP's corporate disclosure

statements, he provided no explanation regarding his failure to comply with multiple

court orders or his failure to pay the ordered sanctions, except for the statement that

"[t]his matter is being handled on a pro bono basis."  (Resp. to OSC (Dkt. # 36).)

On March 28, 2013, Plaintiffs filed their first motion for partial summary

judgment (Dkt. # 22), which the court granted in part and denied in part.  (5/29/13 Order

(Dkt. # 29).)  Defendants admitted that "IAI and IAP breached their obligations to pay

Plaintiffs' royalties" (4/15/13  Resp. (Dkt. # 25) at 3), and accordingly, the court granted

Plaintiffs' motion for summary judgment with respect to their claim for breach of

contract against IAI and IAP.  (5/29/13 Order at 10.)  The court also granted Plaintiffs'

motion to disregard the corporate veil between IAI and IAP based on findings that IAP

was a mere continuation of IAI and that there had been fraudulent transfers of assets

between IAI and IAP.  (*Id.* at 10-18.)  The court, however, declined to pierce the

corporate veil with respect to the Thompsons personally on summary judgment.  (*Id.* at

18-19.)  The court also ruled that Defendants' infringement of Plaintiffs' copyrights was

willful, and that the Thompsons were directly liable for the infringement.  (*Id.* at 19-20.)

Finally, the court granted Plaintiffs' motion for entry of a permanent injunction

prohibiting any further infringement of Plaintiffs' copyrights.  (*Id.* at 23-24.)  As a part of

this order, the court required Defendants to return all infringing copies of the three books

to Plaintiffs.  (*Id.* at 24.)

Meanwhile, on February 20, 2013, the same day that the court issued its first order

regarding discovery and sanctions (*see generally* 2/20/13 Order), Defendants finally

1   served Plaintiffs with their initial responses to Plaintiffs' discovery requests.  (6/5/13

2   Kruckeberg Decl. (Dkt. # 31) Ex. A.)  Despite the court's order directing Defendants to

3   provide "complete responses without objection" (2/20/13 Order at 6), Defendants

4   objected to all discovery requests related to Ms. Thompson's finances.  (6/5/13

5   Kruckeberg Decl. Ex. A.)  Between February 27 and 29, 2013, Defendants began

6   producing financial records relating to Mr. Thompson, IAI, and IAP.  (*Id.* ¶ 6.)  However,

7   they produced no information regarding Ms. Thompson's financial records (*id.*), which

8   Plaintiffs asserted they needed to establish their claim that the corporate veil between IAI

9   and IAP, on one hand, and Ms. Thompson, on the other, should be pierced (*see* 2d Sanc.

10  Mot. (Dkt. # 30) at 4-5).

11          On June 5, 2013, Plaintiffs filed their second motion to compel discovery and for

12  sanctions.  (*See generally id.*)  After Plaintiffs filed this motion, and after the expiration

13  of the initial deadline for dispositive motions, Defendants finally produced copies of bank

14  statements for IAP's Chase checking and saving accounts (6/28/13 Kruckeberg Decl.

15  (Dkt. # 41) ¶ 2, Ex. A), copies of bank statements for Mr. Thompson's and Arrieana

16  Thompson's[2] Bank of America checking and savings accounts (*id.* ¶ 3, Ex. B), and copies

17  of bank statements for IAI's Bank of America checking and savings accounts (*id.* ¶ 7, Ex.

18  C).  Defendants, however, still produced no financial records for Ms. Thompson or

19  documents related to her bank accounts.  Nevertheless, in response to Plaintiffs' second

20

21          [2] Arrieana Thompson is Mr. Thompson's former wife (*see* 6/24/13 King Decl. (Dkt. # 38)

22  Ex. 3 at 36) and is not a party to this action.

1  motion to compel and for sanctions, Defendants  asserted that starting the week of March

2  18, 2013, they had provided Plaintiffs the opportunity to review additional records at

3  Defendants' offices (which is also the Thompsons' home), and that Plaintiffs had failed

4  to take advantage of this opportunity.  (*See* 6/24/13 King Decl. (Dkt. # 38) Ex. 2.)

5          In ruling on Plaintiffs' second motion to compel and for discovery sanctions, the

6  court found that even if Defendants had offered to produce documents during the week of

7  March 18, 2013, such a production still would have been in violation of the court's

8  February 20, 2013, order, which required full production without objections by March 1,

9  2013 (*see* 2/20/13 Order at 6).  (7/18/13 Order (Dkt. # 43) at 17.)  Further, the court

10  found that Defendants' offer to Plaintiffs for an on-site review of Defendants' documents

11  was illusory.  (*See id.*)  Plaintiffs' counsel had asked about the availability of duplication

12  services at the private home that served as IAI's and IAP's offices and had proposed

13  sending the documents off-site for duplication.  (6/5/13 Kruckeberg Decl. (Dkt. # 31)

14  ¶ 9.)  Defendants' counsel responded that he would inquire with his clients.  (*Id.*)  Despite

15  numerous follow-up inquiries from Plaintiffs' counsel, Defendants never provided

16  clarification or indicated that they would agree to the having the documents sent off-site

17  for duplication, and they continued to put off arrangements for inspection and copying of

18  the on-site documents.  (*Id.* ¶¶ 10-20, Exs. G-N.)  By the time that Plaintiffs filed their

19  second motion to compel discovery and for sanctions, they had still not been able to make

20  arrangements to review Defendants' documents on-site.  (*See generally* 2d Sanc. Mot.)

21          Accordingly, on July 18, 2013, the court once again ordered Defendants to

22  produce all of the financial records pertaining to Ms. Thompson and the remaining

ORDER- 8

1   outstanding discovery covered by the court's first discovery and sanctions order no later

2   than August 1, 2013.  (7/18/13 Order at 19-20.)  The court also ordered Defendants and

3   their counsel to file a certification with the court by the same day stating that they had

4   complied with the court's order and produced all of the remaining records related to Ms.

5   Thompson and other documents covered by the court's prior order.  (*Id.*)

6          The court found that Defendants' failure to comply with the court's prior order

7   was willful and that Plaintiffs had suffered prejudice as a result of Defendants'

8   obstreperous conduct.  (*Id.* at 17-18.)  Accordingly, the court granted Plaintiffs' request

9   for additional monetary sanctions in the form of Plaintiffs' reasonable expenses,

10  including attorney's fees, caused by Defendants' failure to comply with the court's prior

11  discovery order.[3]  (*Id.* at 21.)  In order to avoid compounding the prejudice to Plaintiffs

12  by forcing them to go to trial on an incomplete record, the court struck the trial date,

13  authorized Plaintiffs to file an additional motion for summary judgment following

14  Defendants' compliance with its order, and stated that the court would reschedule a trial

15  date following consideration of Plaintiffs' third motion for summary judgment, if

16  necessary.  (*Id.* at 21.)  Finally, the court expressly warned Defendants that if they failed

17  to produce the ordered discovery or to file the required certifications with the court within

18

19

20          [3] In response to the court's July 18, 2103, order, Plaintiffs filed a declaration quantifying

21  and documenting their reasonable attorney's fees and expenses incurred in bringing their second
     motion to compel and for sanctions.  (7/22/13 Kruckeberg Decl. (Dkt. # 44).)  Defendants failed

22  to file any response to Plaintiffs' submission (*see generally* Dkt.), despite the opportunity to do
     so provided in the court's order (7/18/13 Order at 21).

1 the ordered timeframe, the court would consider additional sanctions including adverse

2 evidentiary findings or the entry of default judgment against Defendants. (*Id.* at 20.)

3     On June 5, 2013, Plaintiffs also filed a second motion for partial summary

4 judgment. (2d SJ Mot. (Dkt. # 32).) In its July 18, 2013, order, the court granted

5 Plaintiffs' motion for summary judgment with respect to the amount of Mr. Curtis'

6 contract damages, but denied summary judgment with respect to the amount of Ms.

7 Aldrich's and Mr. Currier's contract damages. (7/18/13 Order at 9-10.) The court also

8 denied summary judgment with respect to Plaintiffs' request for maximum statutory

9 damages regarding their claim for copyright infringement, ruling that such a request was

10 properly reserved for the jury. (*Id.* at 10-15.)

11     Defendants ignored the court's July 18, 2013, order directing the production of

12 discovery and the filing of certifications verifying such production. (8/8/13 Kruckeberg

13 Decl. (Dkt. # 48) ¶ 5 ("To date, the defendants and defendants' counsel have not

14 provided . . . any additional documents nor filed any certification since the Court entered

15 its [July 18, 2013] Order.").) Accordingly, on August 8, 2013, Plaintiffs filed their third

16 motion for sanctions and for partial summary judgment. (*See generally* 3d Mot.)

17 Plaintiffs again seek partial summary judgment with respect to the amount of Ms.

18 Aldrich's and Mr. Currier's contract damages. (*Id.* at 10-12.) Plaintiffs also renew their

19 motion to pierce the corporate veil between the corporate entities and Mr. Thompson.

20 (*Id.* at 12-13.) In addition, Plaintiffs move for default judgment against Plaintiffs as a

21 sanction for their failure to respond to the court's July 18, 2013, order by producing the

22 required discovery or certifications. (*Id.* at 8-10.) Plaintiffs again seek maximum

1   statutory damages for Plaintiffs willful copyright violations, but this time on default

2   judgment rather than summary judgment.  (*Id.* at 13-15.)  Finally, Plaintiffs also seek to

3   recover their reasonable attorney's fees and expenses in bringing their third motion for

4   sanctions under Federal Rule of Civil Procedure 37 and all of their reasonable attorney's

5   fees and costs in pursuing their copyright claims under 17 U.S.C. § 505.  (*Id.* at 16.)

6          At the time Plaintiffs filed their third motion for partial summary judgment and

7   sanctions, the only communication that Plaintiffs had received from Defendants' counsel

8   was a request for a "stipulation regarding the scope of issues for trial."  (8/8/13

9   Kruckeberg Decl. Ex. A.)  Plaintiffs' counsel responded that he believed such a request

10  was premature and reminded Defendants' counsel that additional discovery responses

11  pursuant to the court's July 18, 2013, order were due in couple of days.  (*Id.* Ex. B.)

12  Defendants' counsel did not respond (*id.* ¶ 4), and Plaintiffs' counsel subsequently filed

13  their present motion.

14         On the same day that their response was due to Plaintiffs' third motion for

15  sanctions and partial summary judgment, Defendants belatedly produced additional

16  documents.  (*See* 8/26/13 Resp. (Dkt. # 50) at 1.)  Defendants produced these documents

17  well after the original discovery cut-off of May 6, 2013 (Sched. Order (Dkt. # 15) at 1),

18  well after the August 1, 2013, date for production specified in the court's July 18, 2013,

19  order (7/18/13 Order at 19-20), and only one week prior to the deadline for Plaintiffs to

20  file an additional motion for summary judgment (*id.* at 20).  In addition, neither

21  Defendants nor their counsel have filed the certifications ordered by the court verifying

22  that they have complied with the court's July 18, 2013, order.  (*Id.* at 19.)  Mr. Thompson

1    has indicated his willingness to sign such a certification (9/6/13 Thompson Decl. (Dkt. #

2    53) at 14), but articulating a willingness to comply with the court's order and actually

3    doing it are two very different things.

4           Further, Defendants' statements in their responsive papers concerning the extent

5    of their late production of documents are entirely contradictory.  On one hand, in their

6    responsive memorandum, Defendants state that "Defendants provided the bulk of the

7    requested information to Plaintiffs," and "Defendants are still in the process of gathering

8    information regarding Defendant Kim Thompson."  (8/26/13 Resp. (Dkt. # 50) at 1-2.)

9    On the other hand, Mr. Thompson states that "all requested items have been provided to

10   Plaintiffs," and specifically that Ms. Thompson's "material has now been delivered in its

11   entirety to Plaintiffs' counsel."[4]  (9/6/13 Thompson Decl. at 7.)  Without the

12

13   _____

14          [4] On August 23, 2013, Defendants' counsel moved to withdraw from this litigation.
     (Mot. to Withdraw (Dkt. # 49).)  The court denied the motion because it failed to adhere to the
     requirements of Local Rules of the Western District of Washington, but without prejudice to re-
15   filing a motion to withdraw that was in conformity with the court's local rules.  (10/22/13 Order
     (Dkt. # 54).)  In his response to Plaintiffs' motion, Defendants' counsel states that Defendants
16   have terminated his services.  (8/26/13 Resp at 2.)  The court notes that in light of this statement
     and the attempt by Defendants' counsel to withdraw from this litigation, Mr. Thompson's pro se
17   declaration could be construed as a response by the Thompsons in their individual capacities to
     Plaintiffs' motion.  Although Mr. Thompson is entitled to represent himself in this litigation, *see*
18   28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own
     cases personally or by counsel as, by the rules of such courts, respectively, are permitted to
     manage and conduct causes therein."), Mr. Thompson may not represent Ms. Thompson, even if
19   he has her authorization to do so.  *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) (per
     curiam) ("A litigant appearing in propria persona has no authority to represent anyone other than
20   himself."); *Sui v. Southside Towing*, No. SACV 10–01973 JAK (AJW), 2011 WL 2940990, at *3
     (C.D. Cal. July 18, 2011) ("A pro se litigant . . . cannot appear in this action on his wife's behalf
21   or act as her representative merely to assist her in litigating her claims, even if he has her
     authorization to do so.").  To the extent that the Thompsons have discharged their attorney, Ms.
22   Thompson will need to either engage a new attorney or appear in this litigation pro se on her own
     behalf.

1   certifications required by the court from both counsel and the Thompsons, neither

2   Plaintiffs nor the court can know which statements are true.

3         In addition to a responsive memorandum, Plaintiffs also filed a declaration from

4   their counsel (8/26/13 King Decl. (Dkt. # 51)), which attached another declaration from

5   Mr. Thompson (8/26/13 Thompson Decl. (Dkt. # 51-1)).  In their reply memorandum,

6   Plaintiffs note that none of the documents Defendants filed in response to their third

7   motion for sanctions and partial summary judgment were properly signed under Local

8   Rule LCR 11(a).  (8/30/13 Reply (Dkt. # 52) at 2 (citing Local Rules W.D. Wash. LCR

9   11(a)).)  In addition, Mr. Thompson's declaration was not certified as true under penalty

10  of perjury.  (*See* 8/26/13 Thompson Decl. at 12.)  Accordingly, Plaintiffs move to strike

11  these documents.  (8/30/13 Reply at 2-3.)

12        On September 6, 2013, Mr. Thompson filed an amended declaration, which

13  included substantive amendments to his original unsigned and unsworn declaration, as

14  well as the required certification and signature.  (9/6/13 Thompson Decl. (Dkt. # 53).)

15  The amended declaration did not, however, include any of the attachments filed with his

16  previous unsigned and unsworn declaration.  (*See generally id.*)

17                              **III.    ANALYSIS**

18        **A.  Motion for Partial Summary Judgment**

19        Summary judgment is appropriate if the evidence, when viewed in the light most

20  favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

21  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

22  P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Torres v. City of Madera*,

1  648 F.3d 1119, 1123 (9th Cir. 2011) ("Summary judgment is appropriate only if, taking

2  the evidence and all reasonable inferences drawn therefrom in the light most favorable to

3  the non-moving party, there are no genuine issues of material fact and the moving party is

4  entitled to judgment as a matter of law.").  The moving party bears the initial burden of

5  showing that there is no genuine issue of material fact and that he or she is entitled to

6  prevail as a matter of law.  *Celotex*, 477 U.S. at 323; *see also Furnace v. Sullivan*, 705

7  F.3d 1021, 1026 (9th Cir. 2013).

8       When the moving party has the burden of proof on a specific issue, the moving

9  party has the burden of establishing a prima facie case as to that issue on its motion for

10  summary judgment.  *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th

11  Cir. 1995) ("Because appellees had the burden of proof on the question of alter ego, they

12  had the burden of establishing a prima facie case on their motion for summary

13  judgment.").  If the moving party meets his or her burden, then the non-moving party

14  "must make a showing sufficient to establish a genuine dispute of material fact regarding

15  the existence of the essential elements of his case that he must prove at trial" in order to

16  withstand summary judgment.  *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

17  In judging evidence at the summary judgment stage, the court does not make credibility

18  determinations or weigh conflicting evidence, but rather views all evidence and draws all

19  inferences in the light most favorable to the non-moving party.  *T.W. Elec. Serv., Inc., v.*

20  *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing *Matsushita*

21  *Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Hrdlicka*

22  *v. Reniff*, 631 F.3d 1044, 1048, 1051 (9th Cir. 2011); *Motley v. Parks*, 432 F.3d 1072,

1   1075 n. 1 (9th Cir. 2005) (en banc); *Miranda v. City of Cornelius*, 429 F.3d 858, 860 n. 1

2   (9th Cir. 2005).

3           However, conclusory testimony in affidavits and motion papers, unsupported by

4   factual data, is insufficient to raise genuine issues of fact and defeat summary judgment.

5   *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("Conclusory,

6   speculative testimony in affidavits and moving papers is insufficient to raise genuine

7   issues of fact and defeat summary judgment."); *see also Rivera v. Nat'l R.R. Passenger

8   Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by

9   factual data cannot defeat summary judgment."); *Hansen v. United States,* 7 F.3d 137,

10  138 (9th Cir. 1993) ("When the non-moving party relies on its own affidavits to oppose

11  summary judgment, it cannot rely on conclusory allegations unsupported by factual data

12  to create an issue of material fact."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)

13  (ruling that nonmoving party cannot defeat a motion for summary judgment "by relying

14  solely on conclusory allegations unsupported by factual data." ); *Thornhill Publ'g Co.,

15  Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  As the Supreme Court has stated,

16  "[the] mere existence of a scintilla of evidence . . . will be insufficient; there must be

17  evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson

18  v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also F.T.C. v. Stefanchik*, 559 F.3d

19  924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence

20  in his favor are both insufficient to withstand summary judgment.").  Further, "[w]hen

21  opposing parties tell two different stories, one of which is blatantly contradicted by the

22  record, so that no reasonable jury could believe it, a court should not adopt that version of

1  the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550

2  U.S. 372, 380 (2007).

3     **1. Piercing the Corporate Veil**

4       In its May 29, 2013, order on partial summary judgment, the court previously held

5  that the corporate veil between the corporate entities, IAI and IAP, should be pierced.

6  (5/29/13 Order at 13-18.)  The court, however, declined to pierce that veil with respect to

7  the Thompsons because there was a lack of evidence showing that the Thompsons had

8  harmed Plaintiffs by personally dissipating any of the corporate entities assets.  (*Id.* at

9  18-19.)

10       Plaintiffs have renewed that motion in part requesting that the court disregard the

11  IAI's and IAP's corporate forms with respect to Mr. Thompson only.  (3d Mot. at 12-13.)

12  Plaintiffs present documentary evidence in the form of Mr. Thompson's and the

13  corporate entities' bank statements that (1) the corporate entities began making payments

14  on credit card accounts that had been previously paid from Mr. Thompson's personal

15  account (Mot. at 12 (citing 8/8/13 Kruckeberg Decl. (Dkt. # 48) Exs. C, D)), (2) the

16  corporate entities began paying grocery bills in late 2011, while Mr. Thompson's

17  personal grocery payments declined precipitously during the same general time period

18  (Mot. at 13 (citing 8/8/13 Kruckeberg Decl. Exs. E-G)), (3) the corporate entities paid

19  $4,000.00 to one Mr. Thompson's personal real-estate partnerships, (4) Mr. Thompson

20  freely transferred money between his personal account and the company account (Mot. at

21  13 (citing 8/8/13 Kruckeberg Decl. Ex. K)), and (5) in 2012, the corporate entities began

22

1  paying for salon services, pet services, and dental work (Mot. at 13 (citing 8/8/13

2  Kruckeberg Decl. Ex. L)).

3      In order to disregard the corporate form based on a fraudulent transfer of assets

4  under Washington law, the court evaluates two factors:  (1) the corporate form must be

5  intentionally used to violate or evade a duty to another, and (2) disregard of the form

6  must be necessary and required to prevent unjustified loss to the injured party.  *Meisel v.*

7  *M & N Modern Hydraulic Press Co.*, 645 P.2d 689, 692 (Wash. 1982).  To satisfy the

8  first element, the court must find an abuse of the corporate form, which typically involves

9  fraud, misrepresentation, or some form of manipulation of the corporate to the

10  stockholder's benefit and the creditor's detriment.  *Id.*  To satisfy the second element, the

11  wrongful corporate activities must actually harm the party seeking relief so that disregard

12  is necessary.  *Id.* at 693.  Courts will "pierce[] the corporate veil and impose[] personal

13  liability where the corporate entity has been disregarded by the principals themselves so

14  that there is such a unity of ownership and interest that the separateness of the

15  corporation has ceased to exist."  *McCombs Constr., Inc. v. Barnes*, 645 P.2d 1131, 1135

16  (Wash. Ct. App. 1982) ("The record provides substantial evidence that [the defendant]

17  comingled his personal affairs with those of the corporation such as to warrant imposition

18  of personal liability upon [the defendant]."); *see also Brooke v. Robinson*, No. 50150-0-I,

19  2003 WL 103457, at *3 (Wash. Ct. App. Jan. 13, 2003) ("The doctrine of corporate

20  disregard is intended to address situations where personal finances are comingled with

21  those of the corporation.").

22

ORDER- 17

1    Plaintiffs assert that the payments documented above represent an intentional and

2  improper dissipation of corporate assets that harmed Plaintiffs by funding Mr.

3  Thompson's personal expenditures and lifestyle rather than paying royalties that were

4  due to them.  (3d Mot. at 12-13.)  Thus, Plaintiffs assert that the court should disregard

5  IAI's and IAP's corporate form to impose personal liability upon Mr. Thompson for

6  IAI's and IAP's breach of contract.  (*See id.*)  The court concludes that Plaintiffs have

7  sufficient evidence to establish a prima facie claim for piercing the corporate veil with

8  respect to Mr. Thompson's personal liability for IAI's and IAP's breach of contract.

9  Plaintiffs' evidence establishes an intentional and improper use of the corporate form in

10  that Mr. Thompson utilized corporate assets to pay for obviously personal expenses.

11  Further, such dissipation of corporate assets harmed Plaintiffs in that those corporate

12  funds were not then available to pay Plaintiffs' royalties.  Because Plaintiffs have

13  established a prima facie case for corporate disregard, Defendants must come forward

14  with a showing sufficient to establish a genuine dispute of material fact in order to avoid

15  an entry of partial summary judgment on this issue.

16    Defendants timely filed a response to Plaintiffs' motion on August 26, 2013.  (*See*

17  8/26/13 Resp.; 8/26/13 King Decl.; 8/26/13 Thompson Decl.)  Plaintiffs, however, have

18  moved to strike Defendants' responsive documents because none of them were signed.

19  (*See* 8/30/13 Reply (Dkt. # 52) at 2 (citing Local Rules W.D. Wash. LCR 7(g) ("Requests

20  to strike materials in or attached to submissions of opposing parties shall not be presented

21  in a separate motion to strike, but shall instead be included in the responsive brief, and

22  will be considered with the underlying motion.").)

ORDER- 18

1    Defendants' counsel failed to properly sign either the electronically filed

2  responsive memorandum or his electronically filed declaration.  (*See* 8/26/13 Resp. at 3;

3  8/26/13 King Decl. at 3.)  The signature line on both electronically filed documents

4  simply contains the following symbol: "/s/".  (*See id.*)  Further, Mr. Thompson's August

5  26, 2013, declaration is both unsigned and unsworn.  (*See* 8/26/13 Thompson Decl. at

6  12.)  "Electronic signatures must be in conformance with this district's Electronic Filing

7  Procedures for Civil and Criminal Cases."  Local Rules W.D. Wash. LCR 11(a).  An

8  electronically filed document requiring a signature must have the signor's name printed

9  or typed on the line and under all of the signature lines.  *See* <u>U.S. District Court, Western</u>

10  <u>District of Washington Electronic Filing Procedures for Civil and Criminal Cases</u>, § L, at

11  9 (2012).[5]  "The court must strike an unsigned paper unless the omission is promptly

12  corrected after being called to the attorney's or party's attention."  Fed. R. Civ. P. 11(a).

13  Although lack of swearing is not a fatal defect, unsworn declarations must at least

14  substantially comply with 28 U.S.C. § 1746, which requires that they be signed and

15  certified as true under penalty of perjury.  *See, e.g.*, *CFTC v. Topworth Int'l, Ltd.*, 205

16  F.3d 1107, 1112 (9th Cir. 1999) (finding declaration adequate where it was "in

17  substantial compliance" with 28 U.S.C § 1746).  Mr. Thompson's August 26, 2013,

18  declaration contains no signature and no statement that it is made under penalty of

19  perjury.  It not only does not substantially comply with 28 U.S.C. § 1746, it does not

20  comply at all.

21  _____

22    [5] This document can be found at
http://www.wawd.uscourts.gov/sites/wawd/files/ECFFilingProceduresAmended12.20.12.pdf.

ORDER- 19

1    Despite the fact that, in their reply memorandum, Plaintiffs called Defendants'

2  counsel's attention to his failure to sign either the responsive memorandum or his

3  declaration, Defendants' counsel never corrected his omission.  He has never filed

4  properly signed copies of either Defendants' responsive memorandum or his declaration.

5  (*See generally* Dkt.)  Accordingly, the court grants Plaintiffs' motion to strike these

6  documents.

7    On September 6, 2013, Mr. Thompson filed a signed declaration that was certified

8  as true under penalty of perjury, and thus, Mr. Thompson's September 6, 2013,

9  declaration substantially complies with 28 U.S.C. § 1746.  (*See generally* 9/6/13

10  Thompson Decl.)  Unfortunately, Mr. Thompson's September 6, 2013, declaration is not

11  simply a signed version of his August 26, 2013, declaration.  Instead, Mr. Thompson both

12  adds statements that do not appear in his original declaration and deletes other statements.

13  (*Compare* 8/26/13 Thompson Decl. *with* 9/6/13 Thompson Decl.)  As a result, there is no

14  signed or certified version of Mr. Thompson's August 26, 2013 declaration on the record.

15  Because Mr. Thompson's August 26, 2013, declaration does not substantially comply

16  with 28 U.S.C. § 1746, the court declines to consider it on summary judgment, and grants

17  Plaintiffs' motion to strike it.  *See, e.g.*, *Blaine v. Adams*, No. 1:05-CV-00088-DGC, 2009

18  WL 2824743, at *2 (E.D. Cal. Sept. 1, 2009) (holding that court will not consider

19  unsigned declaration in ruling on motion for summary judgment).

20    The court also declines to consider Mr. Thompson's September 9, 2013,

21  declaration, but on different grounds.   As noted above, Mr. Thompson's September 9,

22  2013, declaration contains new material not in his original August 26, 2013, declaration,

ORDER- 20

1    and also deletes statements that were in his original declaration.  However, the September

2    6, 2013, declaration was not filed until one week after the noting date for Plaintiffs'

3    motion.  It is, therefore, untimely under the court's local rules.  *See* Local Rules W.D.

4    Wash. LCR 7(d)(3) ("Any opposition papers shall be filed and served not later than the

5    Monday before the noting date.").

6            Neither Mr. Thompson, nor Defendants' counsel, ever sought or obtained leave

7    from the court, as required under Federal Rule of Civil Procedure 6(b), to submit

8    additional untimely evidence in support of Defendants' positions.  *See* Fed. R. Civ. P.

9    6(b)(1)(B).  The court, therefore, exercises its discretion and declines to consider Mr.

10   Thompson's late-filed declaration.  *Lujan v. National Wildlife Federation*, 497 U.S. 871,

11   895-97 (1990) (appellate court erred in ruling district court was compelled to accept late

12   filed affidavits opposing summary judgment motion); *Fleischer Studios, Inc. v.*

13   *A.V.E.L.A., Inc.*, 654 F.3d 958, 966 (9th Cir. 2011) ("The Supreme Court has held that it

14   is never an abuse of discretion for a district court to exclude untimely evidence when a

15   party fails to submit that evidence pursuant to a motion, as Rule 6(b) expressly requires.")

16   (citing *Lujan*).  As noted above, Plaintiffs have established a prima facie case for

17   corporate disregard.  Because the court has granted Plaintiffs' motion to strike

18   Defendants' responsive documents, there is no countervailing evidence for the court to

19   consider.  Accordingly, the court grants Plaintiffs' motion on partial summary judgment

20   and finds that Mr. Thompson should bear personal liability for IAI's and IAP's breach of

21   contract with Plaintiffs.

22

1    Even if, however, the court were to consider Mr. Thompson's September 6, 2013,

2    declaration, the result would be the same.  Mr. Thompson admits that he "sometimes

3    found [him]self without enough cash or without enough in [his personal] account to pay

4    certain expenses that arose" and that some of the activities described above "might

5    technically qualify as comingling."[6] (9/6/13 Thompson Decl. at 11.)  Nevertheless, he

6    repeatedly insists that there has never been a month in which transfers from the business

7    entities' bank accounts into his personal accounts exceeded his personal transfers into the

8    business entities' accounts (*see id.* at 8-10).  Thus, he argues that to the extent he has

9    comingled his personal and business accounts, "th[e] practice has done no harm to the

10   plaintiffs or to anyone else" (*id.* at 10), and corporate disregard is therefore unwarranted

11   (*see id.* at 11).

12    Unfortunately, Mr. Thompson provides no accounting, business or other records to

13   counter the documentation provided by Plaintiffs or to support his assertions that his

14   admitted comingling activities have not dissipated corporate assets or harmed anyone.

15   (*See generally* 9/6/13 Thompson Decl.)  Mr. Thompson is the President and only

16   shareholder actively engaged in IAI and the sole owner and managing member of IAP.

17   (*Id.* at 1-2.)  All of the records necessary to support his stance that his acknowledged

18   comingling activities have not dissipated corporate funds or assets are, therefore, within

19   his control.  Despite this fact, he has not come forward with any such records or

---

21   [6] Mr. Thompson makes this admission despite his statement in a previous declaration that
     neither his nor Ms. Thompson's bank accounts were ever comingled with IAI's and IAP's bank
22   accounts.  (*See* 4/15/13 Thompson Decl. (Dkt. # 26) ¶ 16 ("Kimmie's personal bank account and
     my personal bank account were never comingled with IAP and IAI business accounts.").)

1  documentation.  Although he asserts that his personal deposits into the business entities

2  accounts "can be verified by examining the bank statements and bank deposit books

3  provided to Plaintiffs" (8/26/13 Thompson Decl. at 9; *see also id.* at 11), he fails to

4  submit any of this evidence to the court.  Importantly, he also fails to explain why he has

5  not submitted any of this evidence or why—if he provided the relevant bank statements

6  and back deposit books to Plaintiffs—these documents are not still available to him for

7  purposes of presentation to the court.  (*See generally id.*)

8         Thus, all Mr. Thompson provides the court in support of his position is his own

9  self-serving declaration devoid of any supporting documentary evidence or accounting or

10  other business records.  As noted above, "a conclusory, self-serving affidavit, lacking

11  detailed facts and any supporting evidence, is insufficient to create a genuine issue of

12  material fact."  *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

13  Further, "[w]hen opposing parties tell two different stories, one of which is blatantly

14  contradicted by the record, so that no reasonable jury could believe it, a court should not

15  adopt that version of the facts for purposes of ruling on a motion for summary judgment."

16  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Plaintiffs have submitted documentary

17  evidence establishing Mr. Thompson's use of corporate funds for personal expenditures.

18  He has acknowledged that he comingled his personal and business accounts.  In the

19  absence of any evidence to back up his self-serving assertions that the assets of the

20  corporate entities were not dissipated to pay his personal bills because he replaced the

21  funds he used on personal expenditures with even more money, he cannot avoid summary

22

ORDER- 23

1    judgment on the issue of corporate disregard.[7]  Based on the authorities cited above, even

2    if the court were to consider Mr. Thompson's signed declaration, it would still grant

3    partial summary judgment to Plaintiffs on this issue.[8]

4    _____

5    [7] The court notes that not all "self-serving" declarations are insufficient to avoid
     summary judgment.  For example, in circumstances involving conversations between two
6    people, declarations regarding the content of the conversation oftentimes may well be
     uncorroborated or "self-serving"—"and properly so."  *See, e.g., Securities and Exchange*
7    *Comm'n v. Phan*, 500 F.3d 895, 909-10 (9th Cir. 2007).  Such declarations inherently involve
     credibility determinations that must ordinarily be submitted to the jury.  *See id.* at 910.  This is
8    not, however, the circumstance here.  Plaintiffs have placed documentary evidence on the record
     of Mr. Thompson's comingling of personal and business funds.  Although he admits such
9    conduct (*see* 9/6/13 Thompson Decl. at 11 (admitting that the companies payment of purely
     personal expenses "might technically quality [sic] as comingling")), he baldly asserts in his
10   declaration that Plaintiffs were not harmed by these acts because he ultimately transferred more
     money into the businesses than he ever took out.  (*Id.* at 9-11.)  Despite the fact that documents
11   that could presumably back-up his bald assertions are necessarily within his control (*see id.* at 10
     (stating that amounts Mr. Thompson paid into the business accounts can be verified by
12   examining documents and records he provided to Plaintiffs)), he has neither produced this
     evidence nor explained his failure to do so.  In circumstances such as this, the conclusory
13   statements in Mr. Thompson's declaration that his total personal transfers into the business
     accounts exceeded payments by the businesses of his personal expenses do not create an issue of
14   material fact that can avoid the entry of partial summary judgment on the issue of corporate
     disregard.

15   [8] Plaintiffs' complaint does not allege Mr. Thompson's personal liability on the basis of
     piercing IAI's and IAP's corporate veil.  (*See generally* Compl. (Dkt. # 1).)  Thus, the court can
16   not consider this claim as a part of Plaintiffs' sanctions motion and request for entry of default
     judgment.  In a default judgment, the "court takes 'the well-pleaded factual allegations' in the
17   complaint 'as true,' [but] a 'defendant is not held to admit facts that are not well-pleaded . . . .'"
     *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Cripps v. Life Ins. Co.*
18   *of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) and *Nishimatsu Constr. Co. v. Houston Nat'l*
     *Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  The court, however, can consider this issue on
19   summary judgment despite the fact that Plaintiffs did not plead the requisite factual allegations.
     Federal Rule of Civil Procedure 15(b)(2) states:

20       When an issue not raised by the pleadings is tried by the parties' express or
         implied consent, it must be treated in all respects as if raised in the pleadings.  A
21       party may move—at any time, even after judgment—to amend the pleadings to
         conform them to the evidence and to raise an unpleaded issue. But failure to
22       amend does not affect the result of the trial of that issue.

### 2.  Contract Damages for Ms. Aldrich and Mr. Currier

The court previously held that Plaintiffs presented sufficient evidence to justify the entry of summary judgment with respect to the amount of Ms. Curtis's contract damages. (7/18/13 Order at 9.)  Specifically, the court held that Ms. Curtis is entitled to $5,790.84 in royalty payments from IAI or IAP under the publishing contracts at issue.  (*Id.*)  The court, however, denied summary judgment with respect to the amount of contract damages for either Ms. Aldrich or Mr. Currier, but "without prejudice . . . to re-filing" a renewed motion for partial summary judgment following additional production of documents from Defendants.  (*See id.* at 9-10, 20.)

Plaintiffs have now renewed their motion for partial summary judgment on this issue.  (*See* 3d Mot. at 11-12.)  Plaintiffs seek $4,856.04 in underpaid royalties for Ms. Aldrich and $518.88 in underpaid royalties for Mr. Currier.  (*Id.* at 11.)  In their prior motion, Plaintiffs had simply extrapolated the amount of contract damages they claimed for Ms. Aldrich and Mr. Currier based on the amount of contract damages they found for

---

Fed. R. Civ. P. 15(b)(2).  The Ninth Circuit has interpreted Rule 15(b)(2) to apply when the parties fully argue the merits of an unpleaded claim on summary judgment with no objection from defendants.  *See Lone Star Sec. & Video, Inc. v. City of L.A.*, 584 F.3d 1232, 1235 n. 2 (9th Cir. 2009); *Galassini v. Town of Fountain Hills*, No. CV-11-02097-PHX-JAT, 2013 WL 5445483, at *5, n.1 (D. Ariz. Sept. 30, 2013).  In this case, the parties have fully argued this issue not once, but twice, on summary judgment.  In addition to the present motion, the court previously granted partial summary judgment and pierced the corporate veil between IAI and IAP, but denied partial summary judgment piercing the corporate veil between the corporate entities on the one hand and the Thompsons on the other.  (*See* 5/29/13 Order at 10-19.) Defendants have never objected to Plaintiffs moving on summary judgment regarding this issue on the grounds that the issue was not pleaded in the complaint.  Thus, pursuant to Rule 15(b)(2), Defendants have impliedly consented to the constructive amendment of Plaintiffs' complaint regarding the issue of piercing IAI's and IAP's corporate veil and imposing personal liability upon Mr. Thompson for the companies' liabilities herein.

1   Ms. Curtis.  (*See* 7/18/13 Order at 9-10.)  In their present motion, however, they rely

2   upon available tax records for Ms. Aldrich and Mr. Currier instead to calculate damages

3   (*see* 3d Mot. at 11)—similar to the calculation and basis used in their prior motion with

4   respect to Ms. Curtis that the court found to be sufficient on summary judgment (*see*

5   7/18/13 Order at 9).

6           The court, however, declines to grant summary judgment with respect to the

7   amount of Ms. Aldrich's and Mr. Currier's contract damages on summary judgment, and

8   in fact chooses to revisit its prior order with respect to the amount of Ms. Curtis's

9   contract damages.  A district court may *sua sponte* reconsider its rulings with respect to

10  Plaintiffs' prior motions for partial summary judgment so long as the court has not been

11  divested of jurisdiction.  *See United States v. Smith*, 389 F.3d 944, 949 (9th Cir. 2004);

12  *Wood v. Scottsdale Indem. Co.*, No. CV 08-03335 NJV, 2010 WL 3743868, at * 5 (N.D.

13  Cal. Sept. 20, 2010); *J2 Global Comm'ns, Inc. v. Protus IP Solutions*, No. CV 06-00566

14  DDP (AJWx), 2010 WL 1609965, at *3 (C.D. Cal. Apr. 20, 2010).

15          In a prior order, this court granted Plaintiffs' motion for partial summary judgment

16  and permanently enjoined Defendants from infringing Plaintiffs' copyrights in the three

17  books at issue.  (5/29/13 Order at 24.)  As part of that order, the court also ordered

18  Defendants "to return to Plaintiffs all infringing copies of [the books at issue]."  (*Id.*)

19  Without deciding the issue, the court is concerned that the value of these books should be

20  considered as an offset to any contract or other damages awarded to Plaintiffs and this

21  fact was not reflected in its prior order on partial summary judgment.  *See, e.g.*, *Entral*

22  *Group, Int'l, LLC, v. Honey Café on 5th, Inc.*, No. 05 CV 2290 NGG MDG, 2006 WL

1   3694584, at *9 (E.D.N.Y. Dec. 14, 2006) ("If plaintiff sells any of the forfeited

2   equipment . . . , the proceeds of such sale, minus the costs of sale, should be applied pro

3   rata against the damages assessed against defendants.") (citing *RSO Records, Inc. v. Peri*,

4   596 F. Supp. 849, 864 (S.D.N.Y. 1984) ("Plaintiffs are directed to sell any remaining

5   [items], . . . which can be used for legitimate, non-infringing purposes.  The proceeds of

6   this sale, minus the costs of the sale, are to be applied pro rata against the damages

7   assessed against defendants.")).  Accordingly, the court orders the parties to show cause

8   why the court should not vacate its prior order on partial summary judgment with respect

9   to the amount of Ms. Curtis's contract damages.  Specifically, the court directs the parties

10  to consider whether the value of the books and other items that Defendants turned over to

11  Plaintiffs in compliance with the court's May 29, 2013, order should be applied as an

12  offset to any contract or other damages awarded to Plaintiffs.

13          The parties shall file simultaneous response memoranda to the court's order to

14  show cause within ten days of the date of this order.  The parties' responses shall be

15  limited to ten pages.  The parties may, but are not required to, file simultaneous reply

16  memoranda within twenty days of the date of this order.  The parties' reply memoranda

17  shall be limited to five pages.  The court defers ruling on Plaintiffs' present motion for

18  partial summary judgment with respect to the amount of Ms. Aldrich's and Mr. Currier's

19

20

21

22

1    contract damages until following receipt of the parties' responses and replies to the

2    court's order to show cause.[9]

3        **B.  Motion for Sanctions**

4        Plaintiffs seek an entry of default judgment against Defendants as a sanction for

5    Defendants' disregard of the court's discovery orders.  (3d Mot. at 8-10.)  The court has

6    already ruled on partial summary judgment that IAI and IAP are liable for breach of the

7    publishing contracts with Plaintiffs and that Defendants are liable for willful copyright

8    infringement.  (5/29/13 Order at 10, 19-23.)  The court also has pierced the corporate veil

9    between IAI and IAP finding that "both entities will be subject to the same liability with

10   respect to Plaintiffs' claims" (*id.* at 18), and in this order pierced the corporate veil

11   between the corporate entities and Mr. Thompson (*see supra* § III.A.1).  Thus, there

12   would appear to be few, if any, remaining issues of liability upon which the court could

13   enter default.  Nevertheless, the court can consider Plaintiffs' sanctions motion and

14   request for entry of default judgment as an alternate ground for finding liability on the

15   part of Defendants.  *See, e.g.*, *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 854

16   (2d Cir. 1995) (noting that district court entered summary judgment as a "fall-back

17   _____

18       [9] Mr. Thompson asserts in his declaration that the value of the books and other materials
     equals $7,329.52.  (9/6/13 Thompson Decl. at 9.)  Similar to Mr. Thompson's pronouncements

19   concerning the value of unpaid royalties, his valuation of the returned books and other materials
     is conclusory, self-serving, and devoid of any supporting documentation.  The court, however,

20   makes no determination with respect to the value of these materials at this point.  If, based on the
     parties' responses to the court's order to show cause, the court decides to vacate its prior order on

21   partial summary judgment with respect to the amount of Ms. Curtis's contract damages, then, as
     discussed below, the court will reserve ruling on Plaintiffs' contract damages until after an

22   evidentiary hearing on damages pursuant to Federal Rule of Civil Procedure 55(b)(2)(B).

1  position" to its entry of default judgment as sanction for violating the court's discovery

2  orders); *Buckeye Union Ins. Co. v. Boggs*, 109 F.R.D. 420, 423 (S.D. W.Va. 1986) ("Any

3  unease which the Court may have for the severe sanction of default judgment is tempered

4  in this instance by the alternative holding that the Plaintiff is also entitled to summary

5  judgment as to liability and to damages.").

6        Pursuant to Federal Rule of Civil Procedure 37(b)(2), a court may exercise its

7  discretion to impose sanctions on a party for failure to "to obey an order to provide or

8  permit discovery," including "prohibiting the disobedient party from supporting or

9  opposing designated claims or defenses . . . striking pleadings in whole or in part . . . [or]

10 rendering a default judgment against the disobedient party."  Fed. R. Civ. P.

11 37(b)(2)(A)(ii), (iii), (vi).  Default judgment is available as a sanction in appropriate cases

12 "not merely to penalize those whose conduct may be deemed to warrant such a sanction,

13 but to deter those who might be tempted to such conduct in the absence of such a

14 deterrent."  *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976)

15 (per curiam).[10]

16        To justify the imposition of case-dispositive sanctions under Rule 37(b)(2), the

17 court must find that the discovery violations were due to "willfulness, bad faith, or fault

18 of the party."  *See Commodity Futures Trading Commission v. Noble Metals*

19 *International, Inc.*, 67 F.3d 766, 770-71 (9th Cir. 1995) (citations and internal quotations

20 _____

21        [10] District courts also have "inherent power to control their dockets" and may "impose

22 sanctions including, where appropriate, default or dismissal." *Thompson v. Housing Auth. of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam).

ORDER- 29

1   omitted); *see also Societe Internationale v. Rogers*, 357 U.S. 197, 212 (1958).

2   Disobedient conduct not outside the control of the litigant is all that is required to

3   demonstrate willfulness, bad faith or fault. *Henry v. Gill Industries, Inc*., 983 F.2d 943,

4   948-49 (9th Cir. 1993) (inability to formalize retainer agreement with counsel and party's

5   absence due to out-of-town business trip were not matters "outside the control of the

6   litigant"); *United Artists Corp. v. La Cage Aux Folles*, 771 F.2d 1265, 1270 (9th Cir.

7   1985) ("travel schedule" preventing party from answering interrogatories for three

8   months no excuse), *abrogated on other grounds, Mt. Graham Red Squirrel v. Madigan*,

9   954 F.2d 1441, 1462 (9th Cir. 1992). In evaluating the propriety of sanctions, the court

10  considers "all incidents of a party's misconduct." *Adriana International Corp. v.*

11  *Thoeren*, 913 F.2d 1406, 1411 (9th Cir. 1990) ("A court may consider prior misconduct

12  when weighing a subsequent sanction motion.").

13        In exercising their discretion under Rule 37, courts consider five factors to

14  determine whether case-dispositive sanctions are appropriate: "(1) the public's interest in

15  expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk

16  of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of

17  cases on their merits; and (5) the availability of less drastic sanctions." *Conn. Gen. Life*

18  *Ins. v. New Images of Beverly Hills*, 482 F.3d 1091 (9th Cir. 2007). This five-part "test"

19  is not mechanical; rather, it provides "the district court with a way to think about what to

20  do, not . . . a script that the district court must follow." *Id.* at 1096.

21  //

22  //

### 1. Entry of Default as a Sanction for Violation of the Court's Discovery Orders

At the time that Plaintiffs filed their present motion, Defendants had not produced any documents in response to the court's July 18, 2013, order. Defendants did not produce additional documents until the day their response to the present motion was due (*see* 8/26/13 Resp. at 1; 8/30/13 Reply at 5), and neither Plaintiffs nor their counsel have ever filed the required certifications verifying that they have complied with the court's July 18, 2013, order (*see generally* Dkt.). As noted above, even if the court were to consider Defendants' unsigned or untimely papers filed in response to Plaintiffs' present motion, the statements in those papers concerning the completeness of their latest document production are inconsistent. (*Compare* 8/26/13 Resp. at 1-2 *with* 9/6/13 Thompson Decl. at 7.) Thus, neither the court nor Plaintiffs can have any assurance regarding the completeness of their document production. Defendants have now failed to fully and timely comply with two court orders regarding discovery. (*See* 2/20/13 Order; 7/18/13 Order.) In its July 18, 2013, order, the court expressly warned Defendants that if they failed to timely produce the ordered discovery or to timely file the required certifications of compliance, the court would consider additional sanctions including adverse evidentiary findings or the entry of default judgment against Defendants. (7/18/13 Order at 20.) Because Defendants failed to comply with the court's July 18, 2013, order, Plaintiffs now request that the court enter default judgment against Defendants as a sanction. (3d Mot. at 8.)

1    The court has little difficulty finding that Defendants' failure to fully and timely

2  comply with the court's prior discovery orders was willful or consisted of disobedient

3  conduct not outside the control of Defendants.  Even if the court were to consider

4  Defendants' unsigned or untimely filings in response to Plaintiffs' motion, the excuses

5  Defendants offer for their failure to comply are inadequate.  In their responsive

6  memorandum, Defendants simply argue that they have now "provided the bulk of the

7  requested information" and "are still in the process of gathering information regarding

8  Defendant Kim Thompson."  (8/26/13 Resp. at 1-2.)  Even assuming the truth of these

9  statements, they do not demonstrate compliance with the court's order.  To the contrary,

10  they represent an admission that Defendants have failed to fully and timely comply.

11  Further, it does not demonstrate a lack of willfulness or that the failure to fully comply

12  was outside of their control.  Defendants also argue in their memorandum that they "have

13  not unduly resisted discovery," because they "provided Plaintiffs as opportunity to review

14  all documents at Defendants' offices." (*Id.* at 2.)  The court addressed this argument

15  above.  Defendants' offer to allow Plaintiffs to review documents at Defendants' offices

16  was illusory because they refused to respond to Plaintiffs' inquiries regarding how

17  duplication was to be accomplished and continued to put off arrangements for inspection

18  and copying onsite.  (*See supra* § II.)

19    In his September 6, 2013, declaration, Mr. Thompson implies that Defendants'

20  failure to timely comply with the court's July 18, 2013, order was due to "an extended

21  and very exhausting business trip from July 14 through August 3," and due to their

22  counsel's failure to "send a message of any kind . . . regarding the court's urgent

ORDER- 32

1  requirement for the presentation of [Defendant] Kimmie [Thompson]'s information by

2  August 1." (9/6/13 Thompson Decl. at 8.)  Mr. Thompson's statement, however, is

3  disingenuous at best because the court had already ordered the production of Ms.

4  Thompson's financial information, along with the remainder of the outstanding

5  discovery, months before its July 18, 2013, order.  Indeed, the court had ordered the

6  production of this material as early as February 20, 2013—long before Mr. Thompson

7  and Ms. Thompson left on their extended business trip.  (*See* 2/20/13 Order at 6 (ordering

8  Defendants to provide complete responses to Plaintiffs' discovery requests "without

9  objection").)  In any event, Defendants' travel schedule is no excuse for failure to keep

10  abreast of the litigation or to comply with the court's discovery orders and does not

11  demonstrate a lack of willfulness.  *See, e.g., In re Virtual Vision*, 124 F.3d 1140, 1145

12  (9th Cir. 1997) (holding that a litigant's failure to advise counsel of his whereabouts and

13  failure to keep abreast of the status of his case indicates a lack of due diligence); *United*

14  *Artists Corp. v. La Cage Aux Folles*, 771 F.2d 1265, 1270 (9th Cir. 1985) ("travel

15  schedule" preventing party from answering interrogatories for three months no excuse),

16  *abrogated on other grounds, Mt. Graham Red Squirrel v. Madigan*, 954 F.2d 1441, 1462

17  (9th Cir. 1992).

18       Mr. Thompson also implies that Defendants refused to comply with the court's

19  order to produce financial records related to Ms. Thompson because they "considered the

20  requirement to provide [Ms. Thompson's] personal information an attempt to attack [Mr.

21  Thompson] by harassing [his] wife and that is [sic] was a small side issue in this case."

22  (9/6/13 Thompson Decl. at 8.)  Although this perception may have been Defendants'

1  reaction upon receipt of Plaintiffs' discovery requests, they did not timely object to

2  production of this material.  Further, once the court ordered production of Ms.

3  Thompson's financial information, Defendants were no longer entitled to dismiss

4  Plaintiffs' request as a mere "side issue."  Their refusal to produce these documents on

5  this basis in the face of a court order cannot be considered anything other than "willful."

6      Finally, Mr. Thompson also implies that any fault with Defendants' discovery

7  responses lies with Defendants' attorney, and thus terminating sanctions would be too

8  harsh.  (9/6/13 Thompson Decl. at 4-8.)  The Ninth Circuit, however, has repeatedly

9  rejected this argument.  *See W. Coast Theater Corp. v. City of Portland*, 897 F.2d 1519,

10  1523 (9th Cir.1990) (holding that "the faults and defaults of the attorney may be imputed

11  to, and their consequences visited upon, his or her client"); *Malone v. U.S. Postal Serv.*,

12  833 F.2d 128, 134 (9th Cir. 1987) (same); *Anderson v. Air West, Inc.*, 542 F.2d 522, 526

13  (9th Cir. 1976) (same); *see also Link v. Wabash R.R.*, 370 U.S. 626, 633 (1962) ("There

14  is certainly no merit to the contention that dismissal of petitioner's claim because of his

15  counsel's unexcused conduct imposes an unjust penalty on the client.  Petitioner

16  voluntarily chose this attorney as his representative in the action, and he cannot now

17  avoid the consequences of the acts or omissions of this freely selected agent."); *In re*

18  *Phenylpropanolamine (PPA) Products Liablity Litig.*, 460 F.3d 1217, 1233 (9th Cir.

19  2006) (citing foregoing authorities in context of application of Rule 37 terminating

20  sanctions).  Even if the court considers the excuses and justifications set forth in

21  Defendants' unsigned or untimely documents filed in response to Plaintiffs' motion, they

22  have failed to demonstrate that their non-compliance with the court's prior discovery

orders was outside of their control.  Accordingly, the court finds that Defendants'

disobedient conduct was willful and that case-dispositive sanctions, such as the entry of

default or default judgment, are available.

Having found "willfulness," the court next considers the five factors regarding

whether the imposition of terminal sanctions would be appropriate here.

> "Where a court order is violated, the first two factors [the public's interest
> in expeditious resolution of litigation and the court's need to manage its
> docket] support sanctions and the fourth factor [the public policy favoring
> disposition of cases on their merits] cuts against a default. Therefore, it is
> the third and fifth factors [the risk of prejudice to the party seeking
> sanctions and the availability of less drastic sanctions] that are decisive."

*Adriana*, 913 F.2d at 1412; *see also Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir.

1990).

A party suffers prejudice if the opposing party's actions impair the moving party's

"ability to prove the claims" or "threaten to interfere with the rightful decision of the

case." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990) (internal citations

omitted).  There can be no doubt that Defendants' obstreperous conduct in this litigation

has protracted this litigation, interfered with obtaining a rightful decision on the merits,

and impaired Plaintiffs' ability to go to or obtain a fair trial.  Indeed, the court previously

found it necessary to strike the trial date to avoid compounding Plaintiffs' prejudice by

forcing them to go to trial on an incomplete record.  (*See* 7/18/13 Order at 21.)

Even Defendants' last minute production of additional documents has not

remedied Plaintiffs' prejudice.  Due to their late production, Plaintiffs have had no

opportunity to utilize the documents in depositions or otherwise to flesh out the record or

1   to support their present motion for partial summary judgment.  "Last-minute tender of

2   documents does not cure the prejudice to opponents nor does it restore to other litigants

3   on a crowded docket the opportunity to use the courts."  *Fair Housing of Marin v.*

4   *Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *see also Payne v. Exxon Corp.*, 121 F.3d 503

5   508 (9th Cir. 1997) ("We have held that '[f]ailure to produce documents as ordered . . . is

6   considered sufficient prejudice.'") (quoting *Adriana Int'l Corp. v. Thoeren*, 913 F.2d

7   1406, 1412 (9th Cir. 1990)).  The court finds that Plaintiffs have been prejudiced in a

8   manner that supports the entry of case-dispositive sanctions.

9         The fifth factor—the availability of less drastic sanctions—has three subparts:

10  "whether the court has considered lesser sanctions, whether it tried them, and whether it

11  warned the recalcitrant party about the possibility of case-dispositive sanctions."  *Conn.*

12  *Gen. Life Ins*., 482 F.3d at 1096.  A warning that sanctions may be imposed "can itself

13  meet the 'consideration of alternatives' requirement."  *In re Phenylpropanolamine (PPA)*

14  *Products Liability Litigation*, 460 F.3d 1217, 1237 (9th Cir. 2006).  The court has both

15  considered and tried lesser sanctions on two occasions to encourage Defendants'

16  compliance with discovery rules and the court's discovery orders.  On February 20, 2013,

17  the court ordered Defendants to respond without objection to Plaintiffs' discovery

18  requests and imposed monetary sanctions against Defendants for their failure to respond

19  to Plaintiffs' discovery requests.  (*See generally* 2/20/13 Order.)  On March 19, 2013, the

20  court specified that Defendants and Defendants' counsel should pay Plaintiffs $5,594.00

21  in attorney's fees and costs within 14 days of the date of the order.  (3/19/13 Order at 5.)

22

1   Defendants did not timely and fully comply with the court's discovery order, and neither

2   Defendants nor their counsel have ever paid the monetary sanction.

3        In addition, on July 18, 2013, the court again ordered Defendants to produce

4   outstanding documents to Plaintiffs and also ordered Defendants and their counsel to file

5   certifications with the court that they had complied.  Neither Defendants, nor their

6   counsel, timely complied with this order.  Although Defendants did ultimately produce

7   more documents, as discussed above, it is impossible to tell the completeness of this

8   production based on Defendants' varying statements in the record.

9        Finally, in its July 18, 2013, order, the court expressly warned Defendants that

10  their failure to timely comply with the court's order could result in default judgment.

11  (7/18/13 Order at 20.)  *See In re Phenylpropanolamine (PPA) Products Liability*

12  *Litigation*, 460 F.3d 1217, 1229 (9th Cir. 2006) ("Warning that failure to obey a court

13  order will result in dismissal can itself meet the 'consideration of alternatives'

14  requirement.").  Despite the warning, Defendants failed to timely comply and the

15  completeness of their late production of additional documents is unknown.  The court is

16  forced to conclude that lesser sanctions have been and will continue to be unavailing.

17  Accordingly, the court grant Plaintiffs' motion for sanctions in the form of an entry of

18  default against Defendants with respect to Plaintiffs' claims for breach of contract and for

19  copyright infringement.[11]

20

---

21      [11] The court also previously granted partial summary judgment against IAI and IAP on

22  liability with respect to Plaintiffs' claims for copyright infringement and for breach of contract.
    (5/29/13 Order at 10, 19-15.)   The court grants only the entry of default as a sanction at this time

1      **2.      Necessity of Evidentiary Hearing**

2           In their motion, Plaintiffs seek an award on default judgment of the maximum

3  statutory damages for each of Plaintiffs' three copyright infringement claims.  (3d Mot. at

4  13-15.)  Relying upon *Feltner v. Columbia Pictures*, 523 U.S. 340 (1998), the court had

5  previously declined to issue such an award on partial summary judgment, holding that

6  such a request inherently involves an exercise of discretion that is reserved to the jury.

7  (7/18/13 Order at 12-15.)  Although Plaintiffs acknowledge that the court was prohibited

8  from entering such an award on summary judgment, they now argue that such an award is

9  appropriate on default judgment.  (3d Mot. at 13-15.)  Plaintiffs correctly assert that

10 Defendants have no right to a jury trial following the entry of default.  "Caselaw dating

11 back to the eighteenth century . . . makes clear that the constitutional right to jury trial

12 does not survive the entry of default."  *Verizon Cal. Inc. v. Onlinenic, Inc*., No. C 08–

13 2832 JF (RS), 2009 WL 2706393, at *2 (N.D. Cal. Aug. 25, 2009) (quoting *Benz v.*

14 *Skiba, Skiba & Glomski*, 164 F.R.D. 115, 116 (D. Me. 1995), citing *Brown v. Van*

15 *Bramm*, 3 Dall. [U.S.] 344, 355 (1797)); *see also Adriana Int'l Corp. v. Lewis & Co*., 913

16 F.2d 1406, 1414 (9th Cir. 1990) (holding that after default, "a party has no right to jury

17 trial under either Fed. R. Civ. P. 55(b)(2), which authorizes a district court to hold an

18 evidentiary hearing to determine the amount of damages, or the Seventh Amendment");

19

20 and not default judgment because in this district the entry of a default judgment is a two-step
   process.  Local Rule 55(b)(1) states that "[n]o motion for judgment by default should be filed
21 against any party unless the court has previously granted a motion for default against that party
   pursuant to LCR 55(a) or unless default is otherwise entered."  Local Rules W.D. Wash. LCR
   55(b)(1).  Accordingly, the court enters default as a sanction today, and will only consider the
22 entry of default judgment following an evidentiary hearing on damages as described below.

1   *Henry v. Sneiders*, 490 F.2d 315, 318 (9th Cir. 1974) ("[T]he Seventh Amendment right

2   to trial by jury does not survive a default judgment.").

3          Although Defendants are no longer entitled to a jury with respect to the issue of

4   damages, the court may hold an evidentiary hearing regarding damages prior to the entry

5   of default judgment.  *See* Fed. R. Civ. P. 55(b)(2)(B).  No hearing is necessary, and

6   default judgment may be entered by the clerk "for a sum certain or a sum that can be

7   made certain by computation."  *See* Fed. R. Civ. P. 55(b)(1).  Plaintiffs' claim for

8   maximum statutory damages, however, is not "for a sum certain."   A copyright owner

9   may elect either actual or statutory damages under 17 U.S.C. § 504.  Where, like here,

10  statutory damages are elected, a court ordinarily may, in its discretion, award between

11  $750 and $30,000.00 for each act of infringement.  17 U.S.C. § 504(c)(1).  Here,

12  however, the court has found willful infringement (*see* 5/29/13 Order at 22-23), and thus

13  the court has the discretion to increase the maximum award to $150,000 for each act of

14  infringement.  17 U.S.C. § 540(c)(2).  Courts have wide discretion in determining the

15  amount of statutory damages to be awarded, "constrained only by the specified maxima

16  and minima."  *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).

17  Because such an award of damages is discretionary within the statutory range and not for

18  a sum certain, the court will conduct an evidentiary hearing.  *See* Fed. R. Civ. P.

19  55(b)(2)(B) ("The court may conduct hearings . . . when, to enter or effectuate judgment,

20  it needs to . . . determine the amount of damages.");  *see, e.g.*, *IO Group, Inc. v. Pralat*,

21  No. C 10–03647 WHA, 2011 WL 4713748, at * 1 (N.D. Cal. Oct. 7, 2011) (holding

22  hearing on motion for default judgment seeking maximum statutory damages for

1  copyright infringement); *Adobe Systems, Inc. v. Tilley*, No. C 09-1085 PJH, 2010 WL

2  309249, at *1 (N.D. Cal. Jan. 19, 2010) (holding on motion for default judgment seeking

3  statutory damages for trademark infringement).[12]   Accordingly, the court reserves ruling

4  on Plaintiffs' request for maximum statutory damages on default judgment until after it

5  has conducted a Rule 55(b)(2)(B) evidentiary hearing on the issue.

6  **C.  Motion for Attorney's Fees and Expenses**

7  Plaintiffs also move under Federal Rule of Civil Procedure 37(b)(2)(C) for an

8  award of legal expenses incurred in filing their third motion for sanctions, as well as an

9  award of their attorney's fees and costs under 17 U.S.C. § 505 as prevailing parties under

10  the Copyright Act.  (3d Mot. at 16.)

11  **1.  Reasonable Expenses and Fees under Rule 37(b)(2)(C)**

12  Rule 37(b)(2)(C) provides that "[i]nstead of or in addition to" other sanctions for

13  failure to obey a discovery order,

14  the court must order the disobedient party, the attorney advising that party,
   or both to pay the reasonable expenses, including attorney's fees, caused by
15  the failure, unless the failure was substantially justified or other
   circumstances make an award of expenses unjust.

16  Fed. R. Civ. P. 37(b)(2)(C).  Defendants have not demonstrated that their failure to fully

17  and timely comply with the court's July 18, 2013, order was substantially justified or that

18

19  _____

20  [12] If, after reviewing the parties' responses to the court's present order to show cause, the
   court vacates its prior ruling on partial summary judgment with respect to the amount of Ms.
21  Curtis's contract damages and denies Plaintiffs' present motion for partial summary judgment
   with respect to the amount of Ms. Aldrich's and Mr. Currier's contract damages, then the court
22  can consider the presentation of evidence concerning the amount of Plaintiffs' contract damages
   and any appropriate setoffs at the Rule 55(b)(2)(B) evidentiary hearing on default judgment.

1    other circumstances make such an award unjust.  The fact that Defendants may have

2    partially complied in an untimely manner with the court's order to produce additional

3    documents does not obviate an award.  At the time Plaintiffs filed their motion,

4    Defendants had not complied at all.  It was only after Plaintiffs incurred the expense of

5    filing their present motion that Defendants complied in part with the court's July 18,

6    2013.  Accordingly, the court grants Plaintiffs request for additional monetary sanctions

7    and orders Defendants to pay Plaintiffs' reasonable expenses, including attorney's fees,

8    caused by Defendants' failure to comply with its July 18, 2013, order.  *See* Fed. R. Civ.

9    P. 37(b)(2)(C).

10        **2.    Reasonable Expenses and Fees under 17 U.S.C. § 505**

11        Under the Copyright Act, the court has discretion to award "reasonable attorney's

12   fees" as part of the costs awarded to a prevailing party in an infringement action.

13   17 U.S.C. § 505.  In exercising that discretion, the court may consider, but is not limited

14   to, the following five factors:  The factors include: (1) the degree of success the party

15   obtained; (2) frivolousness; (3) motivation; (4) the legal and factual objective

16   reasonableness of the party that did not prevail; and (5) the need to further

17   "considerations of compensation and deterrence."  *Smith v. Jackson*, 84 F.3d 1213, 1221

18   (9th Cir. 1996) (citations omitted).  The Supreme Court has concluded that these factors

19   "may be used to guide courts' discretion, so long as such factors are faithful to the

20   purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in

21   an evenhanded manner."  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994).

22   Though a finding that infringement was willful does not "in itself, compel" an award of

1    attorney fees, it is an "important factor favoring" an award of those fees.  *Historical*

2    *Research v. Cabral*, 80 F.3d 377, 379 (9th Cir. 1996) (per curiam).

3           The factors above support an award of reasonable attorney's fees and expenses to

4    Plaintiffs under 17 U.S.C. § 505 related to the pursuit of their copyright claims.  Plaintiffs

5    have obtained a high level of success on their claims.  They established on summary

6    judgment that Defendants not only violated their copyrights, but did so willfully.

7    (5/29/13 Order at 19-23.)  Further, they moved on summary judgment for and obtained

8    entry of a permanent injunction.  (*Id.* at 23-24.)  Based on this record, it is clear that

9    Plaintiffs' claims were not frivolous, and there is no evidence of any improper motive in

10   bringing suit or motive other than a desire to seek compensation and deter future

11   infringement.  On the other hand, Defendants not only violated Plaintiffs copyrights, but

12   they continued to do so after receiving warning letters from Plaintiffs, after Plaintiffs

13   terminated the publishing contracts, and even after Plaintiffs filed this lawsuit.  (*See*

14   5/29/13 Order at 7-8.)  Particularly in light of the unreasonableness of Defendants'

15   actions and the need to advance considerations of deterrence, the court finds that an

16   award of Plaintiffs' reasonable fees and expenses under 17 U.S.C. § 505 is warranted

17   here, and grants Plaintiffs' motion.

18          **3.   Further Submissions Concerning Reasonable Expenses and Fees**

19          The court has granted a series of requests by Plaintiffs for recoupment of certain

20   reasonable fees and expenses in this litigation.  Some of those orders may be overlapping

21   in nature.  The court has awarded Plaintiffs their reasonable fees and expenses in

22   response to three motions seeking discovery sanctions.  On February 20, 2013, the court

1    granted Plaintiffs' motion for monetary sanctions in the form of Plaintiffs' reasonable

2    attorney's fees and expenses in bringing their discovery motion (2/20/13 Order at 6-8),

3    and on March 13, 2013, ordered Defendants to pay Plaintiffs $5,594.00 within 14 days

4    (3/19/13 Order at 3, 5).  On July 18, 2013, the court again ordered Defendants to pay

5    monetary sanctions in the form of Plaintiffs' reasonable fees and expenses caused by

6    Defendants' failure to comply with the court's prior discovery order.  (7/18/13 Order at

7    20-21.)  In response to the court's order, Plaintiffs submitted an unopposed statement of

8    those relevant fees and expenses totaling $10,101.00.  (7/22/13 Kruckeberg Decl. (Dkt.

9    # 44).)  However, the court has not yet issued an order specifically directing Defendants

10   to pay all or a portion of those fees.  Finally, the court has also issued the present order

11   granting Plaintiffs' motion for sanctions in the form of Plaintiffs' reasonable fees and

12   expenses caused by Defendants' failure to comply with the court's July 18, 2013, order.

13          In addition to the foregoing orders granting fees and expenses as sanctions under

14   Federal Rule of Civil Procedure 37, the court has also granted Plaintiffs' motion for

15   reasonable expenses, including attorney's fees, related to the pursuit of their copyright

16   claims.  Many of the fees and expenses that the court granted as sanctions with respect to

17   the foregoing discovery motions may be subsumed within the court's order granting

18   reasonable fees and expenses under 17 U.S.C. § 505, but it is possible that some are not.

19   Plaintiffs are not entitled to fees and costs under § 505 in connection with prosecuting

20   non-copyright claims, such as their breach of contract claim.  *See Ritchie v. Gano*, 754 F.

21   Supp. 2d 605, 609 (S.D.N.Y. 2010) ("[T]he prevailing party may recover only for those

22   attorneys' fees expenditures that relate to the copyright claims. The claimant may not

1    recover for attorney billings for other claims brought in the same suit.").  Nevertheless,

2    some reasonable fees and expenses related to non-copyright claims may be covered by

3    the three orders related to discovery violations or violations of the court's discovery

4    orders.  Plaintiffs are not entitled to a double recovery of any attorney's fees or expenses,

5    and therefore, they will need to carefully parse out this issue in any further submissions to

6    the court.

7              The court directs Plaintiffs to submit a statement, along with appropriate

8    documentation, concerning all reasonable attorney's fees and expenses that have been

9    awarded throughout this litigation under any of the court's various orders.  Within 10

10   days of the date of this order, Plaintiffs are directed to identify which expenses and fees

11   are being claimed under which of the court's orders and to ensure that no fees or

12   expenses are claimed more than once.  Plaintiffs shall provide the court with a "lodestar"

13   calculation, including an evaluation of the relevant factors listed in *Kerr v. Screen Extras*

14   *Guild, In*c., 526 F.2d 67, 70 (9th Cir. 1975).  *See, e.g.*, *IO Group, Inc. v. Jordan*, No. C

15   09-0884 MEJ, 201 WL 2231793, at *3-*5 (N.D. Cal. June 1, 2010) (applying lodestar

16   and *Kerr* factors in the context of an award of reasonable fees and expenses under 17

17   U.S.C. § 505); *see also Dunn & Fenley, LLC v. Allen*, No. 02-1750-JE, 2007 WL

18   2973549, at *4-*5 (D. Or. Oct. 9, 2007).  Defendants may file a response to Plaintiffs'

19   submission within 10 days following Plaintiffs' submission.

20             After the court has received and reviewed the parties' additional submissions

21   concerning Plaintiffs' reasonable fees and expenses, as well as the parties' responses and

22   replies to the court's order to show cause, the court will schedule an evidentiary hearing

1    with respect to Plaintiffs' motion for damages on default judgment, issue a schedule for

2    the parties to exchange exhibit and witness lists and proposed orders on default judgment,

3    and issue any other orders that may be necessary for the proper judicial administration of

4    this matter.

5                                **IV.  CONCLUSION**

6           Consistent with the foregoing, the court GRANTS in part and DENIES in part

7    Plaintiffs' third motion for sanctions and partial summary judgment (Dkt. # 45).  As

8    described above, the court GRANTS Plaintiffs' motion for partial summary judgment

9    piercing the corporate veil between IAI and IAP, on one hand, and Mr. Thompson, on the

10   other, and imposing personal liability against Mr. Thompson for IAI and IAP's liabilities

11   in this litigation.  The court also ORDERS the parties to SHOW CAUSE why it should

12   not vacate its prior ruling on partial summary judgment with respect to Ms. Curtis's

13   contract damages and award as a setoff to any contract or other damages the value of the

14   books and other items that Defendants provided to Plaintiffs in response to the court's

15   May 29, 2013, order.  The court reserves ruling on Plaintiffs' renewed motion for

16   summary judgment regarding Ms. Aldrich's and Mr. Currier's contract damages until

17   after receipt of the parties' responses to the court's order to show cause.  In responding to

18   the court's order to show cause, the parties are to strictly adhere to the deadlines outlined

19   above.  The court GRANTS Plaintiffs' motion for sanctions and ENTERS DEFAULT

20   against Defendants with respect to Plaintiffs' claims for breach of contract and copyright

21   infringement.  The court RESERVES RULING on Plaintiffs' request for maximum

22   statutory damages regarding their three copyright infringement claims, as well as any

1    other damages, until after the court conducts an evidentiary hearing on damages pursuant

2    to Federal Rule of Civil Procedure 55(b)(2)(B).  Finally, the court GRANTS Plaintiffs'

3    motion for reasonable attorney's fees and expenses under both Federal Rule of Civil

4    Procedure 37 and 17 U.S.C. § 505 as described above.  The parties are directed to strictly

5    adhere to the court's deadlines with respect to the submission of additional materials

6    regarding Plaintiffs' request for fees and expenses as well.

7          Dated this 21st day of November, 2013.

8

9

10          JAMES L. ROBART
            United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 46