1

2

3

4

5

6

7

8
      UNITED STATES DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
            AT SEATTLE

9

| | |
|---|---|
| 10   CHARA CURTIS, et al., | CASE NO. C12-0991JLR |
| 11           Plaintiffs, | ORDER DENYING |
| 12         v. | DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| 13   ILLUMINATION ARTS, INC., et al., | |
| 14         Defendants. | |

15

## I.    INTRODUCTION

16      Before the court is pro se Defendant Kimmie Thompson's motion for summary

17 judgment.  (Mot. (Dkt. # 77).)  Ms. Thompson asks the court to release her of any and all

18 liability and dismiss her as a defendant in the case.  (*Id.* at 1.)  The court has reviewed

19 Ms. Thompson's motion, all submissions filed in support of and in opposition thereto, the

20 balance of the record, and the applicable law.  Being fully advised, the court denies Ms.

21 Thompson's motion.

22

ORDER- 1

## II.    BACKGROUND

This case has taken a number of turns during its pendency in federal court.  The court sets out the factual and procedural background in some detail because it is relevant to its consideration of Ms. Thompson's motion.  On June 8, 2012, Plaintiffs Chara Curtis, Cynthia Aldrich, and Alfred Currier filed a complaint against Defendants Ms. Thompson, John Thompson, Illumination Arts, Inc. ("IAI"), and Illumination Arts Publishing, LLC ("IAP") for breach of contract and copyright infringement.  (*See generally* Compl. (Dkt. # 1).)  Plaintiffs allege that they terminated their publishing agreements with Defendants after Defendants stopped paying royalties to Plaintiffs for sales of three inspirational children's books and after Defendants electronically reproduced and distributed the books without Plaintiffs' permission.  (*See generally id.*)

On July 25, 2012, Defendants appeared through their counsel.  (Not. of App. (Dkt. # 12).)  On August 7, 2012, Defendants answered the complaint.  (Ans. (Dkt. # 13).)  On September 13, 2012, the court notified IAI and IAP that they must file a corporate disclosure statement pursuant to Federal Rule of Civil Procedure 7.1.  (*See* Dkt. Entry dated Sept. 13, 2012.)

On November 29, 2012, Plaintiffs served Defendants with their first set of discovery requests, which included 19 interrogatories, 68 requests for production of documents, and 43 requests for admission.  (*See* 1/31/13 Kruckeberg Decl. (Dkt. # 17) ¶ 2, Ex. A.)  After 30 days, Plaintiffs received no response from Defendants. (*Id.* ¶ 3.)  On January 2, 2013, counsel for Plaintiffs emailed counsel for Defendants regarding the status of Defendants' responses.  (*Id.*)  On January 4, 2013, counsel for

1    Defendants requested an additional 30 days to respond to the discovery requests due to

2    the volume of financial data Plaintiffs requested.  (*Id.* ¶ 4.)  On January 9, 2013,

3    Plaintiffs' counsel sent a letter to Defendants' counsel granting Defendants an additional

4    ten days with respect to the production of financial documents, but demanding immediate

5    responses to the remainder of Plaintiffs' discovery requests.  (*Id.* ¶ 5, Ex. B.)  Plaintiffs

6    received no response from Defendants with respect to the January 9, 2013, letter.

7    (*Id.* ¶ 6.)

8         On January 18, 2013, Plaintiffs' counsel emailed Defendants' counsel requesting a

9    teleconference with respect to the outstanding discovery requests.  (*Id.* ¶ 7.)  Counsel for

10   the parties conducted a teleconference on January 22, 2013.  (*Id.* ¶ 8.)  Counsel for

11   Defendants indicated that Defendants could gather responsive documents by January 31,

12   2013.  (*Id.*)  As of January 31, 2013, Plaintiffs had received no response or objection to

13   any of the discovery requests at issue.  (*Id.* ¶ 12.)  On January 31, 2013, Plaintiffs filed

14   their first motion to compel discovery and for sanctions against Defendants.  (*See* 1/31/12

15   Mot. (Dkt. # 16).)  Defendants filed no response to Plaintiffs' first motion to compel

16   discovery. (*See generally* Dkt.)

17        On February 20, 2013, the court found that Defendants had waived any objections

18   to Plaintiffs' discovery requests and ordered Defendants to provide "complete responses

19   without objection" no later than March 1, 2013.  (2/20/13 Order (Dkt. # 19) at 6.)  The

20   court also order Defendants to pay sanctions to Plaintiffs in the form of reasonable

21   expenses and attorneys' fees incurred in bringing Plaintiffs' first motion for sanctions.

22   (*Id.* at 8.)  Finally, because IAI and IAP had still not filed their Rule 7.1 corporate

1  disclosure statements, the court again ordered them to do so no later than March 1, 2013.

2  (*Id.* at 6.)  The court warned Defendants that should they fail to produce the ordered

3  discovery or provide the required corporate disclosure statements within the stated

4  timeframe, the court would consider imposing additional sanctions.  (*Id.* at 7.)

5         Meanwhile, on February 20, 2013, the same day that the court issued its first order

6  regarding discovery and sanctions, Defendants finally served Plaintiffs with their initial

7  responses to Plaintiffs' discovery requests.  (6/5/13 Kruckeberg Decl. (Dkt. # 31) Ex. A.)

8  Despite the court's order directing Defendants to provide "complete responses without

9  objection" (2/20/13 Order at 6), Defendants objected to all discovery requests related to

10  Ms. Thompson's finances (6/5/13 Kruckeberg Decl. Ex. A).  Between February 27 and

11  29, 2013, Defendants began producing financial records relating to Mr. Thompson, IAI,

12  and IAP.  (*Id.* ¶ 6.)  However, Defendants produced no information regarding Ms.

13  Thompson's financial records (*id.*), which Plaintiffs asserted they needed to establish

14  their claim that the corporate veil between IAI and IAP, on one hand, and Ms. Thompson,

15  on the other, should be pierced.  (*See* 2d Sanc. Mot. (Dkt. # 30) at 4-5.)

16         On March 19, 2013, the court entered an additional order specifying the amount of

17  reasonable expenses and attorneys' fees Defendants were required to pay as sanctions to

18  Plaintiffs pursuant to the court's February 20, 2013, order.  (3/19/13 Order (Dkt. # 21) at

19  3.)  The court ordered Defendants to pay $5,594.00 to Plaintiffs within 14 days of the

20  date of the order.  (*Id.* at 5.)  Despite the court's order, to date, Plaintiffs have not

21  received the court-ordered payment.  (3/28/14 Pre-hearing Memo (Dkt. # 84) at 10.)

22

ORDER- 4

1        The court also noted in its March 19, 2013, order that Defendants had failed to

2   comply with the court's February 20, 2013, order to file their corporate disclosure

3   statements by March 1, 2013.  (8/8/13 Kruckeberg Decl. at 3-4.)  Accordingly, the court

4   sanctioned IAI and IAP's counsel $500.00 (representing $250.00 for each corporate

5   disclosure statement he failed to file), and ordered him to pay the sanctions and to file the

6   required corporate disclosure statements within 14 days.  (*Id.* at 5.)  Once again, neither

7   IAI, IAP, nor their counsel has complied with the court's order by paying the fine.[1]

8        On March 28, 2013, Plaintiffs filed their first motion for partial summary

9   judgment (Dkt. # 22), which the court granted in part and denied in part (5/29/13 Order

10  (Dkt. # 29)).  Defendants admitted that "IAI and IAP breached their obligations to pay

11  Plaintiffs' royalties" (4/15/13 Resp. (Dkt. # 25) at 3), and accordingly, the court granted

12  Plaintiffs' motion for summary judgment with respect to IAI's and IAP's liability to

13  Plaintiffs for breach of contract (5/29/13 Order at 10).  The court also granted Plaintiffs'

14  motion to disregard the corporate veil between IAI and IAP based on findings that IAP

15  was a mere continuation of IAI and that there had been fraudulent transfers of assets

16  between IAI and IAP.  (*Id.* at 10-18.)  The court, however, declined to pierce the

17  corporate veil with respect to the Thompsons personally on summary judgment.  (*Id.* at

18  18-19.)  The court also ruled that Defendants' infringement of Plaintiffs' copyrights was

19  willful, and that the Thompsons were directly liable for the infringement because all

20  Defendants "admitted that they reproduced, distributed and displayed the Books after

21  _____

22        [1] On June 11, 2013, IAI and IAP filed a corporate disclosure statement.  (*See* Dkt. # 35.)

ORDER- 5

1    Plaintiffs terminated the publishing agreements and Defendant's license to do so." (*Id.* at

2    19-20.)  Finally, the court granted Plaintiffs' motion for entry of a permanent injunction

3    prohibiting any further infringement of Plaintiffs' copyrights.  (*Id.* at 23-24.)  As a part of

4    this order, the court required Defendants to return all infringing copies of the three books

5    to Plaintiffs.  (*Id.* at 24.)

6            On June 5, 2013, Plaintiffs filed their second motion to compel discovery and for

7    sanctions.  (*See generally* 6/5/13 Mot. (Dkt. # 30).)  In addition, Plaintiffs also filed a

8    second motion for partial summary judgment.  (2d SJ Mot. (Dkt. # 32).)  On July 18,

9    2013, the court ruled on both motions.  (*See generally* 7/18/13 Order (Dkt. # 43).)  On

10   Plaintiffs' second motion to compel and for discovery sanctions, the court found that

11   Defendants' failure to comply with the court's prior discovery order was willful and that

12   Plaintiffs had suffered prejudice as a result of Defendants' obstreperous conduct.  (*Id.* at

13   17-18.)  Although Defendants asserted that they should not be sanctioned because

14   Plaintiffs had ample opportunity to go on-site to review the requested documents, the

15   court found that Defendants' offer to Plaintiffs for an on-site review of the documents

16   was illusory.  (*See id.*)  Plaintiffs' counsel had asked about the availability of duplication

17   services at the private home that served as IAI's and IAP's offices and had proposed

18   sending the documents off-site for duplication.  (6/5/13 Kruckeberg Decl. (Dkt. #

19   31) ¶ 9.)  Defendants' counsel responded that he would inquire with his clients.  (*Id.*)

20   Despite numerous follow-up inquiries from Plaintiffs' counsel, Defendants never

21   provided clarification or indicated that they would agree to having the documents sent

22   off-site for duplication and they continued to put off arrangements for inspection and

1    copying of the on-site documents.  (*Id.* ¶¶ 10-20, Exs. G-N.)  By the time that Plaintiffs

2    filed their second motion to compel discovery and for sanctions, they had still not been

3    able to make arrangements to review Defendants' documents on-site.  (*See generally*

4    6/5/13 Mot.)

5           Accordingly, the court granted Plaintiffs' request for monetary sanctions in the

6    form of Plaintiffs' reasonable expenses, including attorneys' fees, caused by Defendants'

7    failure to comply with the court's prior discovery order.  (7/18/13 Order at 21.)  In order

8    to avoid compounding the prejudice to Plaintiffs by forcing them to go to trial on an

9    incomplete record, the court struck the trial date, authorized Plaintiffs to file an additional

10   motion for summary judgment following Defendants' compliance with its order, and

11   stated that the court would reschedule a trial date following consideration of Plaintiffs'

12   motion for summary judgment, if necessary.  (*Id.* at 21.)  Finally, the court once again

13   ordered Defendants to produce all of the financial records pertaining to Ms. Thompson

14   and the remaining outstanding discovery covered by the court's first discovery and

15   sanctions order no later than August 1, 2013. (*Id.* at 19-20.)  The court further ordered

16   Defendants and their counsel to file a certification with the court by the same day stating

17   that they had complied with the court's order.  (*Id.*)  The court expressly warned

18   Defendants that if they failed to produce the ordered discovery or to file the required

19   certifications with the court within the ordered timeframe, the court would consider

20   additional sanctions including adverse evidentiary findings or the entry of default

21   judgment against Defendants.  (*Id.* at 20.)

22

ORDER- 7

1    In its July 18, 2013, order, the court also granted Plaintiffs' motion for summary

2  judgment with respect to the amount of Mr. Curtis' contract damages, but denied

3  summary judgment with respect to the amount of Ms. Aldrich's and Mr. Currier's

4  contract damages.  (*Id.* 9-10.)  The court also denied summary judgment with respect to

5  Plaintiffs' request for maximum statutory damages regarding their claim for copyright

6  infringement, ruling that such a request was properly reserved for the jury.  (*Id.* at 10-15.)

7    On August 8, 2013, Plaintiffs filed their third motion for sanctions and for partial

8  summary judgment (*see generally* 3d Mot. (Dkt. # 45)), after Defendants ignored the

9  court's July 18, 2013, order directing the production of discovery and the filing of a

10  certification verifying such production (8/8/13 Kruckeberg Decl. (Dkt. # 48) at 2).

11  Plaintiffs again sought partial summary judgment with respect to the amount of Ms.

12  Aldrich's and Mr. Currier's contract damages.  (3d. Mot. at 10-12.)  Plaintiffs also

13  renewed their motion to pierce the corporate veil between the corporate entities and Mr.

14  Thompson on summary judgment.  (*Id.* at 12-13.)  In addition, Plaintiffs moved for

15  default judgment against Defendants as a sanction for their failure to respond to the

16  court's July 18, 2013, order by producing the required discovery and certifications.  (*Id.*

17  at 8-10.)

18    In response to Plaintiffs' third motion for sanctions and summary judgment, the

19  court pierced the corporate veil between IAI and IAP, on one hand, and Mr. Thompson,

20  on the other.  (11/21/13 Order (Dkt. # 55) at 16-24.)  Although both Mr. Thompson and

21  his counsel at the time filed declarations opposing the motion, neither of these

22  declarations was signed.  (*Id.* at 19.)  Consequently, the court declined to consider them.

1   (*Id.*)  Mr. Thompson ultimately filed a second signed declaration one week after the

2   noting date for the motion that was different from his first declaration.  (*Id.* at 20 (citing

3   9/6/13 Thompson Decl. (Dkt. # 53)).)  The court also declined to consider this declaration

4   because it was untimely.  The court granted Plaintiffs' motion on partial summary

5   judgment, piercing IAI's and IAP's corporate veils with respect to Mr. Thompson.  (*Id.* at

6   20-21.)

7       Nevertheless, the court explained that even if it had considered Mr. Thompson's

8   second untimely declaration, the result would have been no different.  (*Id.* at 22-24.)

9   Plaintiffs had provided documentation that Mr. Thompson dissipated corporate assets,

10   and Mr. Thompson admitted that some of his activities might technically qualify as

11   commingling.  (9/1/13 Thompson Decl. at 11.)  The court ruled that, in light of this

12   evidence, Mr. Thompson's bald assertions that his practices had done no harm to

13   Plaintiffs were insufficient to create a genuine issue of material fact.  (11/21/13 Order at

14   22-24.)  The court explained that this was particularly so because all of the records

15   necessary to support his stance were, or should have been, within his control.  (*Id.* at 22-

16   23.)  Yet, he failed to provide them to the court and failed to explain why.  (*Id.*)  In light

17   of these facts, Mr. Thompson's late-filed, self-serving declaration, which was devoid of

18   any supporting evidence, failed to create a genuine issue of fact.  (*Id.* at 23-24.)

19       In addition to entering summary judgment on the foregoing issues, the court

20   entered default against Defendants with respect to Plaintiffs' claims for breach of contract

21   and copyright infringement as a sanction for their continued discovery violations and

22   failure to abide court orders.  (*Id.* at 37.)  Although the court had already entered

ORDER- 9

1   summary judgment with respect to copyright infringement (*see* 5/29/13 Order at 21), the

2   effect of the entry of default was to provide an alternate basis for liability and to eliminate

3   Defendants' right to a jury trial with respect to statutory damages.  Finally, the court also

4   (1) issued an order to show cause with respect to its prior ruling on partial summary

5   judgment concerning the amount of Mr. Curtis's contract damages, (2) reserved ruling on

6   Plaintiffs' request for maximum statutory damages on their copyright infringement

7   claims and damages for other claims until after an evidentiary hearing on damages

8   pursuant to Federal Rule of Civil Procedure 55(b)(2)(B), and (3) granted Plaintiffs'

9   request for reasonable attorneys' fees and expenses.  (*See generally* 11/21/13 Order.)

10       Following further submissions from the parties, the court initially set the

11   evidentiary hearing on default judgment and damages for April 4, 2014.  (1/10/14 Order

12   (Dkt. # 65) at 5.)  However, following a motion to modify the schedule by Mr. Thompson

13   and Ms. Thompson (Dkt # 67), the court rescheduled the evidentiary hearing for April 30,

14   2014.  (1/23/14 Order (Dkt. # 71).)  As a part of its January 10, 2014, order, the court also

15   granted the Thompsons' request to proceed pro se in this litigation.  (1/10/14 Order at 3.)

16       On February 19, 2014, Ms. Thompson filed a pro se motion for summary

17   judgment even though the court previously had determined her to be liable for breach of

18   contract on default and for copyright infringement on summary judgment.  (*See* Mot.)

19   Among other things, Ms. Thompson alleges that she has "not been involved in any of the

20   decisions which relate to the Plaintiff's complaint" and that Mr. Thompson "agreed to

21   take full responsibility for providing the detailed answers to [the discovery demands] and

22   sent his final information to Mr. King on February 2, 2013."  (*Id.* at 2, 3.)  "However,

1   [she] did not learn until later that Mr. King hadn't filed the required responses with the

2   court until February 20, 2013." (*Id.*)  Importantly, Ms. Thompson admits that the late

3   filing made her "feel betrayed, upset, confused, and determined not to provide [her]

4   personal information." (*Id.*)  Accordingly, Ms. Thompson asks the court to release her

5   from any and all liability and to dismiss her as a defendant in the case. (*Id.* at 1.)

6   ### III.   ANALYSIS

7   ### A.  The Court Liberally Construes Ms. Thompson's Pro Se Motion

8   As detailed above, the court has already granted Plaintiffs' motion for summary

9   judgment as to Ms. Thompson's liability on copyright infringement (5/29/13 Order at 21)

10  and Plaintiffs' motion for default as to Plaintiffs' contract claims and copyright claims

11  (11/21/13 Order).  Therefore, because the court has already determined Ms. Thompson's

12  liability on summary judgment or by entering default, her subsequent summary judgment

13  motion regarding liability is unavailing.

14  Federal courts may, however, "ignore the legal label that a pro se litigant attaches

15  to a motion and recharacterize the motion in order to place it within a different legal

16  category." *Castro v. U.S.*, 540 U.S. 375, 381 (2003); *see also U.S. v. Eatinger*, 902 F.2d

17  1383, 1385 (9th Cir. 1990) (per curiam) (finding that the district court erred in not

18  construing motion for reconsideration of sentence as a habeas petition).  Accordingly, to

19  "create a better correspondence between the substance [of the motion] and its underlying

20  legal basis," *Castro*, 540 U.S. at 381-382, the court construes Ms. Thompson's motion as

21  a motion to set aside default for "good cause" under Federal Rule of Civil Procedure

22  55(c) and as a motion for reconsideration under Local Rule LCR 7(h).

ORDER- 11

**B. Motion to Set Aside Default**

The import of the court's order granting default on Plaintiffs' motion for sanctions was to provide an alternate basis for copyright infringement liability and to eliminate Defendants' right to a jury trial with respect to a determination of statutory damages for copyright infringement. (*See* 11/21/13 Order at 29-40.) In addition, the court also entered default against Defendants with respect to Plaintiffs' breach of contract claim. (*Id.*) The court had already granted Plaintiffs' first motion for summary judgment with respect to IAI's and IAP's liability for breach of contract (*see* 5/29/13 Order at 10), and Plaintiffs' third motion for summary judgment with respect to Mr. Thompson's liability for breach of contract by piercing the corporate veil (*see* 11/21/13 Order at 21). Thus, with respect to these three defendants, the court's default order merely provides an alternate basis for breach of contract liability and eliminates their right to a jury trial with respect to damages. The court's default order, however, also imposed liability against Ms. Thompson for breach of contract.

Ms. Thompson's motion (liberally construed) asks the court to set aside its entry of default for "good cause."[2] *See* Fed. R. Civ. P. 55(c). To determine "good cause" a court must consider three disjunctive factors: (1) whether the party seeking to set aside default engaged in culpable conduct that led to the default; (2) whether the moving party has no meritorious defense; and (3) whether reopening the default would prejudice the

---

[2] The full text of Federal Rule of Civil Procedure 55(c) reads: "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55 (c).

1    non-moving party.  *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*,

2    615 F.3d 1085, 1091 (9th Cir. 2010).  The presence of any one of these factors is

3    sufficient for the court to refuse to set aside default.  *Id.*  Additionally, although the above

4    test applies to motions seeking relief from default under Rule 55(c) and default judgment

5    under Rule 60(b), the test is more liberally applied in the 55(c) context.  *Id.* at 1091 n.1

6    (citing *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 631 (7th Cir. 2009)).

7    **1. Culpable Conduct**

8    As another court in this district has recognized, there appear to be two lines of

9    cases in the Ninth Circuit on the correct standard "for evaluating the 'culpable conduct'

10   factor for purposes of setting aside a default."  *Lakeview Cheese Co., LLC v. Nelson-*

11   *Ricks Creamery Co.*, 296 F.R.D. 649, 653 (D. Idaho 2013).  The first line concerns a

12   defaulted party not represented by legal counsel or otherwise legally sophisticated.

13   *Mesle*, 615 F.3d at 1093.  Under this standard, a party's "conduct is culpable if he has

14   received actual or constructive notice of the filing of the action and *intentionally* failed to

15   answer."  *Id.* at 1092 (emphasis in original) (quoting *TCI Life Ins. Plan v. Knoebber*, 244

16   F.3d 691, 697 (9th Cir. 2001)).  The "intentionality" component requires an independent

17   showing of bad faith.  *Id.*  An unsophisticated party could receive notice and fail to

18   respond for reasons not in bad faith.  *See id.* at 1093 (finding that defendant's conduct

19   was not in bad faith because he was "ignorant of the law" and unable to understand his

20   legal obligations).  Rather, "intentionality" occurs only if there is no explanation for the

21   unsophisticated party's inaction other than a "devious, deliberate, willful, or bad faith

22   failure to respond."  *Id.*  Therefore, the test for unsophisticated parties requires a two-step

ORDER- 13

1  inquiry: (1) whether there was notice and a failure to respond, and (2) if so, whether that

2  failure was "intentional" because it was in bad faith. *See id.*

3       The second line of cases concerns legally sophisticated parties. *See Lakeview*

4  *Cheese Co.*, 296 F.R.D. at 653.  Under the second standard, courts assume a sophisticated

5  party's failure to respond was "intentional." *Mesle*, 615 F.3d at 1093.  Rather than the

6  two-step inquiry associated with unsophisticated parties, a court need only ask whether a

7  sophisticated party failed to respond. *Lakeview Cheese Co.*, 296 F.R.D. at 653.  That

8  failure alone triggers culpability because courts assume "intentionality." *Id.*  Parties with

9  legal representation know, or should know, the consequences of a failure to respond.

10 *Mesle*, 615 F.3d at 1093.  Accordingly, a legally sophisticated party's failure to respond

11 after receiving actual or constructive notice is sufficient for a finding of culpability. *Id.*;

12 *see Direct Mail Specialists, Inc.  v. Eclat Computerized Techs., Inc*., 840 F.2d 685, 690

13 (9th Cir. 1988) (holding that actual or constructive notice and failure to respond was

14 sufficient for a finding of culpable conduct because defendant, as a lawyer, "presumably

15 was well aware of the dangers of ignoring service of process"); *Franchise Holding II,*

16 *LLC. v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 926 (9th Cir. 2004) (holding that

17 actual or constructive notice sufficient for finding of culpable conduct when party's

18 lawyer received service of process and failed to respond to the action).

19       Although Ms. Thompson was represented by counsel at the time the court entered

20 default, she presently proceeds pro se. (*See* 1/10/14 Order (Dkt. 65) at 3.)  Because she

21 was represented at the time the court entered default, it seems logical that she should be

22 held to the standard of a legally sophisticated party.  Nevertheless, the court need not

ORDER- 14

1    make this determination because she has not established "good cause" to set aside default

2    under either standard.  Ms. Thompson deliberately disobeyed court orders, independently

3    establishing the bad faith intentionality necessary for a finding of culpable conduct.

4          Despite numerous court orders to the contrary, Ms. Thompson concedes in her

5    motion that she was "determined not to provide [her] personal [financial] information."

6    (Mot. at 3.)  The Ninth Circuit Court of Appeals characterizes repeated disregard of court

7    orders as bad faith conduct.  For example, in *Yusov v. Yusef,* 892 F.2d 784 (9th Cir.

8    1989), the Yusovs and their attorney repeatedly disobeyed court orders, including those

9    compelling discovery.  *Id.* at 786.  The district court entered default judgment against the

10   Yusovs for their failure to comply and denied the Yusovs' motion to set the default

11   judgment aside.  *Id.*  The Ninth Circuit held that the district court did not abuse its

12   discretion in denying the motion to set aside default judgment.  *Id.* at 787.  The Court

13   found that both the Yusovs and their attorney engaged in inexcusable, bad faith conduct

14   when they "intentionally and repeatedly disregarded court orders."  *Id*.  Similarly, even

15   when a party proceeds pro se, courts in this Circuit have found that an intentional

16   disregard of court orders is sufficient to find bad faith.  *U.S. v. Wight,* Civil No.

17   CIV.S989443FCD/DAD, 2002 WL 664005, at *3 (E.D. Cal. Mar. 7, 2002) (finding that

18   pro se defendant's "intentional and consistent disregard of a court order is inexcusable

19   and is sufficient to establish bad faith").

20         Ms. Thompson's admitted "determin[ation] not to provide [her] personal

21   [financial] information" (Mot. at 3), establishes her intentional disregard for this court's

22   orders and is sufficient to establish bad faith irrespective of her status as a pro se or

1    sophisticated litigant.  *Wight,* 2002 WL 664005 at *3; *Yusov,* 892 F.2d at 787.  Bad faith

2    establishes "intentionality."  *Mesle,* 615 F.3d at 1092.  A finding of "intentionality" after

3    receiving notice of a duty to act establishes culpable conduct.  *Id.*  Accordingly, because

4    Ms. Thompson disregarded the court's orders, the court finds that she engaged in

5    culpable conduct.[3]

6    **2. Meritorious Defense or Prejudice to Plaintiffs**

7    The court need not make a determination as to whether Ms. Thompson presents a

8    meritorious defense or if setting aside default would prejudice Plaintiffs because the

9    presence of any of the foregoing three factors is sufficient for the court to deny Ms.

10   Thompson's motion.  *Mesle*, 615 F.3d at 1091.  Ms. Thompson engaged in culpable

11   conduct by intentionally disregarding court orders.  (*See* Mot. at 3.)  Accordingly, on that

12   ground, the court refuses to set aside default for "good cause" and denies her liberally

13   construed motion.[4]

14

15

_____

16   [3] Under *Community Dental Services v. Tani*, 282 F.3d 1164 (9th Cir. 2002), a movant's
     conduct may not be culpable if her attorney was grossly negligent.  The court, however, finds
17   *Tani* inapplicable here.  Even if Ms. Thompson's attorney was "grossly negligent," a movant
     cannot seek relief under *Tani* if she independently engaged in culpable conduct.  *Tani*, 282 F.3d
18   at 1172 ("A proper finding of culpable conduct by Tani would be sufficient to justify the district
     court's refusal to grant a Rule 60(b) motion.").  As discussed above, Ms. Thompson engaged in
     culpable conduct, making *Tani* inapplicable in this case.
19
     [4] Though the court denies Ms. Thompson's motion to set aside default, this does not
20   automatically entitle Plaintiffs to an entry of default judgment.  When considering the entry of
     default judgment, the court will weigh the following factors: (1) the possibility of prejudice to
21   the plaintiff; (2) the merits of Plaintiffs' substantive claim; (3) the sufficiency of the complaint;
     (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material
22   facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underling
     the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d

### C. Motion for Reconsideration

The court granted Plaintiffs' motion for summary judgment on Ms. Thompson's liability with respect to copyright infringement. (5/29/13 Order.) Liberally construed, Ms. Thompson's motion also asks the court to reconsider that order. (*See generally* Mot.) Pursuant to the court's Local Rules, a motion for reconsideration of that order must be filed "within fourteen days after the order is filed." Local Rules W.D. Wash. LCR 7(h)(2). Failure to comply with this schedule "may be grounds for denial of the motion." *Id.* The court's order to which Ms. Thompson's motion relates was filed May 29, 2013. (*See generally* 5/29/13 Order.) Ms. Thompson's liberally construed motion for reconsideration, which was filed on February 12, 2014, more than seven months after the court's order, is therefore untimely under the court's Local Rules. The court denies her motion on this ground.

Even if, however, the court were to consider the substance of Ms. Thompson's untimely motion, it would not reconsider its prior order. "Motions for reconsideration are disfavored." Local Rules W.D. Wash. LCR 7(h)(1). The court will ordinarily deny such motions in the absence of (1) "a showing of manifest error in the prior ruling" or (2) "a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." *Id.* Ms. Thompson makes neither showing required by the court's Local Rules. Ms. Thompson presents no new legal authority and does not demonstrate a manifest error in the court's prior ruling. Specifically, she does not

---

1470, 1471-1472 (9th Cir. 1986). Some of the items or issues raised in Ms. Thompson's motion may be relevant with respect to the hearing on default judgment and damages on April 30, 2014.

ORDER- 17

1   address the fact that she admitted to copyright infringement in response to Plaintiffs'

2   requests for admission.  (*See* 5/29/13 Order at 20.)  Consequently, the court denies her

3   liberally construed motion for reconsideration of its prior order on summary judgment.

4                    **IV.      CONCLUSION**

5         As described above, the court liberally construes Ms. Thompson's pro se motion

6   for summary judgment as a motion to set aside default under Federal Rule of Civil

7   Procedure 55(c) and as a motion for reconsideration under Local Rule LCR 7(h) of its

8   May, 29, 2013, order granting in part and denying in part Plaintiffs' motion for summary

9   judgment.  Consistent with the analysis above, the court DENIES Ms. Thompson's

10  motion (Dkt. # 77).

11        Dated this 15th day of April, 2014.

12

13

14  _____

15  JAMES L. ROBART
    United States District Judge

16

17

18

19

20

21

22

ORDER- 18