UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHARA CURTIS, et al.,

              Plaintiffs,

      v.

ILLUMINATION ARTS, INC., et al.,

              Defendants.

CASE NO. C12-0991JLR

ORDER GRANTING DEFAULT JUDGMENT

## I.  INTRODUCTION

On June 8, 2012, Plaintiffs Chara Curtis, Cynthia Aldrich, and Alfred Currier filed a complaint seeking damages for breach of contract and copyright infringement.  (Compl. (Dkt. # 1).)  Plaintiffs are authors and illustrators of three children's books.  (*Id.* ¶ 11.) Plaintiffs allege in their complaint that Defendants Illumination Arts, Inc. ("IAI"), Illumination Arts Publishing, LLC ("IAP"), John Thompson, and Kimmie Lynn Thompson breached the publishing contracts with respect to the three children's books at issue and willfully violated Plaintiffs' copyrights.  (*See generally id.*)

1     On August 8, 2013, Plaintiffs filed a motion seeking the entry of default judgment

2 against Defendants as a sanction for Defendants' obstreperous conduct in discovery and

3 repeated failure to timely abide by the court's orders concerning discovery issues.  (*See*

4 8/8/13 Mot. (Dkt. # 45).)  On November 21, 2013, the court granted Plaintiffs' motion in

5 part, but entered default—not default judgment—as a sanction.  (11/21/13 Order (Dkt. #

6 55) at 37, n.11.)  The court deferred consideration of the entry of default judgment until

7 after an evidentiary hearing pursuant to Federal Rule of Civil Procedure 55(b)(2) and

8 Western District of Washington Local Rule LCR 55(b).  (*See id.* at 39-40.)  In addition to

9 hearing evidence generally concerning the entry of default judgment and Plaintiffs'

10 damages for breach of contract and willful copyright infringement, the court specifically

11 invited the presentation of evidence and argument concerning Ms. Aldrich's and Mr.

12 Currier's contract damages and any offset due to Plaintiffs' breach of contract damages

13 as a whole for the value of the books and other materials that Defendants turned over to

14 Plaintiffs in compliance with the court's May 29, 2013, order.  (*See* 1/10/14 Order (Dkt.

15 # 65) at 5.)

16     The court held an evidentiary hearing on April 30, 2014, concerning the entry of

17 default judgment and the appropriate amount of Plaintiffs' damages.  (Min. Entry (Dkt.

18 # 92).)  The court heard testimony from Plaintiffs and Mr. Thompson.  For the reasons

19 stated below, the court now enters default judgment against Defendants and awards

20 Plaintiffs total statutory damages for willful copyright infringement in the amount of

21 $150,000.00, representing $50,000.00 for each registered copyrighted book at issue.  In

22 addition, the court awards total breach of contract damages to Plaintiffs in the amount of

ORDER- 2

$6,701.49.  If Plaintiffs would like a judgment that breaks these damages down by individual Plaintiff, then Plaintiffs shall submit such a proposed judgment within five days of the date of this order.  Finally, the court awards Plaintiffs $49,153.10 for reasonable attorney's fees and expenses through November 23, 2013.  This includes the court's various awards for fees and expenses throughout this litigation whether under Federal Rule of Civil Procedure 37 or pursuant to the attorney's fees provision of the Copyright Act, 17 U.S.C. § 505.  The court will permit Plaintiffs to submit further documentation concerning reasonable fees and expenses incurred in pursuing their willful copyright infringement claim since November 23, 2014, as delineated below.

## II.  BACKGROUND

### A.  Factual Background

At the center of this litigation is a dispute concerning the publication of three children's books:  (1) *Fun is a Feeling*, authored by Ms. Curtis and illustrated by Ms. Aldrich, (2) *All I See is Part of Me*, authored by Ms. Curtis and illustrated by Ms. Aldrich, and (3) *How Far to Heaven?*, authored by Ms. Curtis with paintings by Mr. Currier.  (*See* Compl. (Dkt. # 1) ¶¶ 11-17.)  Each book is copyrighted under United States law and registered with the U.S. Copyright Office, and Plaintiffs are sole owners of the copyrights for these three books.  (*Id.*)

IAI is a Washington corporation, and IAP is a Washington limited liability company.  (Compl. ¶¶ 4-5.)  Mr. Thompson is the president and sole shareholder of IAI, and the manager and sole shareholder of IAP.  (3/28/13 Kruckeberg Decl. (Dkt. # 24) Ex. A at 1 (Agreement of Understanding between IAI and IAP, executed by Mr. Thompson

1    on behalf of both entities).)  Ms. Thompson is the Vice President of Promotions for IAP.

2    (*Id.* Ex. B at 1 (screenshot of page from IAP's website entitled "Meet the Staff"

3    identifying Ms. Thompson as Vice President of Promotions).)

4        Between 1989 and 1992, Plaintiffs entered into publishing agreements with IAI for

5    each of the three children's books at issue.  (*See* Pl. Hearing Exs. 1-5.)[1]  Each of the

6    publishing agreements provided, among other things, that IAI would supply Plaintiffs

7    with quarterly royalty reports within 90 days of the end of each quarter and pay all

8    royalties due to Plaintiffs within 90 days after the end of each quarter.  (*See id.*)  In

9    addition, each Plaintiff could terminate the publishing agreements on 10 days' notice if

10   IAI failed to provide past-due royalty statements or payments.  (*Id.*)

11       Plaintiffs received regular royalty payments through the quarter ending June 30,

12   2009, but IAI ceased sending Plaintiffs either royalty statements or payments thereafter.

13   (*See* Compl. ¶¶ 35-36.)  Plaintiffs made numerous attempts by telephone and email to

14   demand the royalty payments and statements that were due, but Defendants failed to

15   provide either the payments or statements.  (*Id.* ¶¶ 37-38.)

16       By certified letter dated July 14, 2011, Ms. Aldrich and Ms. Curtis invoked their

17   termination rights under the *All I See Is Part of Me* and *Fun Is a Feeling* publishing

18   agreements, giving Defendants 10 days to provide them with past-due quarterly

19   statements and royalties.  (*Id.* ¶ 39.)  Defendants again failed to comply, and so in August

20   2011, Ms. Aldrich and Ms. Curtis, by email and certified letter, terminated these two

21   _____

22   [1] Plaintiffs offered 36 exhibits for admission at the April 30, 2014, hearing.  Defendants
     raised no objections, and the court admitted them all.

ORDER- 4

publishing agreements and revoked Defendants' license to publish, reproduce, and distribute the books.  (*Id.* ¶¶ 40-41.)

On September 2, 2011, Ms. Curtis and Mr. Currier gave IAI 10 days' written notice concerning termination of the publishing agreements for *How Far is Heaven?*, and gave Defendants 10 days to provide them with past-due quarterly statements and royalties.  (*Id.* ¶ 46.)  Defendants failed to comply.  (*Id.* ¶ 47.)  On September 15, 2011, Ms. Curtis and Mr. Currier terminated the publishing agreements for *How Far is Heaven?*.  (*Id.* ¶ 48.)

Following termination of the publishing agreements, Plaintiffs also demanded an audit of IAI's and IAP's books and records and the return of all unsold copies of the books at cost credited against past-due royalties.  (*See id.* ¶¶ 42-45, 49-50.)  Defendants again failed to comply with either request.  (*Id.* ¶¶ 43, 45, 47, 50.)  Defendants, who are experienced publishers, continued to publish, sell, and distribute all three children's books after Plaintiffs terminated the publishing contracts.  (*Id.*  ¶¶ 51-53.)  As of April and May, 2012, *Fun Is a Feeling* and *How Far to Heaven?* were still being sold or promoted on IAP's websites.  (Pl. Hearing Exs. 26-28.)  As late as June 18, 2012, Ms. Thompson was displaying and offering the books for sale at trade shows.  (*Id.* Ex. 28.) Sales reports produced by Defendants indicate that they continued to distribute *All I See Is Part of Me* through late July 2012, and *Fun Is a Feeling* and *How Far to Heaven?* through November 2012, which was more than five months after Plaintiffs filed this lawsuit.  (*Id.* Exs. 30-32.)

1    In addition, Plaintiffs discovered that full copies of their books had been posted

2    online to Google Books with the following notice:  "Pages displayed by permission of

3    Illumination Arts Pub. Co."  (*See id.* Ex. 17.)  On September 9, 2011, Ms. Curtis

4    demanded that Defendants cause all electronic publication of the books to cease and to

5    have the books taken down from any website to which Defendants had made the books

6    available.  (*Id.* Ex. 15.)  Defendants ignored Ms. Curtis's demand, and so on October 11,

7    2011, she again demanded that Defendants revoke permissions given to Google Books

8    for online display of the books.  (*Id.* Ex. 17.)  Defendants produced an email from Google

9    Books, dated January 16, 2011 (over 3 months after Ms. Curtis's original request)

10    indicating that Google Books had received a "legal request" and that it would "get to it as

11    quickly as [their] workload permit[ted]."  (*Id.* Ex. 25.)

12    **B.  Procedural Background**

13    **1.  The Complaint and Plaintiffs' First Motion to Compel Discovery and for Sanctions**

14    Plaintiffs filed their complaint for breach of the publishing contracts and willful

15    copyright infringement on June 8, 2012.  (*See* Compl.)  Plaintiffs served discovery

16    requests upon Defendants, including 19 interrogatories, 68 requests for production of

17    documents, and 43 requests for admission, but received no responses.  On January 31,

18    2013, Plaintiffs filed their first motion to compel discovery.  (1/31/13 Mot. (Dkt. # 16).)

19    Defendants failed to respond to the motion.  The court ordered Defendants to produce the

20    requested discovery and also imposed sanctions upon Defendants by requiring

21    Defendants to pay Plaintiffs' reasonable attorney's fees and expenses.  (*See* 2/20/13

22

1  Order (Dkt. # 19); 3/19/13 Order (Dkt. # 21).)  Although the court ordered Defendants to

2  pay sanctions in the amount of $5,594.00 by April 2, 2013 (*see id.* at 6), to date,

3  Defendants have not complied with this order.

4       **2.  First Motion for Partial Summary Judgment**

5       On March 28, 2013, Plaintiffs filed their first motion for partial summary

6  judgment.  (3/28/13 Mot. (Dkt. # 22).)  Plaintiffs sought partial summary judgment on

7  issues of contract liability and copyright infringement, Defendants' willfulness with

8  respect to copyright infringement, and a permanent injunction under the Copyright Act.

9  (*See id.*)  The court granted in part and denied in part Plaintiffs' motion.  (5/29/13 Order

10  (Dkt. # 29).)  The court made the following determinations:  (1) IAP is a mere

11  continuation of IAI and both are liable for any breach of the publishing contracts at issue

12  (*id.* at 10-13), (2) IAI, IAP, Mr. Thompson, and Ms. Thompson are each directly liable

13  for willfully infringing Plaintiffs' copyrights based on their responses to Plaintiffs'

14  requests for admission (*id.* at 21-23), and (3) Defendants should be permanently enjoined

15  from infringing Plaintiffs' copyrighted works, and all copies of the infringing works and

16  all means of reproducing them should be returned to Plaintiffs (*id.* at 24.).  The court

17  declined, at that time, to pierce the corporate veil to reach Mr. Thompson's or Ms.

18  Thompson's personal assets.  (*Id.* at 19.)

19       **3.  Plaintiffs' Second Motion for Sanctions and Second Motion for Partial
        Summary Judgment**

20       Defendants failed to timely comply with the court's February 20, 2013, order

21  compelling discovery responses, and on June 5, 2013, Plaintiffs once again filed a motion

22

1    for sanctions.  (6/5/13 Mot. for Sanc. (Dkt. # 30).)  In that motion, Plaintiffs sought

2    judgment by default on all claims.  (*Id.* at 2.) The same day, Plaintiffs filed a second

3    motion for partial summary judgment.  (6/5/13 SJ Mot. (Dkt. # 32).)  The court granted in

4    part and denied in part both motions.  (7/18/13 Order (Dkt. # 43).)  The court declined to

5    enter default judgment as a sanction believing that it could fashion a lesser sanction,

6    including additional monetary penalties, which would compel Defendants' compliance

7    with its orders.  (*Id.* at 18-20.)

8           In its order on both motions, the court:  (1) fixed contract damages owed to Ms.

9    Curtis at $5,790.84 (*id.* at 9), (2) ordered Defendants to produce, without objection, all of

10   the outstanding discovery covered by the court's prior order within 14 days (*id.* at 19-20),

11   (3) ordered Defendants (and their counsel) to sign and file certifications that Defendants

12   had complied with the court's order within 14 days (*id.*), (4) ordered Defendants and their

13   counsel to pay Plaintiffs' reasonable expenses, including attorney's fees, caused by

14   Defendants' failure to comply with the court's prior discovery order (*id.* at 21), (5) struck

15   the trial date because forcing Plaintiffs to go to trial on an incomplete factual record due

16   to Defendants' obstreperous behavior in discovery would only compound Plaintiffs'

17   prejudice (*id.*), and (6) invited Plaintiffs to file an additional motion for summary

18   judgment or for sanctions depending on Defendants' response to the court's order (*id.* at

19   20).

20          The court declined to award maximum statutory damages for Plaintiffs' willful

21   copyright infringement on summary judgment because selection of such an award

22   requires the exercise of discretion by the fact finder and thus should be reserved for the

1    jury. (*Id.* at 14.)  The court also declined to fix the amount of contract damages for Ms.

2    Aldrich or Mr. Currier citing insufficient evidence for a ruling on summary judgment.

3    (*Id.* at 9-10.)

4          **4.  Plaintiffs' Third Motion for Sanctions and Partial Summary Judgment**

5          On August 8, 2013, Plaintiffs filed a third motion for sanctions and for partial

6    summary judgment.  (8/8/13 Mot. (Dkt. # 45).)  Plaintiffs asked the court to enter default

7    judgment as a sanction against Plaintiffs due to their extraordinary defiance of the court's

8    prior discovery orders.  (*Id.* at 8-9.)  In addition, Plaintiffs argued that summary judgment

9    was appropriate with respect to (1) the amount of Ms. Aldrich's and Mr. Currier's

10   contract damages, and (2) Mr. Thompson's personal liability for breach of contract.  (*Id.*

11   at 10-13.)  In addition, Plaintiffs argued that the court should now award maximum

12   statutory damages for willful copyright infringement.  (*Id.* at 13-15.)  Plaintiffs argued

13   that the court's earlier Seventh Amendment concerns regarding the entry of maximum

14   statutory damages on summary judgment were no longer applicable assuming the entry of

15   default judgment.  (*Id.*)  Last, Plaintiffs argued that they should be awarded their

16   attorney's fees and costs under both Federal Rule of Civil Procedure 37(b)(2)(C) and the

17   Copyright Act.  (*Id.* at 16-17.)

18         The court granted Plaintiffs' motion in part and denied it in part.  (11/21/13 Order

19   (Dkt. # 55).)  In its order, the court:  (1) ordered that Mr. Thompson was personally liable

20   for IAI's and IAP's breach of contract due to his abuse of IAI's and IAP's corporate

21   forms and comingling of his personal assets with the business entities' assets (*id.* at 16-

22   24), (2) sanctioned Defendants for their failure to timely comply with the court's prior

ORDER- 9

1   discovery orders by entering default against them with respect to Plaintiffs' claims for

2   breach of contract and willful copyright infringement, but reserved ruling on default

3   judgment (*see id.* at 37), (3) ordered a Federal Rule of Civil Procedure 55(b)(2) hearing

4   to consider the entry of default judgment and determine the appropriate amount of

5   damages (*id.* at 39-40), and (4) awarded Plaintiffs' their reasonable expenses, including

6   attorneys' fees, under Federal Rule of Civil Procedure 37(b)(2)(C) and the Copyright Act

7   (*id.* at 40-42).

8           The court declined to grant summary judgment on the issue of contract damages

9   for Ms. Aldrich and Mr. Currier and revisited its prior order with respect to the amount of

10  Ms. Curtis's contract damages, raising the issue of whether such a damage award should

11  be offset by the value of the books and other items Defendants turned over in compliance

12  with the court's May 29, 2013, order.  (*Id.* at 26-27.)  The court asked the parties to

13  simultaneously file response memoranda on this issue.  (*Id.*)  Plaintiffs timely complied

14  with this order and filed their response concerning any offset to their contract damages on

15  November 27, 2013.  (*See* Dkt. ## 56-57.)  On November 23, 2013, Plaintiffs' counsel

16  also submitted a declaration detailing Plaintiffs' legal fees and expenses that the court has

17  previously awarded as sanctions against Defendants in its various orders throughout this

18  litigation, as well as the fees and expenses that Plaintiffs were claiming under the

19  Copyright Act, so that the court could ensure that no fees or expenses were claimed more

20  than once.  (*See* 11/27/13 Kruckeberg Decl. (Dkt. # 58).)  The total amount of fees and

21  expenses Plaintiffs claim through November 27, 2013, is $49,153.10.  (*See id.* ¶ 5.)  On

22

ORDER- 10

1  January 3, 2014, Defendants filed an untimely response to Plaintiffs' counsel's

2  declaration on fees.  (*See* Dkt. # 60.)

3  **5.  Filings Prior to the Federal Rule of Civil Procedure 55(b)(2) Hearing**

4  More than a month after the court's order on Plaintiffs' third motion for sanctions

5  and partial summary judgment, Mr. Thompson and Ms. Thompson filed a series of

6  declarations with the court.  (*See* Dkt. ## 59, 62-63.)  The court liberally construed one

7  declaration as a motion for reconsideration of its earlier November 21, 2013, sanctions

8  order and denied the motion.  (1/10/14 Order (Dkt. # 66).)  The court construed the other

9  declarations as responsive to its November 21, 2013, order and issued a schedule for the

10  Federal Rule of Civil Procedure 55(b)(2) evidentiary hearing, setting the hearing on April

11  4, 2014.  (1/10/14 Order re Evid. Hr'g (Dkt. # 65).)  On January 13, 2014, Mr. Thompson

12  and Ms. Thompson filed a motion to reschedule the hearing (Dkt. # 67), which the court

13  granted, rescheduling the hearing for April 30, 2014 (Dkt. # 71).

14  On January 30, 2014, Mr. Thompson filed a motion asking the court to reconsider

15  its decision to hold him personally liable for any contract damages owed by IAI or IAP to

16  Plaintiffs.  (1/30/14 Mot. (Dkt. # 74).)  The court denied the motion.  (2/12/14 Order

17  (Dkt. # 76).)  On February 19, 2014, Ms. Thompson filed a motion for summary

18  judgment asking the court to release her from all liability in this case.  (2/19/14 Mot.

19  (Dkt. # 77).)  The court liberally construed her motion as one to set aside the default for

20  "good cause" under Federal Rule of Civil Procedure 55(c) and as a motion for

21  reconsideration under Western District of Washington Local Rule LCR 7(h).  (4/15/14

22  Order (Dkt. # 89) at 11.)  Because Ms. Thompson conceded in her motion that she was

ORDER- 11

1    determined not to provide her personal financial information as ordered by the court, the

2    court concluded that she had engaged in culpable or bad faith conduct and denied her

3    motion to set aside the default.  (*Id.* at 12-16.)  In addition, the court found that she failed

4    to meet the standards under the court's Local Rules for granting a motion for

5    reconsideration.  (*Id.* at 17-18.)

6        **6.  The Rule 55(b) Hearing on Default Judgment**

7        The court held the Rule 55(b)(2) hearing on default judgment on April 30, 2014.

8    (Min. Entry (Dkt. # 92).)  The court heard testimony from Plaintiffs and Mr. Thompson.

9    Although she chose not to testify, Ms. Thompson provided a short closing statement to

10   the court.  The court admitted Plaintiffs' exhibits 1-38 without objection from

11   Defendants.  The court also admitted Mr. Thompson's exhibit A.

12       Following the hearing, Mr. Thompson and Ms. Thompson filed a motion for a new

13   hearing and sanctions against Defendants.  (5/8/14 Mot. (Dkt. # 93).)  They also filed a

14   motion to reverse the court's ruling on summary judgment concerning their willful

15   infringement.  (5/12/14 Mot. (Dkt. # 94).)  Plaintiffs filed a response to the first motion

16   (5/19/14 Resp. (Dkt. # 95)), but construed the second as a motion for reconsideration to

17   which no response is permitted unless requested by the court (*id.* at 2, n.1).  The court

18   liberally construed the first motion as one to reopen the April 30, 2014, default judgment

19   hearing and the second motion as one for reconsideration under the court's Local Rules

20   or to alter or amend its earlier partial summary judgment ruling regarding will copyright

21   infringement under Federal Rule of Civil Procedure 59(e).  (6/30/14 Order (Dkt. # 96) at

22   6,11-12.)  The court then denied both motions.  (*See generally id.*)

ORDER- 12

1    There are no further pending motions, and the court is now prepared to address the

2  entry of default judgment.  The court has heard the testimony of the parties or provided

3  the parties an opportunity to testify and present evidence.  (*See* Min. Entry.)  The court

4  has also considered all the submissions of the parties that were filed in advance of the

5  hearing, the balance of the record, and the applicable law.  Being fully advised, the court

6  now enters default judgment against Defendants in the amounts and as described below.

7                                    **III.   ANALYSIS**

8    There are several issues before the court.  The threshold issue is whether the court,

9  in its discretion, should now grant Plaintiffs' motion for default judgment.  If the court

10  determines that default judgment is warranted, three issues concerning damages follow.

11  The court must determine:  (1) the amount of damages with respect to Defendants' breach

12  of contract,[2] (2) the amount of statutory damages for Defendants willful copyright

13  infringement with respect to each book,[3] and (3) the amount of reasonable attorney's fees

14  and expenses that should be awarded under Federal Rule of Civil Procedure 37 and the

15  Copyright Act.  The court turns to each of these issues in turn below.

16  //

17  //

18  //

19  _____

20    [2] At the April 30, 2014, hearing, Plaintiffs' counsel conceded that Ms. Thompson has no
separate liability for damages with respect to the contract claim.

21    [3] Plaintiffs are not seeking actual damages with respect to Defendants' infringement of
their copyrights as permitted under 17 U.S.C. § 504(b).  Rather, Plaintiffs seek only statutory
22  damages as permitted under 17 U.S.C. 504(c)(1).

**A.   Standards for Entry of Default Judgment**

Federal Rule of Civil Procedure 55(b) authorizes a district court to grant default judgment.  Typically, default judgment is entered after the Clerk of Court has entered default under Rule 55(a).  District courts, however, also have the authority to declare a default as a sanction.  *See, e.g.*, *Dreith v. NuImage, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011); *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).  Before doing so, however, a court must consider the following five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.  *Id.*  Here, the court previously considered these factors and entered default against Defendants for their willful failure to timely comply with several of the court's discovery orders.  (*See* 11/21/13 Order at 28-37.)

Courts may order default judgment after the entry of default pursuant to Federal Rule of Civil Procedure 55(b)(2), but entry of default judgment is left to the court's sound discretion.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Because granting or denying default judgment is within the court's discretion, a defendant's default does not automatically entitle a plaintiff to a court-ordered judgment.  *Id.*  In exercising its discretion, the court considers seven factors (the "*Eitel* factors"):  (1) the possibility of prejudice to the plaintiff if relief is denied; (2) the substantive merits of plaintiff's claims; (3) the sufficiency of the claims raised in the complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due

1    to excusable neglect; and (7) the strong policy favoring decisions on the merits when

2    reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

3          At the default judgment stage, the court presumes all well-pleaded factual

4    allegations related to liability are true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915,

5    917-18 (9th Cir. 1987).  The court, however, does not presume the truth of any factual

6    allegations related to the amount of damages.  *Id.*  Thus, the plaintiff is required to prove

7    all damages sought in the complaint, and the court must ensure that the amount of

8    damages is reasonable and demonstrated by the evidence.  Fed. R. Civ. P. 55(b); Fed. R.

9    Civ. P. 8(b)(6); *TeleVideo*, 826 F.2d at 917-18.  Also, "[a] default judgment must not

10   differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R.

11   Civ. P. 54(c).

12   **B. The Court Grants Default Judgment Because the *Eitel* Factors Weigh in
     Favor of Default Judgment**

13

14         Default judgment is warranted in this case because, on balance, the *Eitel* factors

15   weigh in favor of such judgment.  The court determines that although factors four and

     seven weigh against the entry of default judgment, factors one, two, three, five, and six

16   favor it.

17          **1.  The Possibility of Prejudice to Plaintiffs**

18         The first *Eitel* factor is the possibility of prejudice to the plaintiff.  On a motion for

19   default judgment, "prejudice" exists where the plaintiff has no "recourse for recovery"

20   other than default judgment.  *Phillis Morris USA, Inc. v. Castworld Prods., Inc.*, 219

21   F.R.D. 494, 499 (C.D. Cal. 2003).  Plaintiffs will be prejudiced if default judgment is not

22

ORDER- 15

1  entered here.  As the court has previously discussed, Defendants' prior contumacious

2  conduct in discovery has prejudiced Plaintiffs, obstructing their ability to obtain a

3  decision on the merits and causing the court to strike the trial date.  (11/21/13 Order at

4  35-36 ("There can be no doubt that Defendants' obstreperous conduct in this litigation

5  has protracted this litigation, interfered with obtaining a rightful decision on the merits,

6  and impaired Plaintiffs' ability to go to or obtain a fair trial.").)  The court has no reason

7  to believe that Plaintiffs conduct going forward will be any different.  Defendants' history

8  of unexcused delay, willful disregard of court orders and deadlines, demonstrates that it is

9  unlikely that Plaintiffs' claims can be resolved on the merits.  Indeed, Defendants' failure

10  to pay any of the monetary fines the court has imposed to date is clear indication that

11  lesser sanctions will be ineffective.  Thus, the first factor weighs in favor of the entry of

12  default judgment.

13  **2. & 3.  The Substantive Merits of the Claim and the Sufficiency of the Complaint**

14

15       The second and third *Eitel* factors—the substantive merits of the claim and the

16  sufficiency of the complaint—are often analyzed together.  *PepsiCo., Inc. v. Cal. Sec.*

17  *Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002).  Prior to entering default against

18  Defendants as a sanction for their conduct in discovery and willful failure to timely

19  comply with the court's discovery orders, the court had already granted partial summary

20  judgment in Plaintiffs' favor with respect to IAI's, IAP's and Mr. Thompson's liability

21  for breach of contract and with respect to all Defendants' liability for willful copyright

22  infringement.  (*See* 5/29/13 Order at 1-13, 21-23; 11/21/13 Order at 16-24.)  Indeed, the

ORDER- 16

1  court has already entered a permanent injunction against Defendants.  (5/29/13 Order at

2  23-24.)  Thus, there can be no doubt as to the substantive merits of Plaintiffs' claims or

3  the sufficiency of their complaint.  These factors, therefore, also support the entry of

4  default judgment.

5         **4.**       **The Sum of Money at Stake**

6         The fourth *Eitel* factor is the sum of money at stake in the case.  In weighing this

7  factor, courts take into account the amount of money requested in relation to the

8  seriousness of the defendant's conduct, whether large sums of money are involved, and

9  whether "the recovery sought is proportional to the harm caused by defendant's conduct."

10  *Landstar Ranger, Inc. v. Parth Enter., Inc*., 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010);

11  *see also Eitel*, 782 F.2d at 1472.  If the amount of money is large or disproportionate, this

12  factor weighs against default judgment.  *See Getty Images (US), Inc. v. Virtual Clinics*,

13  No. C13-0626JLR, 2014 WL 358412, at *4 (W.D. Wash. Jan. 31, 2014).

14         Plaintiffs argue that they are entitled to $450,000.00 for Defendants' willful

15  infringement of their copyrights.  Although a substantial monetary award may be justified

16  for Defendants' infringing behavior, the amount requested is large for a grant of default

17  judgment.  *See Microsoft Corp. v. Lopez*, No. C08-1743JCC, 2009 WL 959219, at *3

18  (W.D. Wash. Apr.7, 2009) (finding a statutory damages award of $30,000.00 for willful

19  copyright infringement appropriate on default judgment); *cf. PepsiCo*, 238 F. Supp. 2d at

20  1177 (granting default judgment where no monetary damages were sought).  The court

21  therefore finds that this factor weighs against granting default judgment.

22  //

1     **5.    The Possibility of a Dispute Concerning Material Facts**

2         The fifth factor is the possibility of a dispute concerning material facts.  When

3 default has been entered, courts find that there is no longer the possibility of a dispute

4 concerning material facts because the court must take the plaintiff's factual allegations as

5 true.  *See, e.g., Microsoft*, 2009 WL 959219, at *3.  Where a plaintiff "has supported its

6 claims with ample evidence, and defendant has made no attempt to challenge the

7 accuracy of the allegations in the complaint, no factual disputes exist that preclude the

8 entry of default judgment."  *Landstar*, 725 F. Supp. 2d at 922; *accord Kloepping v.*

9 *Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb.13, 1996) (a

10 "plaintiff's presumptively accurate factual allegations leave little room for dispute,"

11 especially where the "defendant had the opportunity to dispute the facts alleged, but has

12 avoided and utterly failed to respond to plaintiff's allegations").  Thus, where a plaintiff

13 has made allegations supported by evidence and the defendant has not challenged those

14 allegations, this factor weighs in favor of default judgment.  *Getty Images*, 2014 WL

15 358412, at *4.  Here, Defendants filed answers to Plaintiffs' requests for admission that

16 admitted virtually all liability issues in dispute.[4]  (*See* Hearing Ex. No. 35 at

17 CURTIS000391-400.)  Further, as stated above, the court has already found that there are

18 no genuine issues of material fact relating to breach of contract and copyright

19

20 _____

21     [4] Mr. Thompson asserts that Defendants' attorney incorrectly admitted two of Plaintiffs' 43 requests for admission and that these two requests for admission should have been denied.

22 (*See* Dkt. # 51-16.)  Even if true, this fact would not alter the court's analysis.  Mr. Thompson acknowledges that Defendants admitted the remaining 41.  (*See id.*)

infringement other than damages.  (5/29/13 Order at 1-13, 21-23; 11/21/13 Order at 16-24.)  Thus, this factor also supports the entry of default judgment.

### 6.  Whether the Entry of Default is Due to Excusable Neglect

The sixth factor addresses whether the entry of default is due to excusable neglect.  Where entry of default is due to the defendant's bad faith conduct in violating multiple court orders, the behavior is willful and does not constitute excusable neglect.  *See Davidson v. Barnhardt*, No. CV 11-7298 FMO VBKX, 2013 WL 6388354, at *15 (C.D. Cal. Dec. 6, 2013).  Here, the court entered default as a sanction for Defendants' willful failure to timely comply with the court's prior discovery orders.  (11/21/13 Order at 32 ("The court has little difficulty finding that Defendants' failure to fully and timely comply with the court's prior discovery orders was willful or consisted of disobedient conduct not outside the control of Defendants.").)  Thus, the court has already determined that default was not due to Defendants' excusable neglect.  Further, Defendants' continued failure to pay the previous discovery sanctions or even timely file certifications of their compliance with the court's prior discovery demonstrates a lack of availability of lesser sanctions.  Accordingly, this factor weighs in favor of the entry of default judgment.

### 7.  Whether Default Judgment is Appropriate in Light of the Policy Favoring Decisions on the Merits

The seventh factor requires the court to weigh whether default judgment is appropriate in light of the policy favoring decisions on the merits.  This factor reflects the general principle that cases should be decided on their merits when it is reasonably

possible to do so.  *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985).  Although this factor "almost always disfavors the entry of default judgment," it is not dispositive.  *Vawter v. Quality Loan Serv. Corp. of Wash.*, No. C09-1585JLR, 2011 WL 1584424, at *6 (W.D. Wash. Apr. 27, 2011); *see also Microsoft*, 2009 WL 959219, at *3 ("[T]he mere existence of Fed. R. Civ. P. 55(b) indicates that this *Eitel* factor is not alone dispositive").  In this case, Defendants' history of unexcused delay, bad faith, and willful defiance of, or at best untimely and only partial compliance with the court's orders, demonstrates that it is unlikely that Plaintiffs' claims can be resolved on their merits.  In any event, because the factor is not dispositive, it does not change the court's decision to grant default judgment against Defendants.

### 8.  On Balance, the *Eitel* Factors Support Default Judgment

The *Eitel* factors overwhelmingly support default judgment in this case.  Plaintiffs have no other recourse, their substantive claims have merit, and their complaint is sufficient.  Further, there is no possibility of a dispute about material facts, and the entry of default against Defendants was not due to excusable neglect.  Given the factual circumstances here and the procedural history of this litigation, these factors outweigh the large amount of money at stake in the case and the policy favoring decisions on the merits.  The court accordingly GRANTS Plaintiffs' motion for default judgment.

### C.  Damages on Default Judgment for Breach of Contract

Because the court concludes that entry of default judgment is appropriate, it must now calculate damages.  The court first considers the amount of Plaintiffs' breach of contract damages.  The court has previously determined that Ms. Curtis is entitled to

1   $5,790.84 in unpaid royalty payments under the publishing contracts at issue.  (7/18/13

2   Order at 9.)  In addition, the court finds that Plaintiffs have submitted sufficient evidence

3   for it to conclude that Ms. Aldrich is entitled to $4,856.04 in unpaid royalties and that Mr.

4   Currier is entitled to $518.88 in unpaid royalties.  (*See* 8/8/13 Aldrich Decl. (Dkt. # 46);

5   8/8/13 Currier Decl. (Dkt. # 47).)  Thus, unpaid royalties to Plaintiffs total $11,165.76.

6   The question that the court must determine with respect to the amount of Plaintiffs'

7   damages for breach of contract is whether IAI, IAP, and Mr. Thompson are entitled to

8   any offset for the copies of books and other materials that Defendants returned to

9   Plaintiffs in compliance with the court's March 28, 2013, order.[5]  (*See* 3/28/13 Order at

10  24; 11/21/13 Order at 27 ("[T]he court directs the parties to consider whether the value of

11  the books and other items that Defendants turned over to Plaintiffs in compliance with the

12  court's May 29, 2013, order should be applied as an offset to any contract or other

13  damages awarded to Plaintiffs.").)

14      The parties previously submitted written memoranda and evidentiary materials

15  addressing the offset issue.[6]  (Plfs. Mem. Re: Offset (Dkt. # 56); 11/27/13 Curtis Decl.

16  (Dkt. # 57); 1/6/14 Thompson Decl. (Dkt. # 62).)  Under the Copyright Act, a court may

17  _____

18      [5] The liabilities for unpaid royalties and contract damages apply not only to IAI, which is
    the entity that entered into publishing contracts with Plaintiffs (*see* Hearing Exs. 1-5), but to IAP

19  and Mr. Thompson as well.  This is so because the court previously pierced the corporate veils
    not only between IAI and IAP, but also between the two business entities and Mr. Thompson.[5]

20  (*See* 5/29/13 Order at 10-13; 11/21/13 Order at 16-24.)  At the April 30, 2014 evidentiary
    hearing, Plaintiffs conceded that Ms. Thompson bore no separate liability as to their breach of

21  contract claims.

22      [6] The court considers these materials, as well as the balance of the record, in determining
    damages issues.

1    order the destruction or "other reasonable disposition" of all copies of works found to

2    have been made or used in violation of a copyright owner's exclusive rights, and of all

3    articles by means of which such copies may be reproduced.  17 U.S.C. § 503(b).  Here,

4    the court ordered Defendants to return to Plaintiffs all of the books in issue and the means

5    of producing them.  (5/29/13 Order at 24.)

6        Plaintiffs cite several cases in which courts ordered the return of copyright

7    infringing materials from defendants to plaintiffs but did not offer any offset for the

8    infringing materials.  (Plfs. Mem. Re: Offset at 3-5 (citing *RSO Records, Inc. v. Peri*, 596

9    F. Supp. 849 (S.D.N.Y. 1984); *Entral Group Int'l, LLC v. Honey Cafe on 5th, Inc.*, No.

10   05 CV 2290 NGG MDG, 2006 WL 3694584 (E.D.N.Y. Dec. 14, 2006); *Software*

11   *Freedom Conservancy, Inc. v. Best Buy Co., Inc.*, No. 09 CIV 10155 (SAS), 2010 WL

12   2985320 (S.D.N.Y. July 27, 2010)).)  The cases Plaintiffs cite, however, are

13   distinguishable because, unlike Defendants here, the defendants in those cases never had

14   a license to distribute the materials at issue or a publishing contract with the plaintiffs.

15   Here, Defendants originally had a license to distribute the books at issue through

16   publishing contracts with Plaintiffs.  (*See* Hearing Exs. 1-5.)  Plaintiffs may have

17   terminated those contracts due to Defendants breach and failure to pay royalties, but the

18   disposition of the books at issue is still governed by the parties' contractual agreement.

19       Each of the publishing agreements at issue provides substantially as follows:

20       Upon any termination, Illustrator and Author may purchase within 180 days
         after notification of such termination, any plates or offset negatives at their
21       scrap value and any unsold copies of the Work at cost.  In the event that
         Illustrator and/or Author fail to acquire such materials as described above,
22       Publisher may destroy said plates and sell all copies then on hand . . . .

ORDER- 22

1

2    (Hearing Ex. 1 at CURTIS000010 (omitting reference to "Artist" and including reference

3    to "computer drive tapes"); Hearing Ex. 2 at 7; Hearing Ex. 3 at 6-7; Hearing Ex. 4 at 7;

4    Hearing Ex. 5 at 6-7 (replacing "Illustrator" with "Artist").)  Following their termination

5    of the publishing agreements, Plaintiffs each sought to invoke this provision and to offset

6    the cost of procuring unsold copies of the books against the royalties owed to them.  (*See*

7    Hearing Exs. 12, 21, 25.)  Thus, the court concludes that the amount of Plaintiffs'

8    royalties should be offset by the value at cost of the unsold inventory that Defendants

9    returned to them.[7]

10         Mr. Thompson has indicated that the value at cost of each copy of *Fun is a*

11   *Feeling* that was returned to Plaintiffs is $1.68.  (*See* Dkt. # 51-15.)  Mr. Thompson

12   returned 2,571 copies of this book, plus two copies of the original version of this book,

13   for a total of $4,322.64 if the books are valued at cost.  (*See id.*)  He asserts that the value

14   at cost of each copy of *How Far to Heaven* is $1.75.  (*See id.*)  He returned 77 copies of

15   this book, which would total $134.75.  (*See id.*)  He asserts that the value at cost of *All I*

16   *See Is Part of Me* is $1.72 per copy.  (*See id.*)  He returned four copies, which would total

17   $6.88.  (*See id.*)  Mr. Thompson submits documentary evidence supporting his valuation

18   at cost for *Fun is a Feeling*.  (1/6/14 Thompson Decl. Ex. C.)  In addition, in Mr.

19   Currier's letter demanding the return of all unsold copies of *How Far to Heaven?*, Mr.

20   _____

21        [7] Plaintiffs assert that the books have no value to them or resale value because they are
     heavily branded with Defendants' marks and therefore cannot be sold.  (*See* Plfs. Mem. re:
22   Offset.)  This fact, however, does not change the plain contract terms which require Plaintiffs to
     purchase any remaining books after termination of the publishing contract at cost.

1  Currier states that he "understand[s]" that the valuation of the books at cost is "$2.00 per

2  book." (Hearing Ex. 21.)

3       The court finds Mr. Thompson's valuation of the books at issue at cost to be

4  reasonable. Pursuant to the publishing contracts between the parties, the court orders that

5  the total royalties owed to Plaintiffs by IAI, IAP, and Mr. Thompson be offset by the

6  value at cost of the books Defendants relinquished to Plaintiffs. The total amount of the

7  offset for returned books is $4,464.27.

8       Mr. Thompson also asks for the value at cost of certain promotional materials that

9  he turned over to Plaintiffs pursuant to the court's order, including posters, photos, and

10 book covers, to be deducted from Plaintiffs' past-due royalties as an offset. (*See* Dkt. #

11 51-15.) He further asks for deductions for the cost of the scans, discs, and CDs related to

12 the books. (*Id.*) The publishing contracts do not provide for Plaintiffs to purchase any

13 promotional materials upon termination, and nothing in the contracts supports the notion

14 that Defendants should receive an offset for these items. The contracts, however, do

15 allow for Plaintiffs to purchase "any plates or offset negatives at their scrap value" upon

16 any termination. (Hearing Ex. 1 at CURTIS000010; Hearing Ex. 2 at 7; Hearing Ex. 3 at

17 6-7; Hearing Ex. 4 at 7; Hearing Ex. 5 at 6-7.) Even assuming that "plates" and "offset

18 negatives" can be analogized to "scans, discs, and CDs" due to the changes in technology

19 in book publishing over the years, there is nothing in the publishing contracts indicating

20 that Mr. Thompson, IAI, and/or IAP should receive an offset for these items valued at

21 cost. If anything, Defendants might be entitled to an offset for the scrap value of these

22 items, but there is no evidence in the record upon which the court could rest such a

1    valuation.  Accordingly, the court denies any offset to the royalties owe to Plaintiffs for

2    these items.

3         In sum, the court finds that Plaintiffs are due a combined total of $11,165.76 in

4    delinquent royalty payments.  Pursuant to the parties' publishing contracts, however, this

5    amount must be offset by the value of the books that Defendants returned to Plaintiffs in

6    compliance with the court's May 29, 2013, order.  The court finds that the offset amount

7    based on the value at cost of the books Defendants relinquished to Plaintiffs as delineated

8    above is $4,464.27.  Thus, Plaintiffs total contract damages awarded on default judgment

9    are $6,701.49, which is equal to $11,165.76 minus $4,464.27.[8]

10   **D.  Damages on Default Judgment for Willful Copyright Infringement**

11        Because this court found Defendants' infringement to be "willful" and because

12   Plaintiffs elected to recover statutory damages, the statutory maximum in this case is

13   $150,000.00 per work.  17 U.S.C. § 504(c)(2).  Plaintiffs seek the statutory maximum for

14   each of the three books at issue for a total of $450,000.00.  (*See* Plfs. Prehearing Mem.

15   (Dkt. # 84) at 15; Pltf. Prop. Findings & Conclusions (Dkt. # 84-1) at 11.)

16        A party may elect to receive statutory, rather than actual, damages for registered

17   copyrights.  17 U.S.C. § 504(c)(1).  The court has wide discretion in determining the

18

19      [8] Pursuant to Federal Rule of Civil Procedure 58(a), following entry of this order, the court will enter final judgment in a separate document.  *See* Fed. R. Civ. P. 58(a).  If Plaintiffs would like a final judgment that allocates the amount of contract damages owed to each Plaintiff

20   individually, then, within five days of the date of this order, Plaintiffs may submit such a proposed final judgment to the court, along with a memorandum explaining its allocation.  The proposed final judgment should allocate the appropriate portion of the total offset to the unpaid

21   royalty calculation for each Plaintiff without altering the total amount of contract damages owed by IAI, IAP, and Mr. Thompson to Plaintiffs.  If Defendants wish to respond to Plaintiffs'

22   allocation, they may file a response within five days of the date of Plaintiffs' submission.

1   amount of statutory damages to be awarded within the range provided by 17 U.S.C.

2   § 504.  *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).  The

3   maximum amount of damages for willful infringement—what the court has found

4   Defendants liable for here—is $150,000.00; the minimum is $200.00.  *See* 17 U.S.C.

5   § 504(2)(c).  The court is directed to do "what is just in the particular case, considering

6   the nature of the copyright, the circumstances of the infringement and the like . . . but

7   with the express qualification that in every case the assessment must be within the

8   prescribed [statutory range].  Within these limitations the court's discretion and sense of

9   justice are controlling . . . ."  *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S.

10  228, 232 (1952) (quoting *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100,

11  106-07 (1919)).  "Statutory damages are particularly appropriate in a case . . . in which

12  [a] defendant has failed to mount any defense or to participate in discovery . . . ."

13  *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. Mar. 28, 2003).

14          The Ninth Circuit has not adopted uniform criteria for determining the appropriate

15  amount of statutory damages for willful copyright infringement.  *See, e.g.*, *Peer Int'l*

16  *Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *F.W.*

17  *Woolworth*, 344 U.S. at 232).  To guide its statutory damages analysis, the court will use

18  four factors adopted by other circuits and by district courts within this circuit.  *See, e.g.*,

19  *Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 WL 358412, at *7

20  (W.D. Wash. Jan. 31, 2014); *Controversy Music v. Shiferaw*, No. C03–5254 MJJ, 2003

21  WL 22048519, at * 2 (N.D. Cal. Aug. 20, 2003); *Pac. Stock, Inc. v. MacArthur & Co.*

22  *Inc.*, No. C11-00720 JMS/BMK, 2012 WL 3985719, at *5 (D. Haw. Sept. 10, 2012);

1    *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.*, 658 F.Supp. 458, 465 (E.D.

2    Pa. 1987); *Rare Blue Music, Inc. v. Guttadauro*, 616 F. Supp. 1528, 1530 (D. Mass.

3    1985); *Milene Music, Inc. v. Gotauco*, 551 F. Supp. 1288, 1296 (D.R.I. 1982).  The four

4    factors are: (1) the infringers' profits and the expenses they saved because of the

5    infringement; (2) the plaintiff's lost revenues; (3) the strong public interest in ensuring

6    the integrity of copyright laws; and (4) whether the infringer acted willfully.  *Getty*

7    *Images*, 2014 WL 358412, at *7.  The first two factors are largely analogues of each

8    other so the court will analyze them together.  *See id.*  The balance of factors counsels in

9    favor of granting Plaintiffs a substantial award of statutory damages, but less than the

10   statutory maximum.

11       The first two factors—(1) the infringer's profits and expenses saved and (2) the

12   plaintiff's lost revenues—are relatively straightforward inquiries.  These factors,

13   however, are generally given less weight than the others because of the inherent

14   uncertainty in calculating an infringer's profits and a plaintiff's lost revenue.  *Milene*

15   *Music*, 551 F. Supp. at 1296.  Indeed, "most courts . . . do not attach great weight to

16   profits gained or to income lost, because these amounts are difficult to monetize, and may

17   be marginal at best."  *Id.*

18       Here, Plaintiffs admit that "the amount of profits reaped by the defendants for their

19   infringing conduct is uncertain."  (Plfs. Prehearing Mem. at 17.)  Although Plaintiffs can

20   show that Defendants' gross sales of Plaintiffs' works totaled just under $1 million since

21   1997, Plaintiffs did not cancel the publishing contracts related to the three books at issue

22   until 2011.  Thus, the vast majority of Defendants' sales were licensed and only a small

1  portion of these sales can be attributed to Defendants' infringement of Plaintiffs'

2  copyrights.  (*See* Hearing Exs. 30-32.)

3        Plaintiffs also acknowledge that their lost revenues from Defendants' infringement

4  of their copyrights are difficult to quantify.  (Plfs. Prehearing Mem. at 17.)  Plaintiffs

5  have shown a total of $11,165.76 in unpaid royalties, but a portion of these losses

6  occurred prior to Plaintiffs' termination of the publishing contracts with IAI and thus

7  while Defendants continue to have a license to publish.  (*See supra* § II.A.)  Thus, some

8  portion of the unpaid royalties Plaintiffs claim cannot be counted as lost revenues

9  attributable to Defendants' infringement.

10       Plaintiffs testified at the evidentiary hearing that they could not pursue publication

11 of the books with another publisher until Defendants refrained from wrongfully holding

12 themselves out as the books' publisher after Plaintiffs terminated the publishing

13 contracts.  Although, there is scant evidence concerning the value of this lost publication

14 time and resulting lost revenue, Ms. Curtis testified on cross-examination at the April 30,

15 2014, hearing that in a 2009 bankruptcy filing she placed the total value of all of her

16 copyrights, only a portion of which includes the books at issue here, at $6,700.00.

17       Although, as noted above, the court give less weigh to Plaintiffs' lost revenues and

18 Defendants' wrongfully reaped profits, *Milene Music*, 551 F. Supp. at 1296, the court,

19 nevertheless, concludes that these factors do not support the entry of maximum statutory

20 damages here.  Although Plaintiffs' evidence with respect to these factors is patchy at

21 best, the evidence they did present at the hearing indicates that both their lost revenues

22 and the profits Defendants reaped due to Defendants' infringement were relatively low.

1    Thus, the court cannot conclude that either of these factors provide justification for the

2    entry of maximum statutory damages.

3           The third factor is the public's strong interest in maintaining the integrity of

4    copyright laws. *Milene Music*, 551 F. Supp. at 1296.  If the infringing conduct is severe,

5    a court is more likely to award higher statutory damages because the higher award will

6    deter such conduct in the future. *See, e.g.*, *Warner Bros. Enter. v. Caridi*, 346 F. Supp.

7    2d 1068, 1074 (C.D. Cal. 2004).  "An award of the statutory maximum protects not only

8    the copyrighted materials at issue, but also the entire entrepreneurial system upon which

9    [a copyright holder] relies." *Teri Woods Pub., L.L.C. v. Williams*, No. 12-4554, 2013 WL

10   6179182, at *4 (E.D. Pa. Nov. 25, 2013).  "[C]ourts have repeatedly emphasized that

11   defendants must not be able to sneer in the face of copyright owners and copyright laws."

12   *Tu v. TAD Sys. Tech. Inc.*, No. 08-CV-3822 (SLT)(RM), 2009 WL 2905780, at *6

13   (E.D.N.Y. Sept. 10, 2009) (quoting *N.Y. Chinese TV Prog., Inc. v. U.E. Enter., In*c., No.

14   89 Civ. 6082RWS (KAR), 1991 WL 113283, at *4 (June 14, 1991)).  This factor

15   dovetails with the "goal of discouraging wrongful conduct." *Controversy Music*, 2003

16   WL 22048519, at *2 (citing *F.W. Woolworth*, 344 U.S. at 233).

17          In this case, Defendants failed to end their infringement of Plaintiffs' works after

18   Plaintiffs terminated the publishing contracts and after multiple warnings from Plaintiffs

19   to stop selling and distributing the books.  (*See supra* § II.B at 4-6.)  Plaintiffs assert that

20   this case is similar to other cases in which courts awarded maximum statutory damages

21   where Defendants repeatedly ignored requests to cease infringing copyrighted works, and

22   then failed to participate in discovery once they were sued.  (*See id.* at 19 (citing *IO*

1   *Group, Inc. v. Antelope Media LLC*, No. C-08-4050 MMC, 2010 WL 2198707, at *1-2

2   (N.D. Cal. May 28, 2010) (awarding maximum statutory damages in part due to

3   defendants' failure to respond, necessarily precluding plaintiff from determining whether

4   actual loss occurred); *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1074

5   (C.D. Cal. 2004) (awarding maximum statutory damages in part because defendant

6   "fail[ed] to proffer any defense or participate in discovery or engage in settlement

7   negotiations").)  Plaintiffs also argue that Defendants' conduct is particularly egregious

8   because they are in the business of publishing and therefore should know better.  (Plfs.

9   Prehearing Mem. at 18-19 citing *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.3d 1332,

10  1337 (9th Cir. 1990).)  The court agrees that the third factor weighs in favor of a hefty

11  award of statutory damages, but the court is still not persuaded that maximum statutory

12  damages are warranted as discussed below.

13          During the April 30, 2014, hearing, Plaintiffs' counsel directed the court to its

14  recent decision in *Getty Images (US), Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014

15  WL 1116775 (W.D. Wash. Mar. 20, 2014), in which this court awarded maximum

16  statutory damages against defendants who likewise failed to end their infringement

17  despite repeated notifications and warnings.  *See id.* at *4.  The court, however, finds that

18  case to be distinguishable.  In *Getty Images*, the defendants had never had a license for

19  the images it was distributing and displaying on its websites.  *See id.* at *1.  By way of

20  contrast, Plaintiffs here entered into long-term publishing contracts with Defendants and

21  between 1989 and 1992, and until 2009 received regular royalty payments and enjoyed an

22  apparently harmonious contractual and licensing relationship.  (*See* Compl. ¶¶ 35-36

1    (alleging that after the quarter ending June 30, 2009, Defendants ceased making regular

2    royalty payments or sending royalty statements).)

3           At the April 30, 2014, hearing, Mr. Thompson testified that book sales for his

4    publishing business dropped precipitously in 2008 and subsequent years when the recent

5    financial crisis hit and the country began feeling its after effects in the form of a severe

6    recession.  Indeed, it was only after Defendants suffered economic setbacks during the

7    recent recession that Defendants began failing to make required royalty payments to

8    Plaintiffs and the parties' relationship spun apart.  The court does not suggest that

9    Defendants' financial circumstances excuse their recalcitrant behavior in failing to

10   promptly cease publication and distribution of the books at issue once Plaintiffs

11   terminated the publishing contracts and Defendants' copyright licenses; nor does it

12   excuse their obstreperous conduct during discovery or their repeated failure to timely

13   comply with the court's orders over the course of this litigation.  The court merely notes

14   that the severe financial crisis that struck the entire country and the resulting deep

15   recession provides at least some context to the unraveling of what had been a mutually

16   beneficial publishing relationship prior to that time.  These facts militate against an award

17   of statutory damages at the maximum level

18          The fourth factor involves considering the willfulness of Defendants' conduct.

19   Plaintiffs must show that Defendants acted willfully such that their infringing conduct

20   occurred "with knowledge that [it] constituted copyright infringement." *Danjaq LLC v.*

21   *Sony Corp.*, 263 F.3d 942, 957 (9th Cir. 2001).  This fourth factor is typically given the

22   most weight by courts in determining an appropriate amount of statutory damages.  *See*

1   *Milene Music*, 551 F. Supp. at 1296 ("Courts . . . have focused largely on the element of

2   intent . . . ."). "[T]he per-infringement award tends understandably to escalate, in direct

3   proportion to the blameworthiness of the infringing conduct." *Id.* Here, the court has

4   already found Defendants' infringement to be "willful" (*see* 5/29/13 Order at 21-23), and

5   there is no doubt that Defendants' conduct here militates strongly in favor of a substantial

6   statutory damages award. Nevertheless, although "[t]here is no required nexus between

7   actual and statutory damages under 17 U.S.C. § 504(c)," *New Form, Inc. v. Tekila Films,*

8   *Inc.*, 357 F. App'x 10, 12 (9th Cir. 2009), an award in the amount requested by Plaintiffs

9   would be disproportionate given the particular facts and circumstances here. *See Nimmer*

10  *on Copyright* § 14.04[B][3][c] at 14-82 (Matthew Bender, Rev. Ed.) ("Just because a

11  defendant is held willful does not in itself necessitate imposition of heightened statutory

12  damages.") (footnote omitted). The court believes that the context in which this case

13  arose—an initial harmonious contractual relationship which was disrupted by

14  Defendants' economic setbacks during the recent recession and subsequent willful

15  infringement of Plaintiffs' copyrights—provides context that the court should consider

16  when formulating a just statutory damages award.

17         In sum, the first two factors, although given less weight overall, do not favor entry

18  of maximum statutory damages as requested by Plaintiffs. Indeed, although there is no

19  required correlation between actual and statutory damages, consideration of the evidence

20  presented concerning Plaintiffs' lost revenues and Defendants' wrongfully reaped profits

21  counsels for a fairly small award of statutory damages. In contrast, the final two factors,

22  the public's interest in the integrity of the copyright laws and Defendants' willfulness,

1    weigh in favor of a substantial award of statutory damages.  The court, however, believes

2    that even these two factors should be viewed in the overall factual context of the case,

3    which here mutes their effect to some extent.  After all, the court's determination of

4    statutory damages is not a mechanical calculation.  Rather, the court is instructed to

5    "what is just in the particular case" within the prescribed statutory range.  *See F.W.*

6    *Woolworth Co.*, 344 U.S. at 232.  That is what the court endeavors to do here.

7    Accordingly, viewing all of the factors as a whole, along with the specific factual context

8    of this case, the court in its discretion GRANTS Plaintiffs $50,000.00 in statutory

9    damages per book for Defendants' willful copyright infringement for a total statutory

10   damages award of $150,000.00.

11   **E.  Attorney's Fees**

12         The Copyright Act authorizes district courts to award "a reasonable attorney's fee

13   to the prevailing party" in a copyright action.  17 U.S.C. § 505.  The decision regarding

14   whether to award attorney's fees is in the court's discretion.  *See id.*  In exercising its

15   discretion, the court may consider five factors: (1) the degree of success obtained; (2)

16   whether the lawsuit was frivolous; (3) motivation; (4) objective legal or factual

17   unreasonableness; and (5) the need to advance the considerations of compensation and

18   deterrence.  *Smith v. Jackson*, 84 F.3d 1213, 1221 (9th Cir. 1996).  In evaluating these

19   factors, courts should keep in mind "the Copyright Act's objectives."  *Historical*

20   *Research v. Cabral*, 80 F.3d 377, 378-79 (9th Cir. 1996).  Although a finding of willful

21   infringement does not "in itself, compel" an award of attorney fees, it is an "important

22   factor favoring" an award of those fees.  *Id.* at  379.  Nevertheless, a fee award does not

1    require "exceptional circumstances" or any similar finding.  *Id.* at 378.  Instead, district

2    courts may "freely award fees, as long as they treat prevailing plaintiffs and prevailing

3    defendants alike and seek to promote the Copyright Act's objectives."  *Id.* at 378-79.

4         Here, the court has already determined that the foregoing factors favor an award of

5    reasonable attorney's fees and expenses to Plaintiffs under 17 U.S.C. § 505.  (11/21/13

6    Order at 42.)  In addition, however, the court also awarded Plaintiffs certain portions of

7    their reasonable fees and expenses under Federal Rule of Civil Procedure 37 in response

8    to their three motions seeking discovery sanctions.  (2/20/13 Order at 6-8; 3/19/13 Order

9    at 3, 5; 7/18/13 Order at 20-21.)  In order to avoid any double recovery for fees and

10   expenses under any of the foregoing orders, the court previously directed Plaintiffs to

11   submit a statement, along with appropriate documentation, concerning all reasonable

12   attorney's fees and expenses that have been awarded throughout the litigation under any

13   of the court's various orders.  (11/21/13 Order at 44.)  The court also permitted

14   Defendants an opportunity to file a response.  (*Id.*)  Plaintiffs filed their response to the

15   court's order on November 27, 2013.  (Kruckeberg Decl. on Fees (Dkt. # 58).)

16   Defendants filed their response on January 3, 2014.  (Thompson Decl. on Fees (Dkt. #

17   60).)  The court now considers the appropriate amount of Plaintiffs' fees and expenses as

18   previously awarded in various orders under Rule 37 and those fees properly awarded

19   under the Copyright Act, 17 U.S.C. § 505.  In doing so, the court lays out the history of

20   its fees awards below.

21        On February 20, 2013, pursuant to Rule 37, the court awarded Plaintiffs their

22   reasonable fees and expenses in bringing their first motion to compel discovery against

ORDER- 34

1    Defendants.  (2/20/13 Order at 6-8.)  The court also ordered Plaintiffs to submit a

2    statement along with appropriate documentation concerning those fees and expenses and

3    permitted Defendants a subsequent opportunity to respond.  (*Id.* at 8.)  Plaintiffs filed

4    their statement on February 22, 2013.  (2/22/13 Kruckeberg Decl. (Dkt. # 20).)

5    Defendants did not respond.  (*See generally* Dkt.)  On March 19, 2013, the court ordered

6    Defendants and Defendants' counsel to pay Plaintiffs $5,594.00 in attorney's fees and

7    expenses within 14 days. (3/19/13 Order (Dkt. # 21) at 5.)  This amount remains unpaid

8    to date.

9           On July 18, 2013, the court granted in part Plaintiffs' second motion for discovery

10   sanctions.  (7/18/13 Order at 15-22.)  Pursuant to Rule 37, the court again ordered

11   Defendants and Defendants' counsel to pay Plaintiffs' reasonable expenses, including

12   attorney's fees, caused by Defendants' failure to comply with the court's prior order.

13   (*Id.*)  Once again, the court directed Plaintiffs to submit a statement, along with

14   appropriate documentation, concerning their reasonable expenses and fees.  (*Id.*)  On July

15   22, 2013, Plaintiffs filed their statement of reasonable fees and expenses totaling

16   $10,101.00.  (7/22/13 Kruckeberg Decl. (Dkt. # 44).)  Defendants were provided with an

17   opportunity to respond but failed to do so.  (*See generally* Dkt.)

18          On November 21, 2013, the court granted in part Plaintiffs' third motion for

19   reasonable attorney's fees and expenses as a sanction for Defendants' discovery

20   misconduct and refusal to comply with the court's orders.  (11/21/13 Order at 40-41.)

21   Pursuant to Rule 37, the court ordered Defendants to pay as a sanction for their conduct

22   "Plaintiffs' reasonable expenses, including attorney's fees, caused by Defendants' failure

1   to comply with [the court's] July 18, 2013, order." (*Id.* at 41.)  On November 27, 2013,

2   Plaintiffs filed their statement concerning these fees and expenses, asserting that they

3   totaled $9,676.00. (*See* 11/27/13 Kruckeberg Decl. ¶ 5.)

4        In addition, to the foregoing awards, Plaintiffs seek their fees and expenses for

5   prosecuting their copyright infringement claim under 17 U.S.C. § 505.  Plaintiffs seek a

6   total of $23,782.10 with respect to this claim. (11/27/13 Kruckeberg Decl. ¶¶ 5, 9, 11,

7   Ex. A.)  Thus, the total amount of the fees and expenses that Plaintiffs claim in this

8   litigation under either the Copyright Act, 17 U.S.C. § 505 or Rule 37 (as described

9   above) is $49,153.10. (*Id.* ¶ 5.)

10        To determine the total amount claimed, Plaintiffs used the "lodestar" method (*see*

11   *generally id.*), which involves multiplying the number of hours reasonably expended on

12   the claim or motion by a reasonable hourly rate, *see, e.g.*, *Jordan v. Multnomah Cnty.*,

13   815 F.2d 1258, 1262 (9th Cir. 1987).  In calculating the lodestar, the court should

14   consider any of the relevant factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d

15   67, 70 (9th Cir. 1975). *See Jordan*, 815 F.2d at 1264 n.11 (noting that the Ninth Circuit

16   no longer requires that the district court address every factor listed in *Kerr*).  The *Kerr*

17   factors include:  (1) the time and labor required; (2) the novelty and difficulty of the

18   questions involved; (3) the skill required to perform the legal service properly; (4) the

19   preclusion of other employment by the attorney due to acceptance of the case; (5) the

20   customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by

21   the client or the circumstances; (8) the amount involved and the results obtained; (9) the

22   experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case;

(11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr*, 526 F.2d at 70.  As described below, the court considers some but not all of these factors.  The court considers only those *Kerr* factors it deems relevant to the present circumstances.

The total amount of fees and expenses Plaintiffs request is reasonable.  First, Plaintiffs have ensured that they are not seeking any overlapping fees or expenses pursuant to the court's various orders.  (*See id.* ¶ 4, Ex. A.)  Second, Plaintiffs propose rates ranging from $200-$320 per hour for the attorneys working on this matter and $150 per hour for the paralegal.  (11/27/13 Kruckeberg Decl. ¶ 9.)  These rates are commensurate with market rates in the Western District of Washington, *see Getty Images (US) v. Virtual Clinics*, No. C13-0626JLR, 2014 WL 1744522, at *3 (W.D. Wash. Apr. 29, 2014) (approving rates between $275-$385 per hour for attorneys in Seattle and $180 per hour for paralegals), and the court approves them.  Third, Plaintiffs also report a reasonable number of hours expended on the litigation.  Plaintiffs report that their attorneys and paralegal expended a total of 106.20 hours.  Given the relevant *Kerr* factors, such as (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill required to perform the legal service properly, and (8) the amount involved and the results obtained, the court finds that the number of hours expended and the total amount of fees charged is reasonable.  Although the issues were not particularly difficult or novel, the number of hours charged is nevertheless relatively low in light of the multiple discovery and summary judgment motions that Plaintiffs prosecuted and the degree of success Plaintiffs obtained with each motion they filed.  The

1  court has considered the record in full up through the date of Plaintiffs' submission

2  concerning fees and expenses and concludes that the number of hours claimed and the

3  total amount charged is reasonable.[9]

4        Of course the foregoing figure does not include time spent in preparation for and

5  conduct of the evidentiary hearing and other motions the court considered following

6  November 23, 2013.  Accordingly, the court will permit Plaintiffs to file an update

7  concerning any attorney's fees or expenses that they wish to claim under 17 U.S.C. § 505

8  and incurred after the submission of their counsel's November 23, 2013, declaration.

9  Plaintiffs shall file this submission, if any, within 5 days of the date of this order.  If

10  Defendants wish to respond, they may do so within 5 days of Plaintiffs' supplemental

11  submission.  Following these submissions, the court will enter final judgment in this

12  matter.

13  //

14

_____

15       [9] Mr. Thompson and Ms. Thompson filed a response to Plaintiffs' November 27, 2013,

16  submission concerning attorney's fees in which they make three arguments.  (1/3/14 Thompson
     Decl. (Dkt. # 60).)  First, the Thompsons argue that Plaintiffs made an excessive demand for a

17  settlement shortly after the complaint was filed and this prolonged the litigation, which in turn
     ran up the amount of fees.  (*Id.* at 1.)  The court, however, has awarded Plaintiffs a sum that is
     nearly three times the amount of Plaintiffs' settlement offer as described by the Thompsons.

18  Thus, even assuming that Plaintiffs' early settlement offer is an appropriate item to consider in
     terms of the reasonableness of their fees, it would not indicate that any reduction is warranted.

19  Second, the Thompsons complain that Plaintiffs' "overwhelming demands for information that
     [were] not at all necessary or even relevant to this case" and their "unreasonable" demands for

20  Ms. Thompson's financial information unnecessarily increased the amount of Plaintiffs' fees.
     (*Id.* at 2.)  The time, however, for the Thompsons to object to Plaintiffs' discovery requests was

21  within thirty days of their receipt—not now after the court has granted default and is ruling on
     default judgment.  The court finds no basis for rejecting or reducing Plaintiffs' request for fees

22  and expenses in the Thompsons' response.

ORDER- 38

1 | //

2 | **IV.  CONCLUSION**

3 | Based on the foregoing and the evidence and testimony presented at the April 30,

4 | 2014, evidentiary hearing, the court hereby ORDERS:

5 | (1) Plaintiffs are entitled to the entry of default judgment against Defendants.

6 | (2) Plaintiffs are awarded total damages for breach of contract against Defendants

7 | IAI, IAP, and Mr. Thompson, jointly and severally, in the amount of

8 | $6,701.49.  If Plaintiffs would like a judgment which breaks these damages

9 | down by individual Plaintiff, then Plaintiffs shall submit such a proposed

10 | judgment within five days of the date of this order and Defendants may file a

11 | response to Plaintiffs' allocation, if any, within five days of Plaintiffs'

12 | submission.

13 | (3) Plaintiffs Chara Curtis and Cynthia Aldrich are awarded statutory damages

14 | against all Defendants, jointly and severally, for willful copyright infringement

15 | under 17 U.S.C. § 504 in an amount of $100,000.00.

16 | (4) Plaintiffs Chara Curtis and Alfred Currier are awarded statutory damages

17 | against all Defendants, jointly and severally, for willful copyright infringement

18 | under 17 U.S.C. § 504 in an amount of $50,000.00.

19 | (5) Plaintiffs are awarded attorney's fees and expenses in an amount of $15,695.00

20 | against Defendants and Defendants' counsel, Matthew King, jointly and

21 | severally, under Federal Rule of Civil Procedure 37(b)(2)(C).  (*See* 3/19/13

22 | Order at 5; 7/18/13 Order at 21.)

ORDER- 39

1     (6) Plaintiffs are awarded attorney's fees and expenses in an amount of $9,676.00

2         against Defendants, jointly and severally, under Federal Rule of Civil

3         Procedure 37(b)(2)(C).  (*See* 11/21/13 Order at 41.)

4     (7) Plaintiffs are awarded attorney's fees and expenses in an amount of $23,782.10

5         through November 23, 2013 against Defendants, jointly and severally, under

6         the Copyright Act, 17 U.S.C. § 505.  Plaintiffs may file an update concerning

7         any reasonable attorney's fees or expenses they (a) incurred after the

8         submission of their counsel's November 23, 2013, declaration (Dkt. # 59) and

9         (b) claim under 17 U.S.C. § 505.  Plaintiffs shall file this submission, if any,

10        within 5 days of the date of this order.  If Defendants wish to respond, they

11        may do so within 5 days of Plaintiffs' supplemental submission.

12    (8) Plaintiffs are awarded post-judgment interest to accrue at the rate specified in

13        28 U.S.C. § 1961.

14    Dated this 17th day of July, 2014.

16

17                                      _____

18                                      JAMES L. ROBART
United States District Judge